E-FILED
Thursday, 07 May, 2009  02:37:15 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES OF AMERICA
## UNITED STATES DISTRICT COURT
## IN THE CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | | |
|---|---|---|
| JANE DOE 20, a minor through her mother and father and next friends, JULIE DOE 20 and JOHN DOE 20, and JANE DOE 21, a minor through her mother and father and next friends, JULIE DOE 21 and JOHN DOE 21, | ) ) ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No.: |
| | ) | Judge: |
| BOARD OF EDUCATION OF THE COMMUNITY UNIT SCHOOL DISTRICT NO. 5, MCLEAN AND WOODFORD COUNTIES, ILLINOIS, a body corporate and politic, JAMES BRAKSICK, individually and in his official capacity, ALAN CHAPMAN, individually and in his official capacity, DALE HEIDBREDER, individually and in his official capacity, JOHN PYE, individually and in his official capacity, EDWARD HEINEMAN, individually and in his official capacity, and JON WHITE, individually, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) | |

## COMPLAINT

NOW COME the Plaintiffs JANE DOE 20, a minor through her mother and father and next friends, JULIE DOE 20 and JOHN DOE 20, and JANE DOE 21, a minor through her mother and father and next friends, JULIE DOE 21 and JOHN DOE 21, by and through their attorneys, HERBOLSHEIMER, LANNON, HENSON, DUNCAN & REAGAN, P.C., and RATHJE & WOODWARD, LLC, and respectfully submit the following as their complaint against the defendants BOARD OF EDUCATION OF THE COMMUNITY UNIT SCHOOL

DISTRICT NO. 5, McLEAN AND WOODFORD COUNTIES, ILLINOIS, JAMES BRAKSICK, ALAN CHAPMAN, DALE HEIDBREDER, JOHN PYE, EDWARD HEINEMAN and JON WHITE:

## INTRODUCTION

1.      This lawsuit arises on behalf of two minor children as a result of (a) actions and inactions of the defendants that allowed and emboldened Jon White to engage in acts of sexual misconduct and other tortuous behavior, (b) from the failure of defendants to protect the minor children, (c) from the failure to appropriately hire, supervise and train administration and staff, and (d) from the willful and wanton neglect and reckless indifference of McLean County Unit School District No. 5, James Braksick, Alan Chapman, Dale Heidbreder, Edward Heineman, John Pye and other individuals in their operation and supervision of Colene Hoose Elementary School in the Town of Normal, County of McLean, State of Illinois.

## PARTIES

2.      Plaintiff, JANE DOE 20 ("Doe-20"), is a minor and was at all times relevant to this complaint a resident of McLean County, Illinois.

3.      JULIE DOE 20 ("Julie-20"),  and  JOHN DOE 20 ("John-20") are the mother and father of the minor Doe-20 and are (and were at all times relevant to this complaint) residents McLean County, Illinois.

4.      Plaintiff, JANE DOE 21 ("Doe-21"), is a minor and was at all times relevant to this complaint a resident of McLean County, Illinois.

5.      JULIE DOE 21 ("Julie-21") and JOHN DOE 21 ("John-21"), are the mother and father of the minor Doe-21 and are (and were at all times relevant to this complaint) residents of McLean County, Illinois.

6.      Defendant JON WHITE, at all times relevant, was a resident of McLean County, Illinois who was employed as an elementary school teacher in the McLean County School District or seeking employment with the McLean County School District.

7.      Defendant BOARD OF EDUCATION OF THE MCLEAN COUNTY UNIT SCHOOL DISTRICT NO. 5, McLEAN AND WOODFORD COUNTIES, ILLINOIS ("McLean County School District"), is a body corporate and politic with its center of governmental operations in McLean County and which operates Colene Hoose Elementary School situated in Normal, McLean County, Illinois.

8.      The McLean County School District benefits substantially from the receipt of federal financial assistance and constitutes a program or activity that has long qualified for such federal financial assistance.

9.      The McLean County School District is in charge of providing a public education to students, including numerous minors such as Doe-20 and Doe-21, through (a) oversight and supervision of all school functions, school property and school student programs and (b) the hiring, supervision, management, assignment, control and regulation of individuals who serve as staff members, including but not limited to school teachers as well as the review and supervision of curricula developed by the district, schools and teachers.

10.     McLean County School District was also in charge of and responsible for the enforcement of all policies, procedures and guidelines within the McLean County School District. This charge and responsibility included supervision and discipline of teachers and administrators including but not limited to White, Braksick, Heidbreder, Heineman, and Pye.

11.     Defendant JAMES BRAKSICK is an individual who has resided and continues to reside in McLean County and who also served as the principal at Colene Hoose Elementary

3

School at least during the 2002-2003 school year and the 2003-2004 school year. BRAKSICK is named in his official and individual capacities.

12.    Following Braksick, EDWARD HEINEMAN, an individual who resided and continues to reside in McLean County, served as the principal at Colene Hoose Elementary School during the 2004-2005 school year, the 2005-2006 school year and the 2006-2007 school year. HEINEMAN is named in his official and individual capacities.

13.    Defendant ALAN CHAPMAN was at all times relevant a resident of McLean County, Illinois, who served as the superintendent of schools for the McLean County School District. CHAPMAN is named in his official and individual capacities.

14.    Defendant DALE HEIDBREDER was at all times relevant a resident of McLean County, Illinois, who served as the assistant principal at Colene Hoose Elementary School during the 2002-2003 school year, the 2003-2004 school year and the 2004-2005 school year. HEIDBREDER is named in his official and individual capacities.

15.    Defendant JOHN PYE was at all times relevant a resident of McLean County, Illinois, who served as the assistant superintendent of operations and human resources for the McLean County School District during the 2002-2003, 2003-2004, 2004-2005, and 2006-2007 school years. PYE is named in his official and individual capacities.

<u>NON-PARTY IDENTITIES</u>

16.    Jane Doe 10 (Doe-10) is a minor child who is a plaintiff in former McLean County Case No. 08-L-147 captioned *Jane Doe 10 et al. v. White, et al.* once pending before the Honorable Scott D. Drazewski but now removed (as Case No. 08-C-1287) to the U.S. District Court, Central District of Illinois, Peoria Division.

4

17.     Julie Doe 10 (Julie-10) is the mother of Jane Doe 10 is a minor child who is a plaintiff in former McLean County Case No. 08-L-147 captioned *Jane Doe 10 et al. v. White, et al.* once pending before the Honorable Scott D. Drazewski but now removed (as Case No. 08-C-1287) to the U.S. District Court, Central District of Illinois, Peoria Division.

18.     Jane Doe 11 (Doe-11) is a minor child who is a plaintiff in former McLean County Case No. 08-L-147 captioned *Jane Doe 10 et al. v. White, et al.* once pending before the Honorable Scott D. Drazewski but now removed (as Case No. 08-C-1287) to the U.S. District Court, Central District of Illinois, Peoria Division.

19.     Julie Doe 11 (Julie-11) and John Doe 11 (John-11) are the mother and father of Jane Doe 11 is a minor child who is a plaintiff in former McLean County Case No. 08-L-147 captioned *Jane Doe 10 et al. v. White, et al.* once pending before the Honorable Scott D. Drazewski but now removed (as Case No. 08-C-1287) to the U.S. District Court, Central District of Illinois, Peoria Division.

20.      Jane Doe 12 (Doe-12) is a minor child who is mentioned as a witness in former McLean County Case No. 08-L-147 captioned *Jane Doe 10 et al. v. White, et al.* once pending before the Honorable Scott D. Drazewski but now removed (as Case No. 08-C-1287) to the U.S. District Court, Central District of Illinois, Peoria Division.

21.     The "Urbana Does" refer to a number of young, female students in the Urbana School District that were sexually abused by White after the McLean County School District forced White to resign due to his misconduct with students.

22.     For the purposes of this complaint, the Doe designation is utilized to protect the identity of each of the other minors from McLean County, Illinois, who were victims of White's crimes and the activities of the defendants.

JURISDICTION AND VENUE

23.     Jurisdiction lies under 28 U.S.C. §1331 inasmuch as this complaint presents a

federal question.

24.     Jurisdiction over the state claims arises under 28 U.S.C. §1367(a).

25.     Venue in the Central District of Illinois, Peoria Division, is appropriate because

the occurrences complained of took place in McLean County. 28 U.S.C. §1391.

FACTS APPLICABLE TO ALL COUNTS

26.     On August 13, 2002, White signed an acknowledgment of his awareness that he

was a mandatory reporter under the Illinois Abused and Neglected Child Reporting Act.

27.     The McLean County School District hired White on August 29, 2002.

28.     The McLean County School District hired White despite having no current

information concerning White's criminal background.

29.     At the time of his hire, White remained on conditional discharge due to his

criminal conviction and sentencing for resisting arrest during an incident involving his

consumption of alcohol and domestic battery on September 9, 2000.

30.     The McLean County School District hired White despite his having pled guilty to

resisting arrest.

31.     White provided false information during his interviews with the McLean School

District in that he reported only that a law enforcement officer surprised him and caused him to

resist arrest.

32.     Under Board Policy 5.30, the McLean County School District could have fired

White at any time for falsifying information during the hiring process.

33. The McLean County School District learned that White was not complete or truthful in his report but did not fire him.

34. Periodically, the McLean County School District terminated White's employment following a school year and rehired him for the following school year without performing background checks on White or reviewing disciplinary issues involving White in his employment for the McLean County School District.

35. On information and belief arising from information reported by parents of children at Colene Hoose, while employed at Brigham School but working for the Town of Normal in its parks and recreation department, White was reported to have used another teacher's computer to access Internet pornography during the 2002-2003 school year.

36. On information and belief, in its investigation of the teacher whose school computer was the subject of the incident referenced in the immediately preceding paragraph, the McLean County School District learned that White did, in fact, access Internet pornography via another teacher's school computer during the 2002-2003 school year.

37. The McLean County School District terminated and rehired White, effective August 20, 2003, then transferred him to a position as a first grade teacher at Colene Hoose Elementary School.

38. Neither Pye, Braksick nor Heidbreder, nor anyone else from within the McLean County School District, engaged in a review of White's background within the McLean County School District or for other employers, such as the Town of Normal (in its parks and recreation department), before the McLean County School District rehired White or before it transferred him to Colene Hoose Elementary School.

39.     Before rehiring White, no one from within the McLean County School District investigated whether there were circumstances of conduct or discipline involving White's presence on McLean County School District property, White's use of McLean County School District property or White's work as an employee of the McLean County School District.

40.     During the 2003-2004 school year, Doe-10, Doe-11 and Doe-12 were minor children that attended Colene Hoose Elementary School in Normal, McLean County, Illinois.

41.     During the 2003-2004 school year, the McLean County School District enrolled Doe-10, Doe-11 and Doe-12 in the first grade class taught by White.

42.     During the 2003-2004 school year, Braksick and Heidbreder were the principal and assistant principal, respectively, at Colene Hoose Elementary School; Pye was the head of human resources for the McLean County School District during the 2003-2004 and 2004-2005 school year; Chapman was the superintendent of the McLean County School District during the 2003-2004 and 2004-2005 school year.

43.     At all times relevant, White was acting within the scope of his employment for the McLean County School District in the position of first grade teacher at Colene Hoose Elementary School. This includes the 2003-2004 school year as well as most of the 2004-2005 school year.

44.     At all times relevant, Heidbreder was acting within the scope of his position of employment for the McLean County School District in his position of assistant principal at Colene Hoose Elementary School.

45.     At all times relevant, Braksick and Heineman were acting within the scope of their positions of employment for the McLean County School District in their successive positions of principal at Colene Hoose Elementary School.

8

46.     At all times relevant, Pye was acting within the scope of his employment as the assistant superintendent of operations and human resources for the McLean County School District.

47.     At all times relevant, Chapman was acting within the scope of his employment and office as the superintendent of schools for the McLean County School District.

48.     White, Heidbreder, Braksick, Heineman, Pye and Chapman were, at all relevant times, mandated reporters under the Illinois Abused and Neglected Child Reporting Act and each and all of them acknowledged this circumstance as a condition of their employment for the McLean County School District.

49.     During the 2003-2004, 2004-2005, 2005-2006 and 2006-2007 school years and within the McLean County School District, mandated reporting was a ministerial act, an act which a person performs in a given set of facts in a prescribed manner in obedience to a legal mandate without reference to any discretion as to the propriety of the act report that implicates the report.

50.     From and after July 9, 1997 and during the 2003-2004, 2004-2005, 2005-2006 and 2006-2007 school years, the McLean County School District independently promulgated a policy titled "Harassment of Students Prohibited" which is Board of Education Policy 7.20 (attached hereto as Exhibit A), a policy titled "Equal Educational Opportunities," Section 7.10 (Exhibit B) and a "Public Concerns" Policy, Section 8.110 (Exhibit C) which assumed duties that employees such as the defendants in this litigation would report acts of sexual harassment, sexual grooming or sexual abuse, particularly when: these acts were committed by a teacher upon students including Doe-10, Doe-11 and Doe-12 through the use of the teacher's power and

9

authority as a teacher within the McLean County School District; and the acts were reported by

members of the public served by the McLean County School District.

51.     On April 23, 1997, the McLean County School District adopted a policy titled

"General Personnel Abused and Neglected Child Reporting," Section 5.90, which provided as set

forth in Exhibit D and this policy was amended on November 29, 2006 as follows:

> Any District employee who suspects or receives knowledge that a student may be an
> abused or neglected child shall immediately report such a case to the Illinois Department
> of Children and Family Services.  The employee shall also promptly notify the
> Superintendent or the principal that a report has been made.  All District employees shall
> sign the Acknowledgement of Mandated Reporter Status form provided by the Illinois
> Department of Child and Family Services and the Superintendent shall ensure that the
> signed forms are retained.
>
> The Superintendent shall provide staff development opportunities for school personnel
> working with students in grades kindergarten through 8, in the detection, reporting, and
> prevention of child abuse and neglect.
>
> Each individual board member must, if an allegation is raised to the member during an
> open or closed board meeting that a student is an abused child as defined in the Act,
> direct or cause the Board to direct the Superintendent or other equivalent school
> administrator to comply with the requirements of the Act concerning the reporting of
> child abuse.

52.     During the 2003-2004 school year, White committed the following acts of

teacher-on-student sexual harassment and/or sexual grooming and/or sexual abuse through use of

his power and authority as a teacher at the McLean County School District:

a.     Hugging female students;

b.     Tickling female students;

c.     Holding and bouncing female students on his leg or foot while White read to the

       class;

d.     Having female students wrap up their legs around him at ankles in order to force

       girls to contact him with their pelvic area;

10

e.     Having female students massage him underneath his shirt and pant legs, occasionally simultaneously with the behavior noted in sub-paragraph d;

f.     Making comments on the appearance and sexual attractiveness of female students;

g.     Making comments to students about the appearance and sexual attractiveness of women depicted in sexually suggestive photographs; and

h.     Touching female students' bodies.

These acts are referred to herein collectively as sexual harassment and/or sexual grooming and/or sexual abuse. This reference expands as set forth later due to conduct during the 2004-2005 school year.

53.     On information and belief arising from his Internet behavior in the 2002-2003 school year and during the 2004-2005 school year, White also continued to view pornography on his classroom computer during the 2003-2004 school year.

54.     Prior to March 2004, parents of Doe-12, a minor female student in White's class, complained to Braksick and Heidbreder of White's teacher-on-student sexual harassment and/or sexual grooming and/or sexual abuse.

55.     Following receipt of the report of White's teacher-on-student sexual harassment and/or sexual grooming and/or sexual abuse against Doe-12, Heidbreder and Braksick concealed the report from parents, students, supervisors and employees.

56.     Following receipt of the report of White's teacher-on-student sexual harassment and/or sexual grooming and/or sexual abuse against Doe-12, Heidbreder and Braksick did not make mandated reports under the Illinois Abused and Neglected Child Reporting Act and under Policy 5.90, Policy 7.20, or Policy 8.110 adopted by the McLean County School District.

11

57. Simultaneously, Heidbreder and Braksick maintained the report concerning Doe-12 in confidence and did not file any report of the conduct with law enforcement or the Illinois Department of Children and Family Services.

58. In approximately March 2004, the mother of Doe-10 and the parents of Doe-11 acted together in an attempt to report White's teacher-on-student sexual harassment and/or sexual grooming and/or sexual abuse of minor female students, including Doe-10 and Doe-11, to Braksick, but Braksick directed them to report White's acts to Heidbreder, instead.

59. Braksick's refusal to accept the reports of the mother of Doe-10 and the parents of Doe-11 contravened McLean County School District Policies 7.10 (Exhibit B), 7.20 (Exhibit A) and 8.110 (Exhibit C) as well as 5.90 (Exhibit D).

60. Braksick refused to receive information so that he could understand the nature of the allegations but the mother of Doe-10 minimally reported to Braksick that White touched Doe-10 and that Doe-10 told her mother that she did not like the White touching Doe-10.

61. The parents of Doe-10 and Doe-11 reported to Braksick that they believed that White's teacher-on-student sexual harassment and/or sexual grooming and/or sexual abuse created a hostile learning environment for minor female students including Doe-10 and Doe-11.

62. In approximately March 2004, the mother of Doe-10 and the parents of Doe-11 together met with Heidbreder and reported White's teacher-on-student sexual harassment and/or sexual grooming and/or sexual abuse of minor female students, including Doe-10 and Doe-11.

63. The parents of Doe-11 told Heidbreder that White had isolated Doe-11.

64. The parents of Doe-11 told Heidbreder that Doe-11 said that White held her on his legs and bounced her.

12

65.     The parents of Doe-11 told Heidbreder that Doe-11 complained of having to give White massages on his legs and on his back underneath his clothes and of having to sit with her pelvic area resting on White's legs while Doe-11's legs were wrapped tightly around White's legs.

66.     The physical alignment of children wrapping their legs tightly around White's legs created an environment of physical contact between the pelvic area of the female students and White's legs and constitutes obviously inappropriate physical contact between an adult and a minor.

67.     Following the reports of the parents of Doe-11 and the mother of Doe-10 to Heidbreder, the father of Doe-11 went to White's classroom. Heidbreder also followed the father of Doe-11 to White's classroom. At this point, the father of Doe-11 confronted White about touching Doe-11 and, on information and belief, caused White to cry.  White did not then deny the statements of Doe-11 or John-11.

68.     Heidbreder then hurried the father of Doe-11 out of the classroom while telling him "Look, you've made him cry."

69.     Following the report from the mother of Doe-10 and the parents of Doe-11 to Heidbreder, White contacted the mother of Doe-10 and stated: (a) White was worried about his career; (b) White would not refuse to stop hugging his minor female students; and (c) White believed that there was nothing wrong with his touching female students in the fashion described by the mother of Doe-10 and the parents of Doe-11.

70.     Following the attempted reports of the mother of Doe-10 and the parents of Doe-11 to Braksick and after the reports by them to Heidbreder, White also told the mother of Doe-11

that: (a) White was worried about his career; and (b) White's hugs were good because these hugs were the only hugs these female students ever received.

71.     On information and belief arising from the McLean County School District Board Policies concerning parental input, complaints, harassment and reporting (see Exhibits A-D), following the reports from mother of Doe-10 and the parents of Doe-11 to Heidbreder, Heidbreder communicated the reports noted in Paragraphs 54, 58, 62, and 67 to Braksick, White, Pye and Chapman.

72.     Following the reports noted in Paragraphs 54, 58, 62, and 67 from mother of Doe-10 and the parents of Doe-11 to Heidbreder,  Heidbreder, Braksick, White, Pye and Chapman did not make reports as provided for under the Illinois Abused and Neglected Child Reporting Act or as provided for under McLean County School District Board Policy 5.90 (see Exhibit D).

73.     Following the report from Heidbreder to Braksick concerning the reports of the mother of Doe-10 and the parents of Doe-11 to Heidbreder, Heidbreder, Braksick, White, Pye and Chapman did not make mandated reports as provided for under the Illinois Abused and Neglected Child Reporting Act or as provided for under McLean County School District Board Policy 5.90 (see Exhibit D).

74.     Following the reports from mother of Doe-10 and the parents of Doe-11 to Heidbreder, Heidbreder, Braksick, White, Pye and Chapman did not make mandated reports provided for under Policy 7.20 of the McLean County School District attached as Exhibit A.

75.     Following the reports noted in Paragraphs 69-70 from Heidbreder to Braksick concerning the reports of the mother of Doe-10 and the parents of Doe-11 to Heidbreder, Heidbreder, Braksick, White, Pye and Chapman failed to make mandated reports provided for under Policy 7.20 of the McLean County School District attached as Exhibit A.

76.     Heidbreder, Braksick, White, Pye, and Chapman all had explicit knowledge and understanding of the terms of the Illinois Abused and Neglected Child Reporting Act and the policies of the McLean County School District attached as Exhibits A-D).

77.     Following the reports from the mother of Doe-10 and the parents of Doe-11 to Heidbreder and through April 2005, neither Heidbreder, Braksick, White, Pye nor Chapman took action to cause the investigation of the reports beyond that which was referred to above and none of them caused the reflection of the reports and any circumstances of investigation to be reflected in any files within the McLean County School District.

78.     Following the report from Heidbreder to Braksick concerning the reports of the mother of Doe-10 and the parents of Doe-11 to Heidbreder and through April 2005, neither Heidbreder, Braksick, White, Pye nor Chapman took action to cause the investigation of the reports other than that which is mentioned above and none of them caused the reflection of the reports and any circumstances of investigation to be reflected in any files within the McLean County School District.

79.     Following the reports from the mother of Doe-10 and the parents of Doe-11, Heidbreder, Braksick, Pye and Chapman agreed that they would not make any reports under the Illinois Abused and Neglected Child Reporting Act or under the policies of the McLean County School District attached as Exhibits A-D.

80.     Heidbreder, Braksick, Pye and Chapman simultaneously agreed to conceal the reports of the mother of Doe-10 and to conceal the reports of the parents of Doe-11 and to conceal reports of White's teacher-on-student sexual harassment and/or sexual grooming and/or sexual abuse of Doe-10 and Doe-11 as well as reports concerning at least one other minor female student, Doe-12.

15

81.     Following the reports from the mother of Doe-10 and the parents of Doe-11 to Heidbreder and through April 2005, White, Heidbreder, Braksick, Pye, and Chapman as well as the McLean County School District:

a.     were deliberately indifferent to the safety, security and comfort of all of White's minor female students during the 2003-2004 school year, including but not limited to Doe-10, Doe-11 and Doe-12 and to the safety, security and comfort of all of White's minor female students during the 2004-2005 school year, including, but not limited to, Doe-20 and Doe-21;

b.     willfully and wantonly left Doe-10, Doe-11 and Doe-12 in White's classroom during the 2003-2004 school year and continued to register and place other minor female students, including Doe-20 and Doe-21, in White's classroom for the 2004-2005 school year;

c.     willfully and wantonly concealed White's teacher-on-student sexual harassment and/or sexual grooming and/or sexual abuse of minor female students prior to the 2004-2005 school year;

d.     willfully and wantonly refused and failed, under policies of the McLean County School District attached as Exhibits A-D and the Illinois Abused and Neglected Child Reporting Act, to report the acts of White that constituted teacher-on-student sexual harassment and/or sexual grooming and/or sexual abuse;

e.     willfully and wantonly refused and failed to investigate the reports of the mother of Doe-10 and the parents of Doe-11 and to investigate whether the conduct of White that was addressed within the reports noted in Paragraphs 54, 58, 62, and 67 was more widespread or continuing;

16

f.  willfully and wantonly ignored the rights, duties and abilities of the mother of Doe-10 and the parents of Doe-11 as well as the parents of Doe-20 and Doe-21 to engage in parental efforts and actions to assist their children; and

g.  willfully and wantonly prevented Doe-20 and Doe-21 from receiving an education without a condition of such education being sexual harassment and/or sexual grooming and/or sexual abuse.

82.  Following the reports concerning Doe-12 and the reports of the mother of Doe-10 and the parents of Doe-11, White continued to sexually harass and/or sexually groom and/or sexually abuse Doe-10 and Doe-11.

83.  Heidbreder, Braksick, Pye and Chapman all had actual knowledge of White's teacher-on-student sexual harassment and/or sexual grooming and/or sexual abuse of minor female students in the McLean County School District, particularly in the activities of White as a first grade classroom teacher in the 2003-2004 school year.

84.  Despite their express knowledge of White's conduct in the 2003-2004 school year, as reported by the mother of Doe-10 and the parents of Doe-11, Heidbreder, Braksick, Pye and Chapman refused and failed to record the reports of the mother of Doe-10 and the parents of Doe-11 in the personnel file for White or to cause sufficient information to be placed with the human resources personnel for the McLean County School District so that this conduct could be placed of record.

85.  On March 11, 2004, White was terminated by reason of correspondence indicating that White was not to be re-employed for the 2004-2005 school year. The termination was unrelated to the reports of White's conduct with Doe-10, Doe-11 and Doe-12.

86.     On March 11, 2004, the McLean County School District also asked White to re-apply for a position with the McLean County School District.

87.     On May 3, 2004, White re-applied for a teaching position for the 2004-2005 school year.

88.     In relation to White's application for re-employment, there was no action by the McLean County School District to investigate the truthfulness of White in his interview or White's history of employment or to discover either complaints, results of investigations such as the one of computer use in the 2002-2003 school year or the actions of White in relation to Doe-10, Doe-11 and Doe-12 during the 2003-2004 school year.

89.     On June 17, 2004, the McLean County School District re-employed White with an effective date of August 23, 2004.  At no time in the process of re-hiring White did the McLean County School District consider the reports of Doe-10, Doe-11 and Doe-12.

90.     Despite their express knowledge of White's conduct in the 2003-2004 school year, as reported by the mother of Doe-10 and the parents of Doe-11, Heidbreder, Braksick, Heineman, Pye and Chapman did not advise, and they refused and failed to advise, other administrators, staff members, lunch room and recess supervisors, janitors and visiting student teachers in White's classroom of any of the allegations concerning Doe-10, Doe-11 and Doe-12 or of the need for communication of any circumstances from which one might conclude continuing behavior by White that was consistent with the reports concerning Doe-10, Doe-11 and Doe-12.

91.     Despite their express knowledge of White's conduct in the 2003-2004 school year, as reported by the mother of Doe-10 and the parents of Doe-11, Heidbreder, Braksick (or Heineman), Pye and Chapman, acting within the scope of their respective employments for the

18

McLean County School District, allowed registration for the first grade class at Colene Hoose Elementary School taught by White.

92.      Julie-20 and John-20 registered Doe-20 for the first grade and Braksick and Heidbreder enrolled Doe-20 in the first grade class taught by White.

93.      Julie-21 and John-21 registered Doe-21 for the first grade and Braksick and Heidbreder enrolled Doe-21 in the first grade class taught by White.

94.      At no time until 2007 did Julie-20, John-20, Julie-21 or John-21 have any communication, information or understanding concerning the reports of the mother of Doe-10 and the parents of Doe-11 or concerning White's conduct in the 2003-2004 school year involving sexual harassment and/or sexual grooming and/or sexual abuse of minor female students including but not limited to Doe-10, Doe-11, and Doe-12.

95.      White was married as of August 2004 and this status continued through at least February 2007.

96.      On August 26-27, 2004, White used school computers to access www.kappagirls.com on August 26-27, 2004, a domain name registered to Ghantous Law Offices, 3100 N Dries Lane, Suite #103, Peoria, IL 61604, for the benefit of a nearby gentlemen's club slightly north of Normal and called the Kappa Kabanna. The web site offered live adult web cams, adult video on demand, adult video sales and adult-oriented video chat.

97.      On September 14-15, 2004, White used school computers to access www.adultfriendfinder.com and sites related to www.adultfriendfinder.com that offered adult-oriented interaction and social sexual networking as well as video content.

98.      On information and belief, White used school computers to access www.match.com on September 16, 17, 29, and 30, 2004.

99.     On October 7, 2004, White used his email address provided by the McLean County School District to receive a receipt for a subscription to "*s.b. fuck adventures & drunk s.b. girls*" and the McLean County School District possessed the source of the subscription, the name of the websites at issue as well as the username and password for access to the website shortly after October 7, 2004.

100.    On at least October 11, 2004, White accessed adult website content from the following websites at his classroom computer:

a.      www.xfusionmembers.com to view hundreds of adult images of younger women;

b.      www.springbreakfuckadventures.com to view hundreds of adult images of younger women;

c.      www.drunkspringbreakgirls.com to view images of younger women; and

d.      www.homesexnetwork.com for live interactive Internet chat with younger women (who posted their photographs and video feeds).

101.    As of October 12, 2008, the McLean County School District had access to information that would have allowed it to conduct an investigation into the nature of the Internet pornography that White was viewing and into the activities of White while viewing pornography in his classroom.

102.    In fact, as of as early as October 12, 2004, the McLean County School District had observed White search for Internet pornographic download material and it actually observed White's screen as White watched this material on his school classroom computer, including at least one video of two younger women on their knees, squatting or sitting, and performing fellatio on a man who was standing above them (a position similar to how he abused Doe-20, Doe-21 and some of the Urbana Does).

20

103.    As of October 12, 2004, the McClean County School District knew that White enjoyed Internet pornography that included material depicting scenes of sex between older men and younger women who were drunk and had diminished capacity to refuse consent.

104.    As of October 12, 2004, the McLean County School District knew that White used his school classroom computer to download video and photo pornography from the Internet during hours when children were present in the classroom or could have been present in White's classroom.

105.    The McLean County School District knew that White viewed Internet pornography in the classroom when children were present in the classroom or could have been present in White's classroom.

106.    As of at least as early as October 12, 2004, the McLean County School District knew that, in summer 2004 and as late as September 2004, White delivered electronic mails containing adult content consisting of video files to at least two other employees of the McLean County School District.

107.    The McLean County School District knew that one recipient of the adult material from White worked in district administrative offices.

108.    The McClean County School District knew that White deleted all computer records of Internet pornography on his computer at school, but that, at 12:18 p.m. on October 13, 2004, White emailed 88 Internet pornographic movies to his personal computer at home.

109.    On information and belief arising from the fact that White paid for the content and spent substantial periods of personal and work time downloading adult content onto his school computer, White deleted the adult content saved on his classroom computer upon the request of the McLean County School District.

21

110.    The McLean County School District knew or should have known that White was engaged in pornographic chat communications in his classroom and from his school classroom computer, that White was searching for people with whom he could act out personal sexual desires and that White was doing so outside of his marriage.

111.    Heineman, Heidbreder and Pye knew or should have known of all of the forgoing circumstances involving White and his computer activities.

112.    Heineman knew or should have known of the reports concerning the sexual abuse, sexual harassment and sexual grooming of Doe-10, Doe-11 and Doe-12.

113.    In late September 2004 and early October 2004, White asked his first grade classroom for volunteers for a special project. White selected Doe-20 and Doe-21 (both minor female students) among volunteers that included at least two male minor students. White told the class and Doe-20 and Doe-21 that the special project was part of the 2004-2005 curriculum, specifically relating to a Helen Keller lesson.

114.    On October 19, 2004, White met with the teacher's union president, Pye and Heineman and reviewed with them all of the documentation by the McClean County School District of subscriptions to and use and viewing of inappropriate and pornographic Internet sites in his classroom:

a.      At and following this meeting, Pye placed White on paid suspension for his violation of Board of Education Policy 6.235-access to computer hardware, software and electronic networks such as the Internet and the McLean County School District's technology code of conduct but one would never know from the disciplinary letter that White was suspended for viewing pornography including

22

explicit nude photos of young women and videos of young women in group sex
situations with men;

b.      The McLean County School District papered the violation as a prohibition against
the use of technology and electronic networks for activities that do not support
education, research or the furtherance of Board of Education goals;

c.      White received a reprimand, paid suspension through October 29, 2004 and
direction to seek counseling; and

d.      White was orally informed that he was surfing pornographic websites in school
and this had to stop, but he was advised in writing only that he violated the
computer use policy for the McLean County School District.

115.    At no point did Pye, Heineman or Braksick ever make a full record of the nature
of White's sexual acting out.

116.    The disciplinary letter authored by Pye, placed in the personnel file and delivered
to White stated: "You are to maintain counseling through the district Employee Assistance
Program or through a counseling service of your choice."

117.    The reprimand was placed in White's personnel file.

118.    On information and belief, the McLean County School District placed no material
in White's file that explained the use of the Internet and computer for prohibited purposes
relating to pornography involving younger women and younger women in group sex situations
as well as efforts to engage in social and sexual activities.

119.    On information and belief, White did not maintain counseling.

120.    In lieu of insuring that White maintained counseling, the McLean County School District accepted a letter from White's counselor that essentially stated that White participated in only five sessions—two of which occurred during the week of his paid suspension.

121.    Following October 29, 2004, the McLean County School District allowed White back into the classroom environment.

122.    White issued a letter apology to Pye on October 29, 2004. Nothing in the letter mentions that White engaged himself in pornographic chat and viewing explicit and nude images of younger women and videos of younger women, some in group sex situations.

123.    From the October 29, 2004 letter, Pye and Heineman knew or should have known that:

a.      White met with a counselor twice during his suspension;

b.      White had a problem that required further counseling;

c.      White's problem was not cured or solved by reason of the two counseling visits;

d.      White himself believed that a reasonable person might draw the conclusion that his problem could extend to children in his classroom;

e.      White was in denial that his problem extended to children in his classroom; and

f.      White was grateful for the efforts Pye and Heineman made to avoid disclosure of the true nature of his activities.

124.    Through October 29, 2004 when the McLean County School District allowed White back into the classroom, the McLean County School District, Chapman, Pye, Braksick, Heineman and Heidbreder knew or should have known that White improperly used school computers to access Internet pornography when working for the Town of Normal, faced similar reports of sexual abuse, sexual harassment and sexual grooming from the parents of Doe-10,

24

Doe-11 and Doe-12, and that White (while married) was engaged in several means of acting out sexually and doing so in a fashion that White could not control.

125.    The McLean County School District, Chapman, Pye, Braksick, Heineman and Heidbreder knew that White was utilizing his position as a first grade teacher, the classroom provided him and the computers and software assigned to his classroom at Colene Hoose Elementary School to act out in private and publicly.

126.    Despite their knowledge that White obstructed lawful authority and was on probation when the McLean County School District hired him, and despite the blatant and flagrant violation of trust reflected in his use of the computer and Internet to circulate improper material, to view images of young women and to view videos of young women in group sex situations, Pye and Heineman never took steps to confirm whether White was truthful when he stated that his problem did not affect how he taught his school children.

127.    Neither the McLean County School District, Pye nor Heineman took any steps to determine the nature of the photographs and video other than to the extent that it printed website browser hits and took a monitor snapshot of White's computer while White was watching the aforementioned video of two young women on their knees performing fellatio on a man in a group sex situation.

128.    As noted later in this complaint, the actions of White relate directly to his fantasies and the content of the video in that the precise number of actors (White and two young school girls, Doe-20 and Doe-21), with the male above were engaged in a group sexual situation where the standing male received fellatio from the much younger kneeling, squatting or sitting female students.

129.    Following the McLean County School District's knowledge of White's Internet activities and the reports concerning Doe-10, Doe-11 and Doe-12, there were no policies or procedures implemented or followed so that White could be observed more directly and more frequently or to prevent White from using school computers to access pornography via readily available Internet blocking technology.

130.    Following the McLean County School District's knowledge of White's Internet activities and the reports concerning Doe-10, Doe-11 and Doe-12, there were no techniques implemented with the purpose of preserving opportunity to observe White such as mandating an open door or open blinds or unobstructed views throughout the classroom provided to White.

131.    There were no interviews of students or requests for input from parents or teachers to gauge the nature of the public, semi-public and private interactions with White.

132.    There was no communication to parents about possible means of communication among them or with their children that would serve to determine whether White conducted himself inappropriately in the presence of children in his class.

133.    Pye, Heineman, Heidbreder and the McLean County School District chose not to test White's statements in the October 29, 2004 letter or in his October 28, 2008 meeting with Heineman despite their knowledge that White's Internet download activity occurred during daytime and classroom hours and took place in the classroom itself.

134.    There was no indication placed in White's file to the effect that White was engaged in inappropriate teacher-student, that White likely suffered a serious sexual addiction, or that White was seeking counseling yet to be completed for sexually addictive behavior.

135.    On November 4, 2004, Heineman concluded a review of White and provided a satisfactory rating to White.  Heineman noted that his compliance with school policies was unsatisfactory without providing an explanation.

136.    On information and belief arising from the last records concerning teacher review placed on file with the Illinois State Board of Education, the means of review and the statements contained in Heineman's November 4, 2004 review of White did not meet the standards adopted by the McLean County School District and last forwarded to the Illinois State Board of Education.

137.    Sometime in February 2005, Heineman again reviewed White and provided a satisfactory rating.

138.    The February 2005 evaluation stated that White's compliance with school policies was adequate.

139.    On information and belief arising from the last records concerning teacher review placed on file with the Illinois State Board of Education, the means of review and the statements contained in Heineman's February 2005 review of White did not meet the standards adopted by the McLean County School District and last forwarded to the Illinois State Board of Education.

140.    During the course of the 2004-2005 school year, and between October 1, 2004 and April 2005, White engaged in the following acts with Doe-20 and Doe-21:

a.      White groomed Doe-20 and Doe-21 for sexual interaction with White to the point where Doe-20 wrote a February 2005 Young Author's story about how she was regularly being asked by White to leave recess and lunch and how she left recess and lunch to help White privately with classroom management and the special project thereby indicating that Doe-was 20 incapable by reason of her trust in

White to recognize the inappropriateness and illegality of the conduct of White described in this Paragraph 140;

b.      White locked himself, Doe-20 and Doe-21 in a closed room with window blinds drawn closed;

c.      White blindfolded Doe-20 and instructed her not to communicate or acknowledge sounds other than his own voice;

d.      White engaged in physical contact with Doe-20 and Doe-21 for the purposes of his own sexual gratification, including but not limited to the massaging of his back and legs underneath his clothing (as to Doe-20), the insertion of food, his fingers, other objects and his penis into the mouths of Doe-20 and Doe-21 (occasionally doing so when Doe-20 was on her knees and Doe-21 was sitting or squatting on a low stool);

e.      White engaged in other acts to isolate Doe-20 and Doe-21 from the remainder of the class during recess and lunch; and

f.      White engaged in activities to sexually harass, sexually groom and sexually abuse Doe-20 and Doe-21.

141.    Despite the reports of the mother of Doe-10 and the parents of Doe-11, as well as the report concerning Doe-12, Doe-20 and Jane Doe-21 were placed in a classroom and school environment that permitted White to create a "Helen Keller curriculum" that included isolation, stifling of communication, blindfolds, touches and bodily contacts for purposes that included the sexual gratification of White.

142.    White forced Doe-20 and Doe-21 to engage in oral sex with White and to hug White.

28

143.    Doe-20 and Doe-21 were locked in White's first grade classroom at lunch and during recess.

144.    Lunch room or other supervisors allowed their departure with White. Doe-20 and Doe-21 were locked in their classroom when no other students were present and when the blinds in the classroom were closed shut to block views from the outside of the room.

145.    At least one other teacher knew of the circumstances of the locked door and the closed blinds in that this teacher knocked at the door and engaged in a conversation at the door with White as Doe-20 and Doe-21 were in blindfolds. This teacher was not permitted to enter White's room.

146.    On at least one occasion, Doe-20 was held and blindfolded by White in his first grade classroom.

147.    The above sexual abuse of Doe-20 and Doe-21 occurred at least one day each week between October 1, 2004 and April 10, 2005.

148.    White's sexual grooming and sexual harassment of Doe-20 and Doe-21 occurred daily between October 1, 2004 and April 10, 2005.

149.    White's non-sexual conduct with Doe-20 and Doe-21 also occurred on at least a weekly basis with multiple events of Doe-20 and Doe-21 being locked and one of them blindfolded in their first grade classroom in some weeks.

150.    On occasion, and in class, White would also ask Doe-20 and Doe-21 to spit in cups that White held in his hand for the purported reason that water was not functioning in the classroom. Despite protest by Doe-20 and by Doe-21, White forced Doe-20 and Doe-21 to spit in the cup following an explanation that he would mix their spit with his fingers and then use their spit to clean the overhead projector.

151.    White never engaged in similar acts of sexual grooming, sexual harassment or sexual abuse with or of any male students, either publicly or privately.

152.    In April 2005, Colene Hoose Elementary School sent a letter home in Doe-20's backpack and Doe-21's backpack. This letter constituted the first knowledge that Jane-20 and John-20 as well as Jane-21 and John-21 had that Braksick, Heineman and Heidbreder had a problem with White teaching first grade. The letter notified parents, including the parents of Doe-20 that White would not return and to teach Doe-20 and Doe-21. The letter did not provide an explanation.

153.    The only story emanating from some local parents in or around April 2005 was that White shared inappropriate Internet pictures of a movie actress with one with female student.

154.    White, Braksick, Heineman, Heidbreder and Pye all knew of the circulating story and the additional facts, including the reports of the mother of Doe-10 and the parents of Doe-11, as well as the absence of a denial by White, but each failed to advise parents of any other fact, circumstance or knowledge within the control of the employees and officials of the McLean County School District.

155.    White resigned from his position as a first grade teacher in April 2005. Attendant to his resignation, White was, on information and belief, provided a pocket letter of recommendation by Heineman.

156.    Prior to White's resignation, White entered into a severance agreement with the McLean County School District through which White and the McLean County School District as well as Braksick, Heidbreder, Pye, Chapman and, now, Heineman advanced their objective of

concealing White's teacher-on-student sexual harassment and/or sexual grooming and/or sexual abuse of minor female students, including Doe-10, Doe-11, Doe-20 and Doe-21.

157.    At all times from and after the reports of the mother of Doe-10, the parents of Doe-11 and the mother of Doe-12 through White's resignation, Heidbreder, Braksick, Pye, Chapman, and Heineman were deliberately indifferent to Doe-20's and Doe-21's safety and to their learning environment.

158.    Following his forced resignation, White addressed Doe-20 in a personal letter, penned to her that reminded Doe-20: "Just remember if you ever make it to Hollywood don't forget about your 1st grade teacher."

159.    Following his forced resignation, White continued to engage himself in children's activities, including with the local Normal Parks Department. White was the summer 2005 supervisor of a pre-softball program for the Normal Parks and Recreation Department portions of which were attended by Doe-20 as a non-participant.

160.    During early summer 2005, White utilized his position as such supervisor in order to pursue Doe-20 at various practices and games at which she continually was made to feel uncomfortable because her parents attended these practices and, during a game, White asked Doe-20 to journey alone with him to the secluded interior of the press box—requests that Doe-20 refused.

161.    On one occasion, John-20 joined White and Doe-20 on a journey to the press box when White's request was repeated by Doe-20 to John-20.

162.    During the period between October 1, 2004 and April 10, 2005, Doe-21 experienced several unnecessary absences due to stomach aches and other ailments.

31

163.    Both Doe-20 and Doe-21 missed school and extracurricular opportunity due to White's conduct.

164.    On February 1, 2007, authorities arrested White in Urbana, Illinois and White was eventually charged with several counts for aggravated criminal sexual activity with minors in Urbana and in Normal.

165.    On February 2, 2007, Heineman and Julie-20 engaged in a conversation where Heineman stated that White was "the biggest prick in the school" when Heineman asked White to resign. Heineman knew of the reports of the mother of Doe-10 and the parents of Doe-11, but he did not disclose these reports to Julie-20. During this discussion, Heineman stated:

a.    Heineman stated that he and the McLean County School District worked with the Unit Five Education Association to get White help because they saw him "going down wrong path," again utterly failing to disclose the 2003-2004 school year reports of improper sexual harassment and/or sexual grooming and/or sexual abuse of minor female students Doe-10, Doe-11 and Doe-12 in White's care at Colene Hoose Elementary School; and

b.    Heineman also reported that White refused a final ultimatum to stay employed while seeking help and Heineman reported that an April 2005 incident (later understood to have involved White and his stalking of a minor female student in White's 2003-2004 first grade class) was the "last straw" that caused Heineman to force White to resign in April 2005.

166.    At no time did the McLean County School District provide notice or information directly to parents in order to advise them generally or specifically of knowledge within the District concerning White and his behavior as a first grade teacher at Colene Hoose.

167.    Following White's resignation in April 2005 and until February 8, 2007, Heidbreder, Braksick, Pye, Chapman, and Heineman were deliberately indifferent to Doe-20's and Doe-21's safety and to their learning environment.

168.    On February 6, 2007, John-20 learned of the activities of White between White and Doe-20 and Doe-21.  John-20 and Julie-20 reported White's sexual grooming, sexual harassment and sexual abuse of Doe-20 immediately.

169.    Chapman continued in his agreement with Heidbreder, Heineman, Braksick and Pye to conceal the reports of the mother of Doe-10 and the parents of Doe-11 through at least February 27, 2007 when he told the Bloomington Pantagraph newspaper "No one raised any allegations of criminal behavior (at Unit 5), either before the Urbana allegations or at any time to date," and stated "We will do whatever is possible to support our students, families and staff members in these extremely distressing circumstances."

170.    Through May 20, 2007, Pye and other McLean County School District officials were denying (to the Bloomington Pantagraph) that there were any reports of abuse by White prior to White's forced resignation, but they declined to disclose the basis for White's forced resignation.

171.    In Champaign County and McLean County, White pled guilty to charges of criminal sexual abuse.

172.    Doe-20 and Doe-21 suffered emotional distress that caused Doe-20 to suffer tension to the point of once being disciplined at school over uncharacteristic behavior and caused Doe-21 to suffer illnesses that were unexplained other than resulting distress.

173.     Doe-20 loses sleep over the White incident, has reverted on several occasions to sleeping with her parents, lost her trust in educators, lost her interest in sports and extracurricular activities and requires counseling on a continual basis.

174.     Doe-21 struggles with trusting male authority figures including teachers and her friend's fathers.

175.     Doe-20 suffers heavy guilt and has had dreams of White's conduct with the Urbana Does that Doe-20 knows White sexually abused despite never reading of the sexual abuse committed by White in Urbana.

176.     Heidbreder, Braksick, Pye and Chapman, along with Heineman, aided and abetted White in his sexual grooming, sexual harassment and sexual abuse of Doe-20 and Doe-21.

**COUNT ONE--DISCRIMINATION (FEDERALLY FUNDED EDUCATION PROGRAM)**
**(Doe-20 and Doe-21 vs. McLean County School District)**

177.     Doe-20 and Doe-21 hereby repeat and reallege by this reference Paragraphs 1-176 of this complaint into this Paragraph 177 of Count One which arises under Title IX.

178.     At no time did White perpetrate any act of sexual grooming, sexual harassment or sexual abuse or participate in any act of a sexual nature or with sexual overtones involving any minor male student in a class taught by White.

179.     At all relevant times, including for the 2003-2004 school year, the 2004-2005 school year and through May 2007, McLean County School District was an educational institution that provided public school education and received federal financial assistance.

180.     Since at least 1997, the McLean County School District has possessed actual notice that it could be liable under Title IX for (a) teacher on student and administrator on

student sexual harassment, (b) teacher on student and administrator on student sexual
discrimination; and (c) teacher on student sexual abuse.

181.    At all relevant times in the 2003-2004 school year and in the 2004-2005 school
year, Braksick, Heidbreder, Heineman and Pye possessed actual knowledge of White's sexual
harassment, sexual discrimination and sexual abuse. Each of them exercised substantial control
over the alleged harasser and over the school environment during and after school hours.

182.    At all relevant times in the 2003-2004 school year and in the 2004-2005 school
year, Braksick, Heidbreder, Heineman and Pye possessed actual knowledge that White had a
high potential to sexually abuse his then-students; and each of them was explicitly aware of
McLean County School District policies prohibiting harassment and providing for grievances
and reporting of harassment and local policies regarding the reporting of sexual grooming, sexual
harassment and sexual abuse of students.

183.    At all relevant times in the 2003-2004 school year and in the 2004-2005 school
year, Braksick, Heidbreder, Heineman and Pye possessed actual knowledge of a substantial risk
that White would abuse female students in his first grade class based on prior complaints
concerning Doe-10, Doe-11 and Doe-12, all female students formerly in White's classroom, and
based on the nature of the Internet activities that White engaged in.

184.    On information and belief, Chapman possessed the knowledge or should have
known of the risk noted in Paragraph 183 and the potential and policies noted in Paragraph 182.

185.    On information and belief, Chapman, Heidbreder, Braksick, Heineman and Pye
possessed decision-making authority concerning the procedures and conduct of investigations
into and actions taken upon reports of sexual abuse, sexual harassment and sexual grooming.

186.     At all relevant times, Doe-20 and Doe-21 were subject to discrimination in their educations at the McLean County School District based on their gender in that they suffered teacher-on-student sexual harassment, sexual grooming and sexual abuse as a condition of their receipt of a first grade education that Colene Hoose Elementary School within the McLean County School District.

187.     At all relevant times, the McLean County School District had actual notice of White's teacher-on-student sexual harassment, sexual grooming and sexual abuse of Doe-10, Doe-11 and Doe-12 and it continued to enroll minor female students in the first grade class taught by White and they did so without any supervision or surveillance of any kind to determine whether the abuse of female minor students in the first grade by White occurred during the 2003-2004 school year or would stop during the 2004-2005 school year.

188.     As reflected by its inaction following parental reports of teacher-on-student sexual harassment and sexual grooming and sexual abuse of Doe-10, Doe-11 and Doe-12, following the discovery of White's Internet pornography activities in the classroom and following White's failure to maintain and continue counseling, the McLean County School District was deliberately indifferent to the rights and safety of Doe-20 and Doe-21.

189.     The McLean County School District was deliberately indifferent in that it failed to comply with its own policies and report teacher-on-student sexual harassment, failed to report sexual grooming and sexual abuse to appropriate authorities under its own mandatory reporting requirements and failed to cure or even attempt to obvious risks to minor female students placed in White's first grade class in 2004-2005.

190.     The McLean County School District was deliberately indifferent to the rights of Doe-20 and Doe-21 in that it failed, during the 2003-2004 school year, and during each school

36

year thereafter through at least February 7, 2007, to communicate any precautions, directives or educational pieces that might be utilized between parent and child to identify whether or not inappropriate conduct that occurred between any student/child and another adult, whether generally or specifically in relation to White.

191.    The McLean County School District was deliberately indifferent in continuing to enroll minor female students, including Doe-20 and Doe-21, in White's first grade class without conducting, documenting and concluding an investigation into the allegations and specific facts brought by the parents of Doe-10, Doe-11 and Doe-12.

192.    The McLean County School District was deliberately indifferent in continuing to enroll female students, including Doe-20 and Doe-21, in White's first grade class when officials at Colene Hoose Elementary School had absolutely no plan for supervision or surveillance of White and when White continued without complaint or observation by the school to completely close blinds in the windows of his classroom and to close and obstruct or lock the door to the classroom so that he could blindfold and sexually abuse Doe-20 and Doe-21.

193.    The deliberate indifference and actions in deliberate indifference to the actual knowledge possessed by McLean County School District of teacher-on-student sexual harassment, sexual grooming and sexual abuse caused a Doe-20 and Doe-21 to suffer unwarranted, unwelcome and uninvited sexual abuse of a gross and predatory nature each week from October 1, 2004 through April 10, 2005.

194.    McLean County School District was deliberately indifferent to the safety of minor female students in the first grade at Colene Hoose Elementary School including but not limited to Doe-20 and Doe-21.

37

195.    Title IX, 20 USC §1681, *et seq.*, required the McLean County School District to provide educational opportunity on an equal basis to all students regardless of their gender.

196.    The McLean County School District failed to comply with Title IX in that the McLean County School District continued to register minor female students in White's first grade elementary school class without providing even the simplest precautions such as requiring an open door, mandating complete unobstructed classroom views and close supervision of White.

197.    The McLean County School District failed to comply with Title IX in that the McLean County School District continued to register minor female students in White's first grade elementary school class without ensuring that education would be provided to minor female students on an equal basis as that education provided by White and the McLean County School District to minor male students.

198.    The policy or practice of receiving multiple complaints of harassment and abuse concerning White's conduct with female students then placing additional female students in White's classroom without any investigation into whether White was harassing and abusing female students led to a deprivation of Doe-20's and Doe-21's right to equal public education without discrimination on the basis of sex and sex indeed became a condition of receiving and education.

199.    By reason of the McLean County School District's deliberate indifference to sexual harassment, sexual grooming and sexual abuse, Doe-20 and Doe-21 suffered bodily harm, severe emotional distress and educational harm, all injuries of which have continued since October 2004 to the present date and will continue for decades into the future.

WHEREFORE, the plaintiffs, Doe-20 and Doe-21 each respectfully request that this Honorable Court enter judgment in their favor and against the McLean County School District for compensatory damages in excess of $50,000.00, for court costs, for the expenses of this litigation and for their attorneys fees as well as any other relief deemed necessary and just by this court.

## COUNT TWO-- DENIAL OF SUBSTANTIVE DUE PROCESS (42 U.S.C. Sec. 1983)
### (Doe-20 and Doe-21 v. All Defendants)

200.    Doe-20 and Doe-21 hereby repeat and reallege, by this reference, Paragraphs 1-199 of this complaint into this Paragraph 200 of Count Two which is stated in addition and also alternatively to Count One and addresses incidences of detention and the loss of privacy and bodily freedom possessed by any student, male or female, that are characterized as non-sexual in nature.

201.    White possessed authority allowed under the policies of the McLean County School District to direct and control the movement of students and to detain students in his first grade classroom, and while under this control, Doe-20 and Doe-21 possessed rights to due process and to avoid the deprivation of their personal liberty.

202.    White isolated only Doe-20 and Doe-21 for projects of a non-sexual nature that included blindfolds and restraints on or prohibitions of communication.

203.    White prodded female students to engage in ridiculous acts such as acting as his servants and providing saliva for whatever purpose White used it (allegedly, according to White, to clean the overhead projector).

204.    While Count One alleges grooming, sexual harassment and sexual abuse during classroom sessions with other students present and when in private with one student or a pair of

39

students during the 2003-2004 school year and the 2004-2005 school year, this Count Two assails the conduct of White to the extent that it did not derive from sexual conduct or sexual interests or relate to discrimination against students on the basis of their sex.

205.     White forced Doe-20 to sit on his upper foot around his ankles in a compromising, physically uncomfortable position (if this position is not viewed as obviously sexual), forced Doe-20 and Doe-21 to provide saliva for purposes no other student was assisting in, coerced Doe-20 and Doe-21 to act as virtual slaves in cleaning his classroom and to otherwise abandon their freedom of movement to him as he blindfolded them and ran taste, touch and other tests on them in what he conveyed to Doe-20 and Doe-21 was part of the Helen Keller curriculum in the first grade class.

206.     White causes Doe-20 and Doe-21 suffer a loss of their freedom of movement subject to the reasonable policies of the McLean County School District and to suffer a loss of bodily privacy.

207.     Doe-20 and Doe-21 did not provide consent to White's conduct.

208.     Doe-20 and Doe-21 protested White's conduct and requests.

209.     Heidbreder, Braksick, Heineman, Pye and Chapman all possessed the power and authority to institute corrective measures on the McLean County School District's behalf and against White in relation to the assurance of safety and security for students in White's first grade class in 2004-2005.

210.     Heidbreder, Braksick, Heineman, Pye and Chapman all possessed the power and authority to direct White in relation to the use of his classroom and White's treatment of his students in order to avoid White's conduct in engaging in improper physical contact and

40

activities with students, including Doe-10, Doe-11, and Doe-12 during the 2003-2004 school year and Doe-20 and Doe 21 during the 2004-2005 school year.

211.    Heidbreder, Braksick, Heineman, Pye and Chapman each possessed actual knowledge that White made his students uncomfortable by isolating them as described above, intimidating them, touching them inappropriately (through hugs and other acts that the McLean County School District and its officials denied were sexual in nature), and each of them had enough knowledge of the above conduct based on the above-referenced reports concerning Doe-10, Doe-11 and Doe-12 that any one or more of them reasonably could have responded with remedial measures.

212.    The remedial measures would necessarily have prevented White from closing his door, shutting his blinds and obstructing views in his classroom so that he could blindfold Doe-20 and Doe-21 under the false premise that they were engaged in curriculum activities.

213.    Doe-20 and Doe-21 surrendered personal privacy, personal pride and personal safety as a result of the failure of the Defendants to install remedial measures given their knowledge as of August 2004, as of October 17, 2004 and as of October 29, 2004.

214.    Heidbreder, Braksick, Heineman, Pye and Chapman each failed to adequately respond in light of the knowledge they actually possessed.

215.    Heidbreder, Braksick, Heineman, Pye and Chapman were each deliberately indifferent to the knowledge that they possessed, to Doe-20's and Doe-21's risk of serious bodily, emotional and educational injury and to the ease with which they could have managed and controlled White in his classroom operations (or fired White) so as to avoid serious bodily injury, emotional harm and educational harm to Doe-20 and Doe-21.

216.     White possessed ample notice and knowledge that his conduct was inappropriate, such that White's conduct in the 2004-2005 school year with respect to Doe-20 and Doe-21 amounted to a "capricious" disregard of the accepted standards of an educator's conduct.

217.     White knew common sense would dictate that asking Doe-20 and Doe-21 to go with him into isolated situations with classroom blinds drawn and a closed classroom door to engage in a "special project" (inasmuch as the non-sexual aspects of the Helen Keller curriculum were concerned, and asking Doe-20 and Doe-21 to participate in bizarre classroom rituals such as spitting in cups for White to mix with his finger, scratching his upper thighs on the inside of his plant leg and massaging his back on the inside of his shirt were illegal) fell far short of any measurable standard of care and completely beyond any level of practical, moral or legal acceptance.

218.     White acted under of color of law in his capacity as a teacher to control the freedom, movement and personal privacy of Doe-20 and Doe-21.

219.     Where the State of Illinois and the McLean County School District have undertaken, through officials such as Heidbreder, Braksick, Heineman, Pye and Chapman, to provide a public education to all qualified students residing within their respective territories, each student, including Doe-20 and Doe-21, has a vested right to receive said public education without suffering such restraints on their freedom of movement, loss of personal pride and personal privacy and detention without any cause or consent whatsoever.

220.     The acts of White, Heidbreder, Braksick, Heineman, Pye and Chapman occurred under color of law and denied Doe-20 and Doe-21 of vested rights to their freedom of movement, privacy and public education and, as a result, denied Doe-20 and Doe-21 of

substantive due process in violation of the Fourteenth Amendment to the United States Constitution.

221.    Heidbreder, Braksick, Heineman, Pye and Chapman each had constructive knowledge of and about White's propensity to engage in relationships or interactions that involved contact with minor female students that made the female students uncomfortable and also made them feel as though they were being denied their vested right in a public education.

222.    The decision by White to declare a continuation of his behavior to the parents of Doe-10 and Doe-11 was arbitrary and irrational.

223.    The decision by Heidbreder, Braksick, Heineman, Pye and Chapman allow White back into the classroom following his declaration of a continuation of his behavior to the parents of Doe-10 and Doe-11 was arbitrary and irrational.

224.    The decision by Heidbreder, Braksick, Heineman, Pye and Chapman allow White to continue as a teacher in the first grade without any investigation of the claims of a pattern of harassment and intimidation involving Doe-10, Doe-11 and Doe-12 led to the adoption of a custom within the McLean County School District that White's pattern of harassment and intimidation were appropriate.

225.    The custom within the McLean County School District operated from April 2004 until April 2005, during which time White continued to deny Doe-20 and Doe-21 their vested right to a public education unless they accepted his physical advances and contacts of a non-sexual nature and unless they acquiesced in his control over their persons to the point of embarrassing them in a classroom of students while they spit in a cup against their will or cleaned on multiple occasions.

226.     The arbitrary and irrational decisions and the District's de facto policies of failing and refusing to investigate complaints of abuse and of suspending the application of school policies in relation to White, as noted above, led to the deprivation of Doe-20's and Doe-21's right to obtain a public education.

227.     Moreover, the arbitrary and irrational decisions noted above were not remediable under state law inasmuch as no investigation was mandated under the conclusions that the conduct of White, as viewed by Heidbreder, Braksick, Heineman, Pye and Chapman, did not involve abuse of a nature reportable to the Illinois Department of Children and Family Services and because the caretakers that ran Colene Hoose Elementary School agreed among themselves to conceal White's conduct by refusing an investigation, failing to report and ignoring the issue when McLean County School District re-employed White between the 2003-2004 school year and the 2004-2005 school year.

228.     Heidbreder, Braksick, Heineman, Pye and Chapman failed to act in an objectively reasonable fashion after being put on notice by reports of the mother of Doe-10, the parents of Doe-11 and the mother of Doe-12 and that each and all of them knowingly, and in willful and wanton disregard of Doe-20's and Doe-21's safety, security and personal rights, placed Doe-20 and Doe-21 in White's first grade classroom without any precautionary steps having been taken to provide for her safety in a reasonable fashion and to prevent White from engaging harassment and intimidation of Doe-20 and Doe-21.

229.     With reckless indifference, Heidbreder, Braksick, Heineman, Pye, Chapman, and White—and thus the McLean County School District—deprived Doe-20 and Doe-21 of their constitutional right to avoid the arbitrary and irrational decisions that led to the denial of their vested right to obtain a public education.

230.     White's harassment and intimidation and non-sexual physical advances were unwelcomed at all times.

231.     Neither Doe-20 nor Doe-21 voluntarily engaged in the activities of which they now complain. At all times, all defendants knew that Doe-20 and Doe-21 were below the age of consent that would allow anyone to engage in such activities.

232.     An investigation by qualified individuals with an interest other than confidentially dealing with White's physical contact with and treatment of his students would have confirmed or denied whether inappropriate conduct was occurring between White and his female students.

233.     The failure and refusal to investigate the complaints of non-sexual abuse and harassment concerning Doe-10, Doe-11 and Doe-12 reflects the deliberate indifference of Heidbreder, Braksick, Heineman, Pye and Chapman toward the welfare of minor female students in the care of White as a first grade teacher at Colene Hoose Elementary School, including but not limited to Doe-20 and Doe-21.

234.     42 USC §1983 allows Doe-20 and Doe-21 a private right of action under the Civil Rights Act, as amended, for damages and recovery of her costs, legal expenses and attorney's fees as a result of the conduct of Heidbreder, Braksick, Heineman, Pye and Chapman. *See also* 42 USC §1988.

235.     Title IX does not provide a remedy for non-sexual-based abuse and harassment of students, including but not limited to Doe-20 and Doe-21.

236.     Doe-20 and Doe-21 suffered bodily injury, emotional injury and educational harm as a result of the actions and interactions of White, Heidbreder, Braksick, Heineman, Pye and Chapman to create, allow and ignore a situation where White possessed liberal freedom to isolate

45

and harass Doe-20 and Doe-21 and from which position White did actually harass and injure Doe-20 and Doe-21.

237.    By reason of the involvement of Heidbreder, Braksick, Heineman, Pye and Chapman in the determination to confidentially deal with White, to refuse to investigate claims of non-sexual harassment and intimidation of students and to continue to allow White the opportunity to harass and intimidate, there was a policy created within the McLean County School District that operated to deny Doe-20 and Doe-21 their vested rights to a public education.

238.    Heidbreder, Braksick, Heineman, Pye and Chapman each had actual knowledge of and about White's propensity to engage in relationships or interactions that involved inappropriate non-sexual contact with and control over minor female students as of April 2004.

239.    As a result of the denial of due process in relation to Doe-20's and Doe-21's constitutional right to a public education, Doe-20 and Doe-21 suffered harassment and intimidation of a non-sexual nature from roughly October 1, 2004 through April 1, 2005 and they have continued and will continue to suffer the effects of such harassment and intimidation.

240.    As a result of the conduct of the McLean County School District, and as a result of the acts and omissions White, Heidbreder, Braksick, Heineman, Pye and Chapman, Doe-20 and Doe-21 suffered bodily injury, emotional injury and educational harm that has continued from October 1, 2004 until the filing of this action and will continue for decades in the future.

WHEREFORE, the plaintiffs, Doe-20 and Doe-21, respectfully request that this Honorable Court enter judgment in their favor and against each and all of the defendants for compensatory damages exceeding $50,000, exemplary damages, her costs, or litigation expenses

and attorney's fees and for such other and further relief as deemed just and necessary by this court in a fashion that is consonant with 42 USC §§ 1983 and 1988.

## COUNT THREE--HOSTILE EDUCATIONAL ENVIRONMENT (TITLE IX)
### (Doe-20, Doe-21 v. McLean County School District)

241.    Doe-20 and Doe-21 hereby repeat and reallege, by this reference, Paragraphs 1-199 of this Complaint into this Paragraph 241 of Count Three.

242.    The McLean County School District, through actions and inaction under color of law by Heidbreder, Braksick, Heineman, Pye and Chapman, ignored then concealed reports of sexual grooming, sexual harassment and sexual abuse by parents through and during the 2003-2004 school year and continued to ignore these complaints of the parents during the 2004-2005 school year.

243.    Custom and usage within the McLean County School District was that Doe-10, Doe-11, Doe-12, Doe-20 and Doe-21 were not entitled to reasonable protection from the conditioning of their right to a public education on the basis of their sex or on the basis of their sexual activities with White.

244.    With reckless indifference, the McLean County School District deprived Doe-20 and Doe-21 of their constitutional rights.

245.    White's first grade classroom at Colene Hoose Elementary School became a hostile educational environment in which a condition of Doe-20's and Doe-21's education became their participation in the sexual grooming, sexual harassment and sexual abuse by White that has been described above.

246.    The McLean County School District failed properly to supervise the placement of Doe-20 and Doe-21 into an appropriate first grade classroom.

247.    The McLean County school district failed to report suspected abuse of Jane Doe-10, Jane Doe-11 and Jane Doe-12 by White in that the McLean County School District had obtained evidence that indicated the children were all minor female students that had been subjected to sexual abuse or sexual harassment by White during the 2003-2004 school year. Although Illinois law and local Policy 5.90 (Exhibit D) required that a report of suspected child abuse be filed, the McLean County School District did not do so after reports from parents in April 2004.  No Department of Children and Family Services or police investigation progressed until 2007 and this only as a result of the insistence of parents of the Urbana Does.

248.    Doe-20 and Doe-21 were placed in and remained in White's first grade classroom and was then physically abused, sexually harassed and sexually abused by White under the same circumstances of isolation, sexual grooming, sexual harassment and sexual abuse reported by the mother of Doe-10, parents of Doe-11 and the mother of Doe-12.

249.    The failure and refusal of the McLean County School District to act on the suspected child abuse concerning Doe-10, Doe-11 and Doe-12 was the proximate cause of Doe-20's and Doe-21's later sexual abuse in that but for this failure and refusal, White would have lacked the location, time and opportunity to engage in his harassment and abuse of Doe-20 and Doe-21.

250.    The failure to make the mandatory Policy 5.90 report of suspected child abuse concerning Doe-10, Doe-11 and Doe-12 also reflects the deliberate indifference of the McLean County School District toward the welfare of minor female students in the care of White as a teacher at Colene Hoose Elementary School, including but not limited to Doe-20 and Doe-21.

251.    As a result of the McLean County School District's failure to prevent White's sexual advances, Doe-20 and Doe-21 suffered sexual harassment, sexual grooming and sexual

48

abuse from roughly October 1, 2004 through April 1, 2005 and they occupied a position where, as first graders, they were compelled to behave sexually as a condition of their continuing elementary education.

252.    The bodily injury, emotional injury and educational harm to Doe-20 and Doe-21 have continued from October 1, 2004 until the filing of this action and will continue for decades in the future.

253.    The McClean County School District also arbitrarily suspended local policies 5.90 and 7.20.

WHEREFORE, the plaintiffs, Doe-20 and Doe-21, each respectfully request that this Honorable Court enter judgment in their favor and against the McLean County School District for compensatory damages exceeding $50,000.00, exemplary damages, costs, litigation expenses and attorney's fees and for such other and further relief as deemed just and necessary by this court in a fashion that is consonant with 42 USC §1988.

## COUNT FOUR--UNLAWFUL SEIZURE/ABUSE IN CUSTODY (Section 1983)
(Doe-20, Doe-21 vs. All Defendants)

254.    Doe-20 and Doe-21 hereby repeat and reallege, by this reference, paragraphs 1-240 of this Complaint into this Paragraph 254 of Count Four.

255.    Doe-20 and Doe-21 were deprived of their constitutional liberty of movement and right to be free from unlawful searches and seizures under the Fifth and Fourteenth Amendment.

256.    White was one of many teachers with explicit and implied authority to control, direct and restrain the movement of children under his control but he exceeded this authority when he unlawfully seized and detained Doe-20 and Doe-21, deprived of them liberty of movement and blindfolded them under a forced commitment to silence.

49

257.     As White had the children blindfolded, he used illegal and unreasonable force when, without consent, he inserted his fingers, objects and other items in Doe-20's and Doe-21's mouths and otherwise came into contact with them in commanding them to obey only him while isolated in his classroom.

258.     White was an employee of the McLean County School District, a local government entity, and he was acting under color of state law, ordinance, regulation, custom, or usage when, with reckless indifference, he deprived Doe-20 and Doe-21 of their constitutional rights due process and her rights under the Fifth and Fourteenth Amendments of the United States Constitution.

259.     42 USC §1983 affords Doe-20 and Doe-21 a civil cause of action for damages and for appropriate injunctive relief against White and against the McLean County School District. 42 USC §1988 identifies damages, court costs, litigation expenses and attorney's fees as within the remedies available in an action brought pursuant to 42 USC §1983.

WHEREFORE, the plaintiffs, Doe-20 and Doe-21, each respectfully request that this Honorable Court enter judgment in their favor and against White and the McLean County School District for compensatory damages exceeding $50,000.00, exemplary damages, costs, litigation expenses and attorneys fees as well as an injunction barring White and the McLean County School District from exercising any authority under color of state law, ordinance, policy or custom to deprive students of their liberty and conduct unlawful seizures of students without consent or an appropriate hearing and advance notice to parents or lawful custodians. Doe-20 and Doe-21 respectfully request such relief as deemed necessary and just by this Honorable Court.

50

**COUNT FIVE—CONSPIRACY TO DEPRIVE CIVIL RIGHTS (42 U.S.C. §1985(3))**
(Doe-20, Doe-21 v. White, Heidbreder, Braksick, Heineman, Pye, and Chapman)

260.    Doe-20 and Doe-21 hereby repeat and reallege, by this reference, Paragraphs 1-259 of this complaint into this Paragraph 260 of Count Five, with the exception of those paragraphs alleging that White acted within the scope of his employment.

261.    Heidbreder, Braksick, Heineman, and Pye all acted under color of law.

262.    Simultaneously, White acted individually and, as alleged by these defendants in other cases, outside the scope of White's employment to commit intentional acts and criminal acts for his personal gain.

263.    White operated within the flexibility and lack of supervision of White by Heidbreder, Braksick, Heineman, and Pye as alleged above before he reached various agreements with Braksick, Heidbreder, Pye and Heineman that neither White nor Heidbreder, Braksick, Heineman, or Pye would report or document (in White's personnel file) the details of complaints about him by parents of Doe-10, Doe-11, and Doe 12, or the details of White's September-October 2004 school Internet activities involving access to sites that included explicit adult websites featuring younger women and www.matchmaker.com as well as sexually oriented video chat rooms.

264.    White reached various agreements with Braksick, Heidbreder, Pye and Heineman that neither White nor Heidbreder, Braksick, Heineman, nor Pye would report or document White's use of his classroom for purposes of acting out sexually and in order to pursue his personal sexual desires that were outside the scope of White's employment for the McLean County School District.

265.    On information and belief, White was part of an agreement with Braksick, Heidbreder, Pye and Heineman that no one of them would disclose the Internet and electronic mail activities (involving adult content) of White and others, including but not limited to people believed to be in the administrative offices of McLean County School District.

266.    With White's agreement not to disclose having been obtained, Heidbreder, Braksick, Pye and Heineman agreed among themselves not to disclose the improper sexual grooming, harassment and abuse by White of Doe-10, Doe-11 and Doe-12 because all of them were aware of the prior Internet activities of White on another teacher's classroom computer, because they did not want this information publicized and because, by mid-October 2004, they knew White emailed adult content to administrative officers.

267.    With White's agreement not to disclose having been obtained, Heidbreder, Braksick, Pye and Heineman agreed among themselves not to disclose the improper sexual contacts, harassment and abuse by White of Doe-10, Doe-11 and Doe-12 because all of them did not wish to disclose these reports that arose prior to White's classroom Internet activities in light of the impossibility of conveniently disposing of the Internet activity by White, the difficulty in terminating White as a result of the lack of attention paid to the complaints of Doe-10, Doe-11 and Doe-12 and the possible ramifications for their respective careers.

268.    Heidbreder, Braksick, Heineman, and Pye all knew of the agreements among them and with White.

269.    Heidbreder, Braksick, Heineman, and Pye acted willfully and willfully omitted action in order to discourage reports of child sexual harassment, grooming and abuse and in order to allow White to continue in an environment of general acquiescence in his activities on

52

the Internet and with minor female students under his care while employed by the McLean County School District at Colene Hoose Elementary School as follows:

a.  As principal, Braksick refused to receive the reports of sexual harassment, sexual grooming and sexual abuse of and concerning Doe-10, Doe-11 and Doe-12;

b.  As assistant principal, Heidbreder received the reports of sexual harassment, sexual grooming and sexual abuse of and concerning Doe-10, Doe-11, and Doe-12, but he did not document the reports, investigate the reports or draw conclusions in relation to the reports and, rather, he belittled the parents of Doe-10, Doe-11 and Doe-12 and minimized the circumstances involved in the reports;

c.  Heidbreder and Braksick then reached an agreement and understanding among each other and with White whereby none of the reports would be documented, investigated or closed with conclusions as to the occurrences referenced within each of the reports as to Doe-10, Doe-11 and Doe-12;

d.  White continued in his sexual harassment and sexual grooming of Doe-12 by showing her photographs that were sexually suggestive in nature and commenting that Doe-12 looked remarkably similar to the female subject within the photographs, by making inappropriate comments and having children inappropriately touch his legs and back during classroom activities at about the same time that White was viewing and downloading adult-themed Internet video involving, among other things, a video of a man engaging in group sexual activities with younger women, via a computer provided him by the McLean County School District, but Heidbreder, Heineman, and Pye agreed that White would only receive a one-week suspension from teaching in the first grade classroom (and they did not initiate any supervision or surveillance activities that would

53

disclose whether White ceased in his sexually inappropriate behavior with minor female students in his first grade class or completed the recommended course of counseling with a therapist experienced in sexually addictive or predatory behaviors);

e.    Heidbreder, Braksick (then Heineman), Pye and Chapman agreed that they could not and would not impose more severe or restrictive discipline on White because all of them continued to maintain the secrecy of the April 2004 reports of the sexual harassment and sexual abuse of Doe-10, Doe-11 and Doe-12;

f.    Heidbreder, Pye and Heineman all agreed that they would not continue to police whether White sought, attended and successfully completed the therapy that was the subject of the October 2004 disciplinary action taken against White because doing so would force them to continue to document their efforts and, thus, lend credence to the reports that they and Braksick ignored concerning Doe-10, Doe-11 and Doe-12;

g.    The agreement to maintain secrecy continued beyond October 2004, and through at least April 2005, at which time White was terminated by the McLean County School District through a separation agreement that was maintained between the parties as a confidential record and that, again, did not refer to or call for the disclosure of the sexual harassment and abuse of Doe-10, Doe-11 and Doe-12 in Spring 2004;

h.    The agreement to maintain secrecy continued beyond October 2004 and April 2005, and through at least May 2007, after the time White was charged and arrested in Urbana, Illinois for aggravated sexual assault of several minors at Thomas Paine Elementary School, a school within the next school district to employ White following White's termination by the McLean County School District;

i.       Between April 2005 and Fall 2006, the agreement to maintain secrecy among Heidbreder, Braksick, and Pye, as well as Braksick's replacement, Heineman, who had since agreed in the campaign of secrecy, caused Heineman to issue a positive letter of recommendation that White could pocket and distribute as White saw fit when:

   i.    this letter greatly exceeded the obligations of the McLean County School District under the separation agreement; and

   ii.   this letter violated the contracted for process whereby those receiving inquiries about White would have to inform prospective employers to contact Pye directly for a reference;

j.       In October 2004, at which time White escalated his sexual grooming, sexual harassment and sexual abuse of Doe-20 and Doe-21 by engaging in a pattern of abuse described above, Heidbreder, Braksick, Pye, and Heineman all knew or should have known that White was violating the rights of female minor students to receive a public education free from sexual harassment, grooming and abuse;

k.       In October 2004, at which time White escalated his sexual grooming, sexual harassment and sexual abuse of Doe-20 and Doe-21 by engaging in a pattern of abuse described above, Heidbreder, Braksick, Pye, and Heineman all knew or should have known that White was violating the rights of minor female students to due process as well as to avoid unlawful seizures;

l.       Heidbreder, Braksick, Pye, and Heineman did nothing to act to protect White's minor female students until April 2005;

m.       Once the McLean County School District removed White in April 2005, Heidbreder, Braksick, Pye and Chapman did nothing to address White's conduct and furthered the

55

veil of silence that prevailed since one year prior so that no investigation of the harm that White may have caused at Colene Hoose Elementary School could occur and Heineman did nothing to cause any investigation of interactions between White and students at Colene Hoose Elementary School;

n.     The conspiracy included an agreement among White, Heineman, Heidbreder, Braksick, and Pye to forebear from reporting suspected child abuse or child neglect to the Illinois Department of Children and Family Services or to local law enforcement authorities despite opportunity to do so in April 2004, October 2004 and April 2005;

o.     Despite having ample opportunity in April 2004, August 2004, October 2004, April 2005, the remainder of 2005, all of 2006 and the first months of 2007 to provide general or specific details concerning White and his behavior within the McLean County School District, White, Heineman, Heidbreder, Braksick, and Pye failed and refused to report or communicate the circumstances of White's dismissal to parents of children in White's first grade classroom so that they could address potential problems with their children:

   i.   Even upon the disclosure in the media of White's arrest in Urbana, Illinois for aggravated sexual abuse of minors in his classrooms, White, Heineman, Heidbreder, Braksick, and Pye publicly represented and caused Chapman to represent that there were no prior reports or complaints of sexual misconduct between White and any students within the McLean County School District when Heineman, Heidbreder, Braksick, and Pye knew this statement was false as a result of communications they had with the parents of Doe-10, Doe-11 and Doe-12;

   ii.  Following the denials referenced in subparagraph "i" immediately above, White, Heineman, Heidbreder, Braksick, and Pye engaged in a pattern of communication

56

whereby they knew that there was a likelihood of improper conduct between White and Doe-20 and, against the express wishes of the parents of Doe-20, permitted discussions between a Colene Hoose Elementary School counselor and Doe-20 which were never communicated to the parents of Doe-20;

p. The actions noted in subparagraphs a through o above were intended to and did have the effect of discouraging and delaying:

    i. the identification of sexual misconduct between White and his minor female students attending the first grade at Colene Hoose Elementary School;

    ii. the communication of sexual misconduct between White and minor female students attending the first grade at Colene Hoose Elementary School to a person with parental authority for students;

    iii. the communication between parents and their first grade children attending Colene Hoose Elementary School so that they could determine the safety or lack thereof provided for their children;

    iv. the reporting of sexual grooming, sexual harassment and sexual abuse by White against his minor female first grade students to the Department of Children and Family Services or to law enforcement authorities;

    v. the documentation of White's sexual misconduct;

    vi. the public disclosure of the facts that would lead a third person to believe that White posed a risk of sexual predatory conduct to minors in order to obtain protective relief against White that would have barred him from parks, kids programs and other activity areas where Doe-20 and Doe-21 were likely to appear;

vii.      the proper evaluation by parents of communications between White and their children, including but not limited to written and oral communications between White and Doe-20, with those communications occurring between Doe-20 on an oral basis involving physical contact and touching between White and Doe-20;

viii.      publicity of White's sexual misconduct in the McLean County School District despite such public revelations of sexual misconduct in the Urbana school district;

ix.      the efforts of the Department of Children and Family Services and law enforcement officials in Urbana and Normal to discover the occurrences that may have occurred at Colene Hoose Elementary School during the 2003-2004 school year and during the 2004-2005 school year;

270.    White, Heineman, Heidbreder, Braksick, and Pye forced Doe-20 and Doe-21 to handle the wrongs committed upon them by White with no assistance despite parental availability and the availability of state, school and private counselors.

271.    The conduct noted in Paragraphs 262 and 269 and the purposes noted in Paragraphs 263-268 deprived Doe-20 and Doe-21 of their rights to due process, to an educational program compliant with Title IX, to be free from seizure and restraint by discouraging reports of original and additional incidents of child sexual abuse in the McLean County School District and in the Colene Hoose Elementary School, thereby rendering Doe-20 and Doe-21 more vulnerable to that abuse, allowing White to sexually abuse Doe-20 and Doe-21 and denying Doe-20 and Doe-21, or either of their parents, the opportunity to learn of the impropriety of White's behavior and engage in discussions with appropriate educators, counseling professionals or psychiatric professionals.

272.    White, Heineman, Heidbreder, Braksick, and Pye knowingly, and with reckless indifference, created danger for Doe-20 and Doe-21 because Doe-20 and Doe-21 were enrolled in White's class, maintained as students in White's class and, even after nearly a full year of knowledge of White's misconduct, compelled under threat of truancy to attend class with their predator.

273.    White, Heineman, Heidbreder, Braksick, and Pye continued to create danger and maintain risk for Doe-20 and Doe-21 inasmuch as once the sexual abuse in Urbana schools was discovered, they denied any knowledge of prior sexual abuse at the Colene Hoose Elementary School.

274.    At all times, Doe-20 and Doe-21 (and their parents) were prevented by the conspiracy from taking steps to protect themselves (or their children).

275.    For a period of at least two full years, Doe-20, Doe-21 and their parents were prevented by the conspiracy from seeking appropriate counseling and treatment for Doe-20 and Doe-21.

WHEREFORE, the plaintiffs, Doe-20 and Doe-21, each respectfully request that this Honorable Court enter judgment in their favor and against White, Heineman, Heidbreder, Braksick, and Pye for compensatory damages exceeding $50,000, exemplary damages, costs, litigation expenses and attorney's fees and for such other and further relief as deemed just and necessary by this court in a fashion that is consonant with 42 USC §§1983, 1985 and 1988.

### COUNT SIX—FAILURE TO PREVENT LOSS OF CIVIL RIGHTS (42 USC §1986)
### (Doe-20 and Doe-21 v. Heidbreder, Braksick, Heineman, Pye and Chapman)

276.    Doe-20 and Doe-21 hereby repeat and reallege, by this reference, paragraphs 1-275 of this Complaint in this Paragraph 276 of Count Six.

277.     42 U.S.C. §1986 states that every person who has knowledge that wrongs contemplated by and mentioned in 42 U.S.C. §1985 shall be liable to the person injured in the amount of her damages if they had the power to prevent or to aid in the prevention of the wrongs that occurred to the injured person and neglected, refused or failed to aid in the prevention of the wrongs that occurred to the injured person.

278.     White, Heineman, Heidbreder, Braksick, and Pye were all engaged in a conspiracy (in violation of 42 USC §1985(3)) to deprived Doe-20 and Doe-21 of their rights, privileges and immunities under the United States Constitution and amendments thereto.

279.     Heineman, Heidbreder, Braksick, Pye and Chapman each had the authority to halt the deprivation of rights under Title IX occurring to young female students on the basis of their gender.

280.     Heineman, Heidbreder, Braksick, Pye and Chapman each had the authority to halt the deprivation of rights to due process and to avoid false arrest and a loss of personal privacy.

WHEREFORE, plaintiffs, Doe-20 and Doe-21, each respectfully request that this Honorable Court enter judgment in their favor and against Heineman, Heidbreder, Braksick, Pye and Chapman, all personally, in the amount of compensatory damages exceeding $50,000.00, exemplary damages, court costs, expenses of litigation, and attorney's fees as provided for in 42 USC §1988.

## COUNT SEVEN--BATTERY
### (Doe-20 and Doe-21 v. White and McLean County School District)

281.     Doe-20 and Doe-21 hereby repeat and reallege by this reference Paragraphs 1-176 of this complaint in this Paragraph 281 of Count Seven.

282.    At all relevant times, White acted with intent to make physical contact of an insulting or provoking nature with Doe-20 and Doe-21.

283.    At all relevant times, White acted with intent to make physical contact with Doe-20 and Doe-21 for purposes of his own sexual gratification and at time for purposes other than his own sexual gratification.

284.    On at least a weekly basis, between October 1, 2004 and April 10, 2005, White made physical contact of an insulting or provoking nature with Doe-20 and Doe-21.

285.    On at least a weekly basis, between October 1, 2004 and April 10, 2005, White made physical contact with Doe-20 and Doe-21 and received personal sexual gratification through such contact.

286.    White's physical contact with Doe-20 and Doe-21 occurred through the use of White's power and authority as their teacher.

287.    White's physical contact with Doe-20 and Doe-21 was accomplished with deliberate violence and oppression and was willful, wanton and malicious and part of a pattern of ongoing misconduct that resulted from the McLean County School District's policy promulgated by Pye, Braksick and Heidbreder that a plan that White would engage in physical contact with students who viewed his contact as harassing and that the District could not view that contact as inappropriate.

288.    White committed the aforementioned physical contact with Doe-20 and Doe-21 on the premises of Colene Hoose Elementary School and within the scope of his employment as determined by Pye, Braksick and Heidbreder.

289.     White's physical contact with Doe-20 and Doe-21 caused Doe-20 and Doe-21 to suffer bodily harm and severe emotional distress as well as educational harm, all of which has continued in the four years since the physical contact and which will continue into the future.

WHEREFORE, the plaintiffs Doe-20 and Doe-21 each respectfully request that this Honorable Court enter judgment in their favor and against White and the McLean County School District for compensatory damages in an amount greater than $50,000.00, for punitive damages (not the District), for costs and for such other and further relief as deemed just and necessary.

### COUNT EIGHT--ILLINOIS HATE CRIME
### (Doe-20 and Doe-21 v. Jon White)

290.     Doe-20 and Doe-21 hereby repeat and reallege by this reference Paragraphs 1-176 of this complaint into this Paragraph 290 of Count Eight.

291.     In 2004 and 2005 between the dates of October 1, 2004 and April 10, 2005, White engaged in conduct that amount to repeated weekly batteries against Doe-20 and Doe-21.

292.     White's batteries against Doe-20 and Doe-21 followed batteries committed against Doe-10 and Doe-11.

293.     Even though White had the opportunity to select minor male students from White's first grade class who volunteered to engage in the "special project" for which Doe-20 and Doe-21 were selected, White selected only minor female students.

294.     White only selected Doe-20 and Doe-21, minor female students, when he forced them to spit in a cup for White while in class.

62

295.     No minor male students were selected for White's 2003-2004 school year conduct involving the scratching of his legs and back, the wrapping of legs tightly around White's legs and other activities noted above.

296.     White committed batteries against Doe-10, Doe-11, Doe-20 and Doe-21 through the use of his power and authority as their first grade teacher at Colene Hoose Elementary School.

297.     White committed his batteries against Doe-20 and Doe-21 in White's first grade classroom within the premises of Colene Hoose Elementary School.

298.     White's physical contact with Doe-20 and a Doe-21 caused Doe-20 and Doe-21 to suffer bodily harm, severe emotional distress, and educational harm, all of which has continued for the past four years and all of which will continue into the future.

299.     White's batteries against Doe-20 and Doe-21 were motivated in whole or in part because Doe-20 and Doe-21 were females.

300.     "A person commits a hate crime when, by virtue of the actual or perceived... gender... of another individual or group of individuals, regardless of the existence of any other motivating factors, he commits assault, battery, aggravated assault... or disorderly conduct...." 720 ILCS 5/12-7.1(a).

301.     Doe-20 and Doe-21 are two individuals that have suffered and will continue to suffer injuries to their persons.

302.     Doe-20 and Doe-21 have standing to assert claims for actual damages, punitive damages, statutory injunction, as well as payment of their court costs, attorneys' fees and litigation expenses under 720 ILCS 5/12-7.1(c).

WHEREFORE, the Plaintiffs Doe-20 and Doe-21 each respectfully request that this Honorable Court enter judgment in their favor and against the White for compensatory damages in an amount greater than $50,000.00, for punitive damages, for an injunction barring White from ever contacting them directly or indirectly and barring White from ever being in their presence or the presence of their families at any time, for attorneys' fees, litigation expenses, costs and for such other and further relief as deemed just and necessary.

## COUNT NINE—ILLINOIS HATE CRIME
### (Doe-20, Doe-21 v. McLean County School District)

303.    Doe-20 and Doe-21 hereby repeat and reallege by this reference Paragraphs 1-176 of this complaint into this Paragraph 303 of Count Nine.

304.    The McLean County School District employed White in 2003-2004 as a first grade teacher, terminated White in 2003 and re-employed White effective for the 2004-2005 school year.

305.    The McLean County School District, by reason of the reports provided by the mother of Doe-10, the parents of Doe-11 and the mother of Doe-12 to Heidbreder, Braksick, Pye and Chapman, had specific knowledge of the assault, battery and disorderly conduct committed by White upon Doe-10 and Doe-11 and the disorderly conduct committed by White on Doe-12.

306.    The re-employment of White following his termination midway through the 2003-2004 school year constituted an acquiescence in and approval of White's conduct with minor female students described to Heidbreder, Braksick, Pye and Chapman.

307.    The McLean County School District, as of the beginning of the 2004-2005 school year, had specific knowledge that White performed and would perform duties within the scope of

his employment as a first grade teacher at Colene Hoose Elementary School that would engender a high level of trust between student or pupil and teacher.

308.  The McLean County School District is a "person" as that term is defined in 720 ICLS 5/2-15.

309.  The McLean County School District, while knowing of White's conduct in 2003-2004 as to Doe-10, Doe-11 and Doe-12, provided White with all of the responsibility, the duties and the physically private area required to engage in interactions with students such as Doe-20 and Doe-21 throughout the 2004-2005 school year.

310.  White's interactions with Doe-20 and Doe-21 were specifically within White's scope of employment for the McLean County School District and, to the extent that they were not within his scope of employment upon re-hire, the McLean County School District ratified White's classroom conduct and conduct with his students on or before October 29, 2004 as being within White's scope of employment.

311.  Employees or agents of the McLean County School District have engaged in direct and indirect communications with Doe-20 on at least three occasions, one of which occurred following Julie-20's express denial of consent to communication with Doe-20.

312.  The McLean County School District, through the actions and omissions of its agents and representatives who were policy makers in their respective positions (namely, Pye, Braksick, Heineman and Chapman) authorized and ratified the conduct of White and knew with substantial certainty that White would commit batteries against minor female students.

313.  Neither Doe-20 nor Doe-21 has an adequate remedy at law through which to prevent the McLean County School District from engaging in direct and indirect communications with Doe-20 or Doe-21.

314.    Due to the past actions of the McLean County School District through its officials with respect to Doe-20, Doe-21 faces the same risk of harm as Doe-20.

315.    Neither Doe-20 nor Doe-21 can obtain complete, efficient and effective legal relief to prevent the harm that could occur in the event that employees or agents of the McLean County School District engage in direct or indirect communications with either Doe-20 or Doe-21 if these communications are not otherwise authorized by either John-20 and Julie-20 or John-21 and Julie-21.

WHEREFORE, the plaintiffs Doe-20 and Doe-21 respectfully request that this Honorable Court enter judgment in their favor and against the McLean County School District for compensatory damages in an amount greater than $50,000.00 for punitive damages, for an injunction barring the McLean County School District or its agents or employees from ever interviewing Doe-20 or Doe-21 directly or indirectly, for attorneys' fees, litigation expenses, for costs and for such other and further relief as deemed just and necessary.

## COUNT TEN-FALSE IMPRISONMENT
### (Doe-20, Doe-21 v. White)

316.    Doe-20 and Doe-21 hereby repeat and reallege by this reference Paragraphs 1-176 of this complaint into this Paragraph 316 of Count Ten.

317.    Doe-20 and Doe-21 never consented to be held and blindfolded in a first grade classroom at Colene Hoose Elementary School with the blinds drawn shut and with the door closed.

318.    The weekly detentions of Doe-20 and Doe-21 were against their will.

319.    In conducting the weekly detentions of Doe-20 and Doe-21, White deprived Doe-20 and Doe-21 of their liberty.

320.     Within the scope of their responsibilities as educators under Illinois law and under the policies of the McLean County School District, teachers possess authority to and, in fact, do direct students as to their movements and occasionally restrain them in classrooms or other locations within a school.

321.     There was no justification for the restraint of Doe-20 and Doe-21. This was particularly so after White and the first grade class concluded the unit about Helen Keller.

322.     White intended to restrain Doe-20 and Doe-21.

323.     Doe-20 and Doe-21 could not freely elect to leave White's presence during these detentions because they were both blindfolded and told to remain silent, including at a point when another Colene Hoose Elementary School teacher caused White to open his first grade classroom door during a detention of Doe-20 and Doe-21.

324.     Doe-20 and Doe-21 were damaged by the detentions whether or not White engaged in sexual activity with them.

325.     White's conduct in detaining Doe-20 and Doe-21 was extreme and outrageous and his actions towards Doe-20 and Doe-21 were malicious.

WHEREFORE the plaintiffs Doe 20 and Doe-21 respectfully request that this Honorable Court enter judgment in their favor and against the White for compensatory damages in an amount greater than $50,000.00, for punitive damages, for costs and for such other and further relief as deemed just and necessary.

## COUNT ELEVEN-FALSE IMPRISONMENT
### (Doe-20, Doe-21 v. McLean County School District)

326.     Doe-20 and Doe-21 hereby repeat and reallege by this reference Paragraphs 1-176 and 316-325 of this complaint into this Paragraph 326 of Count Eleven.

67

327.    The McLean County School District employed White in 2003-2004 as a first grade teacher.

328.    The McLean County School District, by reason of the reports provided by the mother of Doe-10, the parents of Doe-11 and the mother of Doe-12 to Heidbreder, Braksick, Pye and Chapman (the latter three having received indirect reports from Heidbreder), had specific knowledge of the assault, battery and disorderly conduct committed by White upon Doe-10 and Doe-11 and White's disorderly conduct committed against Doe-12.

329.    The McLean County School District, as of the beginning of the 2004-2005 school year, had specific knowledge that White performed and would perform duties within the scope of his employment as a first grade teacher at Colene Hoose Elementary School that would engender a high level of trust between student or pupil and teacher.

330.    The McLean County school district, as of the beginning of the 2004-2005 school year, placed Doe-20 and Doe-21 in White's first grade classroom.

331.    The McLean County school district, while knowing of White's conduct in 2003-2004 as to Doe-10, Doe-11 and Doe-12, provided White with all of the responsibility, the duties and the physically private area required to engage in interactions with students such as Doe-20 and Doe-21 throughout the 2004-2005 school year.

332.    White's interactions with Doe-20 and Doe-21 were specifically within White's scope of employment for the McLean County School District and, to the extent that the interactions proved illegal, the McLean County School District ratified the conduct.

WHEREFORE the plaintiffs Doe-20 and Doe-21 respectfully request that this Honorable Court enter judgment in their favor and against the McLean County School District for

compensatory damages in an amount greater than $50,000.00, for costs and for such other and further relief as deemed just and necessary.

## COUNT TWELVE—INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Doe-20, Doe-21 v. White)

333.    Doe-20 and Doe-21 hereby repeat and reallege, by this reference, Paragraphs 1-332 of this complaint into this Paragraph 333 of Count Twelve.

334.    During the 2004-2005 school year, particularly between October 1, 2004 and April 10, 2005, White committed the following extreme and outrageous acts against Doe-20 and Doe-21:

   a.    teacher-on-student verbal and physical sexual harassment as well as verbal and physical sexual grooming;

   b.    teacher-on-student verbal and physical sexual harassment as well as verbal and physical sexual grooming in class;

   c.    sexual abuse, including but not limited to contact with Doe-20 and Doe-21 for White's personal sexual gratification;

   d.    despite warnings, following the reports of the mother of Doe-10 and the parents of Doe-11 as well as the mother of Doe-12 in 2003-2004, following his suspension purportedly for inappropriate viewing and use of the Internet and sexually suggestive photographs with a student and following years of education concerning promotion of the safety of minor students under the protection of educators and administrators in public schools, White refuse to stop teacher-on-student sexual harassment and/or sexual grooming and/or sexual abuse of his minor female students, including Doe-20 and Doe-21;

69

e.      despite requests from the mother of Doe-10 and the parents of Doe-11 as well as

the mother of Doe-12, White refused to stop private and open classroom teacher-

on-student sexual harassment and/or sexual grooming and/or sexual abuse and

directed these actions, as alleged above, at Doe-20 and Doe-21.

335.    The acts of White were done willfully, maliciously, outrageously, deliberately and

purposefully with the intention to inflict severe emotional distress upon Doe-20 and Doe-21.

These acts and this conduct were carried out with reckless disregard and indifference of the high

probability of causing Doe-20 and Doe-21 severe emotional distress.

336.    The acts of White did in fact result in severe emotional distress to Doe-20 and

Doe-21.

337.    As a direct and proximate result of the acts of White, Doe-20 and Doe-21 incurred

severe and grievous mental and emotional suffering, fright, anguish, shock, nervousness and

anxiety.

338.    The nature of suffering incurred by Doe-20 and Doe-21 will continue as Doe-20

and Doe-21 proceed through adolescence, attain adulthood and encounter relationships with

individuals such as teachers and administrators who should ordinarily be trusted and

relationships of an intimate, emotional and sensual nature.

339.    Doe-20 and Doe-21 missed periods of school, school recess, had run-ins with

classmates and withdrew from sports and teacher or coach-run extracurricular activities,

playtime, family time, vacation, and time enjoying ordinary and customary family activities.

340.    Doe-20 withdrew from teacher and coach interactions and ceased viewing

educators and administrators as role models.

341.    Doe-21 ceased trusting men in authority, parental and leadership roles, including those in education and her friends' fathers.

WHEREFORE, the plaintiffs, Doe-20 and Doe-21, each respectfully request that this Honorable Court enter judgment in their favor and against defendant White for compensatory damages in excess of $50,000.00, for punitive damages, for the cost of suit and for such other relief as this court deems just and necessary.

## COUNT THIRTEEN—INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Doe-20, Doe-21 v. Heidbreder, Braksick, Heineman, Pye and Chapman)

342.    Doe-20 and Doe-21 hereby repeat and reallege, by this reference, Paragraphs 1-332 of this complaint into this Paragraph 342 of Count Thirteen.

343.    In the 2003-2004 school year and in the 2004-2005 school year as well as between April 1, 2005 and May 2007 or later, Heidbreder, Braksick, Heineman, Pye and Chapman committed the following extreme and outrageous acts against Doe-20 and Doe-21:

    a.    Heidbreder, Braksick, Heineman, Pye and Chapman all agreed to conceal and avoid disclosure, even at the cost of dishonesty, of the reports and incidents involving White and Doe-10, Doe-11 and Doe-12;

    b.    Heidbreder, Braksick, Heineman, Pye and Chapman acted as alleged above;

    c.    Heidbreder, Braksick, Heineman, Pye and Chapman proceeded, without complying with McLean County School District policies and procedures, to continue White in his position as a first grade schoolteacher at Colene Hoose Elementary School under circumstances where White was unsupervised and beyond even the most basic observation during times of recess, lunch, and gym yet these individuals promoted the safety and security of White's first grade

71

classroom and educational abilities and actions while registering minor female

students for the 2004-2005 school year;

d.    Heidbreder, Braksick, Heineman, Pye and Chapman forced White to resign from

his position as a first grade teacher at Colene Hoose Elementary School, but they

did so while negotiating a confidential separation agreement whereby White's

misconduct involving sexual harassment, sexual abuse and sexual grooming of

minor female students in his classroom was neither mentioned, investigated,

reported or otherwise managed in any fashion that would allow the parents to

understand the possibility of such grievous occurrences befalling their children;

e.    Heidbreder, Braksick, Heineman, Pye and Chapman coordinated the issuance of

correspondence from the McLean County school district that provided a positive

recommendation to White and omitted, entirely, any reference to the

circumstances involving White's sexual acts, sexual harassment, sexual abuse and

sexual grooming with his female students;

f.    Heidbreder, Braksick, Heineman, Pye and Chapman all engaged in affirmative

misrepresentations and denials to Doe-20, Doe-21, their parents and the media as

they registered them for school and encouraged safety programs during school

and, further, once allegations arose concerning criminal charges against White in

Urbana;

g.    Heidbreder, Braksick, Heineman, Pye and Chapman furthered their agreement

and understanding to bury the White history of sexual harassment, sexual abuse

and sexual grooming of minor female students by failing and refusing to

communicate these circumstances to other teachers and staff members at Colene

72

Hoose Elementary School so that they were aware of the risk posed to minor female students in White's first grade class and by failing and refusing to coordinate internal school communications among staff, teachers and counselors as well as recess supervisors concerning minor female students in White's classroom and their parents; and

h.  Heidbreder, Braksick, Heineman, Pye and Chapman intentionally acted to defer that date on which minor female students in White's first grade class including Doe-20 and Doe-21 would obtain information sufficient to allow them to communicate with their parents concerning White's sexual harassment, sexual abuse and sexual grooming and to seek treatment, counseling or other assistance; and

i.  Heidbreder, Braksick, Heineman, Pye and Chapman intentionally acted to defer that date on which law enforcement authorities or the Department of Children and Family Services might conduct investigations of a criminal, quasi-criminal, or civil nature.

344.  The acts of Heidbreder, Braksick, Heineman, Pye and Chapman, described in the above paragraphs and summarized in Paragraph 343 were done willfully, maliciously, outrageously, deliberately and purposefully with intention and the result was the infliction of severe emotional distress upon Doe-20 and Doe-21.

345.  These acts and this conduct were carried out with reckless disregard and indifference of the high probability of causing Doe-20 and Doe-21 severe emotional distress.

346.  The acts of Heidbreder, Braksick, Heineman, Pye and Chapman did, in fact, result in severe emotional distress to Doe-20 and Doe-21.

347.    As a direct and proximate result of the acts of Heidbreder, Braksick, Heineman, Pye and Chapman, Doe-20 and Doe-21 incurred severe and grievous mental and emotional suffering, fright, anguish, shock, nervousness and anxiety.

348.    The nature of suffering incurred by Doe-20 and Doe-21 will continue as Doe-20 and Doe-21 proceed through adolescence, attain adulthood and encounter relationships with individuals such as teachers and administrators who should ordinarily be trusted and relationships of an intimate, emotional and sensual nature.

349.    Doe-20 and Doe-21 missed periods of school and school recess.

350.    Doe-20 had run-ins with classmates and withdrew from sports and teacher or coach-run extracurricular activities, playtime, family time, vacation, and time enjoying ordinary and customary family activities.

351.    Doe-20 also withdrew from teacher and coach interactions and ceased viewing educators and administrators as role models.

352.    Doe-21 also ceased trusting men in authority, parental and leadership roles, including educators and her friends' fathers.

WHEREFORE, the plaintiffs, Doe-20 and Doe-21, each respectfully request that this Honorable Court enter judgment in their favor and against defendant White for compensatory damages in excess of $50,000, for punitive damages, for the cost of suit and for such other relief as this court deems just and necessary.

## COUNT FOURTEEN--INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Doe-20, Doe21 v. McLean County School District)

353.    Doe-20 and Doe-21 hereby repeat and reallege, by this reference, paragraphs 1-352 of this complaint into this Paragraph 353 of Count Fourteen.

74

354.    White's, Heidbreder's, Braksick's, Pye's, and Chapman's extreme and outrageous conduct towards Doe-20 and Doe-21 was accomplished within the scope of their respective employments and in their services of and to the McLean County School District.

355.    Heineman's extreme and outrageous conduct towards Doe-20 and Doe-21 was accomplished within the scope of his employment and in his service of and to the McLean County School District.

356.    The McLean County School District, through the actions and omissions of its agents and representatives who were policy makers in their respective positions (namely, Pye, Heineman and Chapman) authorized and ratified the conduct of Heidbreder and Braksick.

357.    The McLean County school district is liable for the extreme and outrageous conduct under the doctrine of respondent superior.

WHEREFORE, plaintiffs Doe-20 and Doe-21 each respectfully request that this Honorable Court enter judgment in her and against the McLean County School District for compensatory damages in excess of $50,000.00, for the costs of suit and four such other relief deemed by the Court to be just and necessary.

## COUNT FIFTEEN—NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (Doe-20 and Doe-21 v. McLean County School District)

358.    Doe-20 and Doe-21 hereby repeat and reallege, by this reference, Paragraphs 1-352 of this complaint into this Paragraph 358 of Count Fifteen.

359.    Before White initiated the inappropriate sexual and non-sexual relationships with Doe-20 and Doe-21, White engaged in a course of inappropriate sexual harassment, sexual grooming and sexual abuse and made inappropriate sexual advances and statements to at least three minor female students and these circumstances were explicitly described to Heidbreder,

75

Braksick, Pye and Chapman, directly or indirectly through Heidbreder and Braksick, by the mother of Doe-10, the parents of Doe-11 and the mother of Doe-12.

360.    The mother of Doe-10, the parents of Doe-11 and the mother of Doe-12 provided this information before August 2004 to agents, servants, and employees of the McLean County School District.

361.    None of the agents, servants, and employees of the McLean County School District, particularly Heidbreder, Braksick, Pye or Chapman, undertook an investigation of the complaints of Doe-10 and Doe-11.

362.    Neither Heidbreder, Braksick, Pye nor Chapman, nor any of the other agents, servants, and employees of the McLean County School District, informed anybody else of these reports.

363.    None of the agents, servants, and employees of the McLean County School District undertook measures to prohibit White from engaging in his inappropriate sexual abuse and sexual harassment in the future.

364.    None of the agents, servants, and employees of the McLean County School District contacted the Department of Children and Family Services about White's behavior.

365.    The McLean County School District knew or should have known that White was engaging in inappropriate sexual conduct with minor female students at Colene Hoose Elementary School.

366.    The McLean County School District's failure to properly handle White, reports concerning Doe-10, Doe-11 and Doe-12 ultimately led to and precipitated the commencement of the sexual abuse of Doe-20 and Doe-21.

76

367.    The McLean County School District owed a duty to its students, including minor female students, Doe-20 and Doe-21, to provide and employ appropriate educational services and competent teachers and counselors and to safeguard its students from harmful conduct that might be undertaken by its teachers.

368.    The McLean County School District owed a duty to its students, including minor female students, Doe-20 and Doe-21, to supervise its teachers and counselors as well as its students so as to provide them a safe and secure environment for public elementary educational pursuits.

369.    The McLean County School District breached these duties by failing to hire competent and adequately trained personnel.

370.    The McLean County School District breached these duties by failing to undertake any investigation, much more a thorough investigation, into complaints of inappropriate sexual harassment, sexual grooming and sexual abuse leveled by parents of Doe-10, Doe-11 and Doe-12 against White.

371.    The McLean County School District breached these duties by failing to adequately supervise its agents, servants, and employees.

372.    The McLean County School District breached these duties by allowing White to abuse his position of authority through a course of sexual harassment, sexual grooming and sexual abuse.

373.    The McLean County School District breached these duties by failing to notify Department of Children and Family Services about complaints of inappropriate sexual behavior involving White.

374.     The McLean County School District breached these duties by failing to comply with the ministerial duties set forth in the McLean County School District policies and procedures attached hereto as Exhibit A-D.

375.     The acts and omissions of the agents, employees, officers and representatives of the McLean County School District proximately allowed White to continue his sexual predation of minor female students in White's first grade class.

376.     The acts and omissions of the agents, employees, officers and representatives of the McLean County School District proximately caused injury to Doe-20 and Doe-21.

377.     The acts and omissions were in willful and outrageous disregard of local policy, state statute and any modicum of human care for minors in an educational setting.

378.     The acts and omissions occurred despite the near certain probability of the future infliction of severe emotional distress upon Doe-20 and Doe-21 who, as of August 15, 2005, were known to be in White's first grade elementary school classroom.

379.     The acts and omissions proceeded in reckless disregard and indifference of the high probability of causing Doe-20 and Doe-21 severe emotional distress.

380.     The acts and omissions did in fact result in severe emotional distress to Doe-20 and Doe-21.

381.     As a direct and proximate result of the acts and omissions, Doe-20 and Doe-21 incurred severe and grievous mental and emotional suffering, fright, anguish, shock, nervousness and anxiety.

382.     The nature of suffering incurred by Doe-20 and Doe-21 will continue as Doe-20 proceed through adolescence, attain adulthood and encounter relationships with individuals such

as teachers and administrators who should ordinarily be trusted and relationships of an intimate, emotional and sensual nature.

383.    Doe-20 and Doe-21 missed periods of school and school recess.

384.    Doe-20 had run-ins with classmates and withdrew from sports and teacher or coach-run extracurricular activities, playtime, family time, vacation, and time enjoying ordinary and customary family activities.

385.    Doe-20 also withdrew from teacher and coach interactions and ceased viewing educators and administrators as role models.

386.    Doe-21 also ceased trusting men in authority, parental and leadership roles, including educators and her friends' fathers.

387.    The McLean County School District knew or should have known that its failure to properly investigate previous complaints of sexual indiscretions leveled against its teachers would likely and probably result in injury to its students, including Doe-20 and Doe-21.

388.    The McLean County School District knowingly and intentionally disregarded the substantial risk and danger that it knew or should have known would result.

389.    By disregarding this knowledge of substantial risk posed by White's conduct and acts and omissions of its agents, employees, officials and representatives, the McLean County School District was guilty of willful and wanton misconduct.

WHEREFORE, the plaintiffs Doe-20 and Doe-21 respectfully requests that this Honorable Court enter judgment in her favor and against the McLean County School District for compensatory damages in an amount greater than $50,000.00, for costs and for such other and further relief as deemed just and necessary.

## COUNT SIXTEEN—NEGLIGENT HIRING
### (Doe-20, Doe-21 v. McLean County School District)

390.    Doe-20 and Doe-21 hereby repeat and reallege, by this reference, paragraphs 1-389 of this complaint into this Paragraph 390 of Count Sixteen, excluding therefrom paragraphs 290-315.

391.    The McLean County School District possessed a duty to use reasonable care in relation to the hiring of teachers.

392.    Illinois law required that the McLean County School District conduct a criminal background check of all candidates for employment within its school system.

393.    The McLean County School District had a policy of conducting criminal background checks that was promulgated by the District independently of the statutory requirement.

394.    White did not voluntarily disclose an arrest and conviction for resisting arrest during an incident involving alcohol where law enforcement officers observed him committing a battery against his girlfriend and eventual wife.

395.    At the time that McLean County School District extended the offer, the District required White to sign an authorization to conduct a criminal background check and it was only then, on August 13, 2002, that White explained merely that a law enforcement officer pushed him and White was "caught off guard."

396.    The McLean County School District conducted a criminal background check of White only after it extended an offer of employment as a teacher that was accepted by White.

397.    On September 11, 2002, the Illinois State Police prepared and provided the McLean County School District with a written criminal background check indicating that White

80

remained on conditional discharge as a result of a conviction for resisting arrest in an alcohol related incident in which law enforcement officers observed White physically abuse his girlfriend and eventual wife.

398.    The September 11, 2002 criminal background report reflected that White was charged with domestic battery and possession of alcohol by a minor.

399.    As of the receipt of this report, the McLean County School District understood that White provided inaccurate and misleading information concerning the nature of his arrest inasmuch as there was far more to the arrest than a law enforcement officer pushing White and catching him off guard.

400.    Not only did the report reflect a falsehood provided by White to the McLean County School District, but it also allowed insight into White's treatment of females and his ability to properly interact with those with him he is trusted to behave properly.

401.    The McLean County School District breached its duty of care by hiring White on August 13, 2002 and maintaining White as an employee after receiving the September 11, 2002 report from the Illinois State Police.

402.    The breach of duty by the McLean County School District was willful and wanton inasmuch as it took no action concerning the criminal background check and White's dishonesty under circumstances where the McLean County School District was placing White in a teaching environment wherein the highest level of trust is placed in individuals for the safety and well-being of students, including female students such as Doe-20 and Doe-21.

403.    White benefitted from consecutive employment contracts with the McLean County School District that would not have occurred but for the fact of his hiring on August 13,

2002 and the determination to maintain White as an employee after receipt of the Illinois State Police Report.

404.    As an employee of the McLean County School District, White repeatedly violated policies that indicated a lack of truth telling ability and he eventually utilized his deceit in sexually harassing, sexually abusing, imprisoning and committing batteries against Doe-20 and Doe-21.

405.    Doe-20 and Doe-21 suffered injuries as set forth above in Paragraphs 382-386.

WHEREFORE, the plaintiffs Doe-20 and Doe-21 respectfully requests that this Honorable Court enter judgment in her favor and against the McLean County School District for compensatory damages in an amount greater than $50,000.00, for costs and for such other and further relief as deemed just and necessary.

## COUNT SEVENTEEN—NEGLIGENT RE-EMPLOYMENT
### (Doe-20, Doe-21 v. McLean County School District)

406.    Doe-20 and Doe-21 hereby repeat and reallege, by this reference, those paragraphs incorporated into paragraph 390 of this complaint into this Paragraph 406 of Count Seventeen.

407.    The McLean County School District possessed a duty to use reasonable care in relation to the re-employment of teachers who were notified that they were not to be re-employed for the following school year.

408.    During the 2003-2004 school year, the McLean County School District notified White that he was not be re-employed for the 2004-2005 school year.

409.     Following this notification, the parents of Doe-10, Doe-11 and Doe-12 made allegations of sexual harassment, sexual abuse and improper physical contact between White and Doe-10, Doe-11 and Doe-12.

410.     Moreover, prior to this notification, and on information and belief, White was identified as a teacher who during off-school hours utilized another teacher's computer to access pornographic Internet web sites.

411.     Understanding that White misrepresented the nature of his first arrest and conviction for resisting arrest in an incident involving alcohol and allegations of domestic abuse against his girlfriend and eventual wife, on March 11, 2004, Pye sent White a letter encouraging White to re-apply for employment in May 2004 and White did so.

412.     On May 25, 2004, Pye sent White a letter stating that White would be re-employed for the 2004-2005 school year at Colene Hoose Elementary School.

413.     On June 9, 2004, the McLean County School District ratified Pye's May 25, 2004 action and voted to re-employ White at Colene Hoose Elementary School.

414.     At the time that McLean County School District extended the May offer, the District did not remotely consider the reports of sexual abuse, sexual harassment and improper physical conduct between White and Doe-10, Doe-11, and Doe-12 or White's prior dishonest and improper utilization of another teacher's school computer to access adult Internet web sites after school hours.

415.     The McLean County School District did not conduct an appropriate investigation into whether White should be re-employed for the 2004-2005 school year.

416.     If the McLean County School District had conducted an appropriate investigation into whether White should have been re-employed for the 2004-2005 school year, the incidents

of dishonesty and the reports concerning Doe-10, Doe-11 and Doe-12 would have been discussed to the point of electing not to re-employ White.

417.    The McLean County School District breached its duty of care by re-employing White despite its records reflecting improper Internet usage and complaints by parents of improper sexual harassment, sexual abuse and improper touching of Doe-10, Doe-11 and Doe-12.

418.    The actions and omissions of the McLean County School District in failing to conduct even an internal background review of White prior to his May 25, 2004 re-employment for the 2004-2005 school year were willful and wanton disregard of the safety and well-being of minor female students in White's care, including Doe-20 and Doe-21.

419.    As an employee of the McLean County School District, White repeatedly violated policies that indicated a lack of truth telling ability and he eventually utilized his deceit in sexually harassing, sexually abusing, imprisoning and committing batteries against Doe-20 and Doe-21.

420.    Doe-20 and Doe-21 suffered injuries as set forth above in Paragraphs 382-386.

WHEREFORE, the plaintiffs Doe-20 and Doe-21 respectfully requests that this Honorable Court enter judgment in her favor and against the McLean County School District for compensatory damages in an amount greater than $50,000.00, for costs and for such other and further relief as deemed just and necessary.

## COUNT EIGHTEEN—NEGLIGENT SUPERVISION
### (Doe-20, Doe-21 v. McLean County School District)

421.    Doe-20 and Doe-21 hereby repeat and reallege, by this reference those paragraphs incorporated into paragraph 390 of this complaint into this Paragraph 421 of Count Eighteen.

84

422.    The McClean County School District knew that White posed an undue risk of harm to minor female students including Doe-20 and Doe-21, that White caused harm to Doe-10, Doe-11 and Doe-12 and that White was likely to cause harm to other minor female students, including Doe-20 and Doe-21.

423.    The McLean County School District possessed a duty to use reasonable care in the supervision of its teachers, including White, to best insure that White and other teachers acted in the best interests of the health, safety and welfare of children attending its schools.

424.    Notwithstanding that investigation of White's performance and discipline should have occurred during the period that White was under consideration to be re-employed by the McLean County School District, the McLean County School District knew White was utilizing his employment and classroom assignment to engage in predatory behavior, including sexual grooming, sexual harassment and sexual abuse against minor female students.

425.    The McLean County School District promulgated the policies noted in Exhibits A-D among others and, in doing so, assumed a duty to maintain those policies and carry them out.

426.    The McLean County School District also possessed a duty to use reasonable care to provide heightened supervision of problem teachers such as White as a result of his Internet activities prior to the 2003-2004 school year, the claims of sexual harassment, sexual abuse and improper touching of students in April 2004, the classroom Internet and District electronic mail activities of White between June 2004 and October 17, 2004 and White's October 29, 2004 admission that he had a sexual addiction that he was unable to control—even in the classroom environment.

427.    The McLean County School District breached the duties noted in Paragraphs 423-426 in allowing an environment wherein White could close his window blinds and close or lock his classroom door (on one occasion not opening the door fully for another teacher as Doe-20 and Doe-21 sat blindfolded and abused by White in the classroom), operate without supervision of his own classroom activities, and engage in sensory deprivation of Doe-20 and Doe-21 on a weekly basis, battered and falsely imprison Doe-20 and Doe-21, and engaged in sexual acts with Doe-20 and Doe-21 that were remarkably similar to the very same adult video the McLean County School District knew that White downloaded and watched on his classroom computer wherein a man stood above two younger women who performed fellatio on him in a group setting.

428.    The McLean County School District breached its duties in failing to act to protect Doe-20 and Doe-21 despite the District's knowledge that White was seeking active and personal interaction of a sexual nature in several areas outside of his marriage, including sex with younger females, and that White could not refrain from sexual behavior in his classroom while at the same time Doe-10, Doe-11 and Doe-12 suffered sexual grooming, sexual harassment and sexual abuse.

429.    The McLean County School District breached its duties in failing to insure that White received counseling adequate to serve the safety interests of children at the school.

430.    The McLean County School District breached its duty in failing to accurately and properly review White for the purposes of performance evaluation.

431.    The McLean County School District violated the policies adopted by it (see Exhibits A-D).

86

432.    On information and belief, the McLean County School District breached its duties by failing to recognize the concerns of a student teacher periodically assigned to White's classroom that White was engaging in improper physical contact with his first grade female students.

433.    The McLean County School District was uniquely aware of the particular risks and dangers posed to Doe-20 and Doe-21 by reason of White's actions and likely actions as a first grade teacher at Colene Hoose Elementary School.

434.    At all times relevant, Doe-20 and Doe-21 were under the direct and immediate control of White and the McLean County School District.

435.    The McLean County School District voluntarily undertook the duties set forth in Paragraphs 423-426.

436.    White proceeded to batter, falsely imprison, sexually groom,  sexually harass and sexually abuse Doe-20 and Doe-21 on at least a weekly basis during each school week between October 1, 2004 and April 10, 2005.

437.    Doe-20 and Doe-21 suffered injuries as set forth above in Paragraphs 382-386.

438.    The actions and inactions in breach of the McLean County School District's duties as referenced above were in willful and wanton disregard of the safety of minor female students, including Doe-20 and Doe-21.

439.    The actions and inactions of the McLean County School District in violation of its policies and the duties noted in Paragraphs 423-426 proximately caused the injuries to Doe-20 and Doe-21.

WHEREFORE, the plaintiffs Doe-20 and Doe-21 respectfully requests that this Honorable Court enter judgment in their favor and against the McLean County School District

for compensatory damages in an amount greater than $50,000.00, for costs and for such other and further relief as deemed just and necessary.

## COUNT NINETEEN—NEGLIGENT SUPERVISION
### (Doe-20, Doe-21 v. McLean County School District, Heidbreder, Pye, Heineman, Chapman)

440.     Doe-20 and Doe-21 hereby repeat and reallege, by this reference those paragraphs incorporated into paragraph 390 of this complaint into this Paragraph 440 of Count Nineteen.

441.     The McLean County School District adopted a policy in the form attached hereto as Exhibit A wherein each teacher or employee, including White, acknowledged that the teacher or employee was a mandatory reporter and would comply with the Illinois Abused and Neglected Child Reporting Act.

442.     The McLean County School District adopted this nondiscretionary policy of mandated reporting independently of the Illinois Abused and Neglected Child Reporting Act.

443.     The McLean County School District had a nondiscretionary policy wherein no teacher shall engage in sexual grooming, sexual harassment or sexual abuse.

444.     Said policy provided, in pertinent part, that a teacher or other employee who knew of circumstances indicating that a teacher engaged in sexual grooming, sexual harassment or sexual abuse must report the behavior to proper law enforcement or regulatory authorities so that it can be determined whether an investigation independent of the McLean County School District should proceed.

445.     Said policy, in pertinent part, also required school officials to receive, properly process, thoroughly investigate and properly document complaints or reports from students or their parents sexual grooming, sexual harassment or sexual abuse.

446.    The McLean County School Board voluntarily adopted the policies noted in Exhibits A-D.

447.    The policies in Exhibits A-D impose non-discretionary duties upon the employees, officials, agents and representatives of the McLean County School District.

448.    The policies created a duty and established a standard of conduct for an existing duty independent of the Illinois Abused and Neglected Child Reporting Act.

449.    In violation of the McLean County School District's own regulations, the McLean County School District did not properly receive reports of abuse concerning Doe-10, Doe-11 and Doe-12.

450.    In violation of the McLean County School District's own regulations, the McLean County School District (in particular Braksick, Heidbreder, Pye and Chapman) did not properly document reports of abuse concerning Doe-10, Doe-11 and Doe-12.

451.    In violation of the McLean County School District's own regulations, the McLean County School District did not properly investigate reports of abuse concerning Doe-10, Doe-11 and Doe-12.

452.    In violation of the McLean County School District's own regulations, the McLean County School District did not properly receive, document or investigate reports of abuse concerning Doe-10, Doe-11 and Doe-12.

453.    In violation of the McLean County School District's own regulations, the McLean County School District did not properly consider, evaluate and investigate the concerns of the student teacher in White's classroom.

454.    In violation of the McLean County School District's own regulations, the McLean County School District did not properly respond to parents placing reports of abuse concerning Doe-10, Doe-11 and Doe-12.

455.    In violation of the McLean County School District's own regulations, the McLean County School District did not provide protections for minor female students in White's first grade classroom during the 2004-2005 school year by conducting investigations of the reports concerning Doe-10, Doe-11 and Doe-12 and the concerns of the student teacher.

456.    Following and during the breaches of the duty of the McLean County School District to report under its own nondiscretionary policy, White proceeded to sexually harass, sexually abuse, batter and falsely imprison Doe-20 and Doe-21 in class.

457.    White sexually abused Jane Doe-20 under conditions that should obviously been concerning to even an untrained layperson: behind locked doors; behind closed doors with access impeded; and with classroom blinds drawn entirely closed.

458.    The policies attached as Exhibits A-D created a general duty on the part of the McLean County School District for a class of persons, specifically its minor students.

459.    The failure of employees, officials, agents and representatives of the McLean County school district to perform ministerial responsibilities under the McLean County School District's policies proximately caused Doe-20 and Doe-21 bodily injury, emotional injury and educational harm which will last many years into the future.

460.    Doe-20 and Doe-21 suffered bodily injury while imprisoned and blindfolded in a first grade classroom setting that would have been entirely avoided in the event that the employees, officials, agents and representatives of the McLean County School District performed their ministerial responsibilities under the McLean County School District's policies.

461.     Doe-20 and Doe-21 have suffered emotional injury and educational harm that has continued since October 2004 and will continue for decades as they proceed through adolescence, enter adulthood, engage in relationships with teachers and other role models, engages in dating, engage in intimate consensual relationships and engage in relationships with their children and teachers of their children.

462.     The McLean County School District acts and omission in concealing the reports of sexual harassment and sexual abuse as well as the reports of improper touching (reflected in the reports of the parents of Doe-10, Doe-11 and Doe-12 as well as in the report of the student teacher) were in willful and wanton disregard of the safety, health and welfare of Doe-20 and Doe-21.

WHEREFORE, the plaintiffs, Doe-20 and Doe-21 respectfully request that request that this Honorable Court entered judgment in their favor and against the McLean County School District for compensatory damages exceeding $50,000, the costs of suit and for such other further relief as this Court deems just and necessary.

## COUNT TWENTY—PREMISES LIABILITY
### (Doe-20, Doe-21 v. McLean County School District)

463.     Doe-20 and Doe-21 hereby repeat and reallege, by this reference, paragraphs 1-462 of this complaint into this Paragraph 463 of Count Twenty.

464.     The McLean County School District, at all relevant times during the 2004-2005 school year, acted through its various agents and employees.

465.     The McLean County School District, at all relevant times during the 2004-2005 school year, possessed a duty to Doe-20 and Doe-21 to maintain its property including Colene Hoose Elementary School in a reasonably safe condition.

466.     On information and belief arising from reports of parents of Doe-10, Doe-11 and Doe-12, during the 2003-2004 school year, the McLean County School District knew that White was engaged in the removal of students from their school day activities over lunch and during gym and during their after-school programs, that White was isolating students either alone or in pairs utilizing the classroom provided by the McLean County School District to White, and that White was utilizing the classroom provided by the McLean County School District to engage in teacher-on-student sexual abuse, sexual grooming or sexual harassment of Doe-10, Doe-11 and Doe-12.

467.     The McLean County School District continued to place students, including minor female students that included Doe-20 and Doe-21, in White's classroom.

468.     In September 2004, the McLean County School District also knew that the classroom provided by it to White allowed White the opportunity to engage in what are ordinarily (for those who engage in Internet surfing for their own sexual gratification) private acts beyond the personal supervision of peers, supervisors and others.

469.     In September 2004 and October 2004, the McLean County School District knew that White was utilizing his classroom for purposes relating to his own sexual gratification, including but not limited to surfing pornographic, dating, adult chat, adult webcam and fringe sexual Internet websites.

470.     Prior to this actual knowledge of White's Internet activities in his classroom, and prior to the 2004-2005 school year, the McLean County School District also knew of the complaints by the parents of Doe-10, Doe-11 and Doe-12 of White's sexual abuse, sexual grooming and sexual harassment of Doe-10, Doe-11 and Doe-12.

471.    Dangerous conditions existed for Doe-20 and Doe-21 at Colene Hoose Elementary School.

472.    The dangerous conditions promoted and facilitated White's sexual harassment, sexual abuse and sexual grooming of Doe-20 and Doe-21.

473.    The McLean County School District possessed actual and particular knowledge of the dangerous conditions at Colene Hoose Elementary School during the 2003-2004 school year and the 2004-2005 school year.

474.    The McLean County School District, as set forth above, acted and failed to act with deliberate indifference to the dangerous conditions at Colene Hoose Elementary School and its actions and inactions increased the danger and risk of harm and injury to Doe-20 and Doe-21 during the 2004-2005 school year.

475.    The McLean County School District's actions and inactions with deliberate indifference to the dangerous conditions at Colene Hoose Elementary School were willful and wanton and in conscious disregard of the safety of Doe-20 and Doe-21.

476.    The McLean County School District's actions and inactions with deliberate indifference to the dangerous conditions at Colene Hoose Elementary School caused Doe-20 and Doe-21 to suffer sexual abuse, sexual harassment and sexual grooming.

477.    The McLean County School District's actions and inactions with deliberate indifference to the dangerous conditions at Colene Hoose Elementary School caused Doe-20 and Doe-21 to suffer bodily harm, severe emotional distress and educational harm, all of which will continue into the future.

WHEREFORE, the plaintiffs, Doe-20 and Doe-21 respectfully request that request that this Honorable Court entered judgment in their favor and against the McLean County School

District for compensatory damages exceeding $50,000, the costs of suit and for such other

further relief as this Court deems just and necessary.

Respectfully submitted,

JANE DOE 20, a minor through her mother and
father and next friends, JULIE DOE 20 and JOHN
DOE 20, and JANE DOE 21, a minor through her
Mother and father and next friends, JULIE DOE 21
and JOHN DOE 21,

s/ T. Donald Henson_____
          One of Plaintiffs' Attorneys

T. Donald Henson, Esq. (#1195050)
HERBOLSHEIMER, LANNON, HENSON,
  DUNCAN & REAGAN, P.C.
State Bank Building
654 First Street
Suite 400
P.O. Box 539
La Salle, Illinois   61301-0539
(815) 223-0111
dhenson@hlhdr.com

Mark W. Daniel, Esq. (#6226696)
Ann Marie Lampariello-Perez, Esq. (#6205335)
RATHJE & WOODWARD, LLC
300 East Roosevelt Road
Suite 300
P.O. Box 786
Wheaton, Illinois  60187-0786
(630) 668-8500
mdaniel@rathjewoodward.com