## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS, PEORIA DIVISION

| | |
|---|---|
| JANE DOE, 20, a minor through her<br>mother and father and next friends,<br>Julie Doe, 20 and John Doe 20; and<br>JANE DOE 21, a minor through her<br>mother and father and next friends<br>Julie Doe 21 and John Doe 21<br><br>    Plaintiffs,<br><br>       v.<br><br>BOARD OF EDUCATION OF THE<br>COMMUNITY UNIT SCHOOL<br>DISTRICT NO.5, MCLEAN AND<br>WOODFORD COUNTIES,<br>JAMES BRAKSICK, ALAN CHAPMAN,<br>DALE HEIDBREDER, JOHN PYE,<br>EDWARD HEINEMAN, AND<br>JON WHITE,<br><br>    Defendants. | No.  09–CV-1158 |

## REPORT AND RECOMMENDATION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

Plaintiffs pursue state and federal claims arising from former teacher Jon White's alleged sexual abuse of them while they were first graders in his class during the 2004-05 school year.  Before the Court are Defendants' respective motions to dismiss (d/e's 15, 17, 20, 28) and the

School District's motion to strike (d/e 14).  For the reasons below, the Court recommends that the motions be granted in part and denied in part.

## Legal Standard

Defendants have moved to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  To state a claim under federal notice pleading standards, all the Complaint must do is set forth a "short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2).  Factual allegations are accepted as true and need only give "'fair notice of what the . . . claim is and the grounds upon which it rests.'"  EEOC v. Concentra Health Serv., Inc., 496 F.3d 773, 776-77 (7th Cir. 2007), *quoting* Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964 (2007)(other citation omitted).  However, the plaintiff's "' . . . allegations, [must] show that it is plausible, rather than merely speculative, that he is entitled to relief.'"  Tamayo v. Blagojevich, 526 F.3d 1074, 1083 (7th Cir. 2008)(quoted and other citations omitted).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v.

Iqbal, 129 S.Ct. 1937, 1949-50 (2009), *citing* Twombly, 127 S.Ct. 1955. Legal conclusions, unsupported by alleged underlying facts, are not entitled to "the assumption of truth." Id. at 1951. The application of this standard is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Cooney v. Rossiter, 2009 WL 3103998 *3, — F.3d —, (7th Cir. 2009), *quoting* Iqbal, 129 S.Ct. at 1950.

### Allegations and Background

The School District hired White in August 2002, "despite having no current information concerning White's criminal background." (Complaint ¶ 28). A criminal background check performed the next months revealed a conviction for resisting arrest, which White had falsely downplayed. (Complaint ¶ 31). During the 2002-03 school year, Defendant White was employed at Brigham school and worked for the parks and recreation department of Normal, Illinois. (Complaint ¶ 35)[1]. During this time he allegedly used another teacher's computer to access internet pornography, which the School District learned of at some point. (Complaint ¶¶ 35, 36). The District terminated and rehired White effective August 20, 2003, and transferred him to teach first grade at Colene Hoose Elementary School.

---

[1]It is not clear in what capacity White worked for both the school and the parks department.

(Complaint ¶ 37).  No one within the District or at Colene Hoose reviewed White's background before rehiring him and transferring him to Colene Hoose.  (Complaint ¶ 38).

During the 2003-04 school year, the parents of three female students in White's first grade class alerted Defendants Braksick (the Principal) and Heidbreder (the Assistant Principal) of White's suspected sexual abuse, sexual harassment, and sexual grooming of their children.  The details of these allegations are set forth in a pending case in this District filed by two of those students, Jane Doe v. Jon White, 08-1287 (C.D. Ill., Judge Mihm). In concluding that a Title IX claim was stated in that case, this Court noted that:

> Both the Principal and Assistant Principal were told, by three different sets of parents, over the span of two months, of White's misconduct. The parents' complaints, taken as a whole and in context, do allow a plausible inference that Heidbreder and Braksick were notified that White was sexually harassing or abusing at least three female students.  For example, Heidbreder and Braksick were told that White had a student give him massages underneath his clothes, that White regularly isolated female students outside of classroom instruction, that White held and bounced Jane Doe 11 on his lap in a strange manner, and that the children, just first graders, felt strongly enough to tell their parents that they did not like White's touching. Defendants allegedly did nothing in response to these reports.

(3/3/09 Report and Recommendation, d/e 49, adopted without objection by Judge Mihm, d/e 49).

White was informed in March 2004 that he would not be rehired for the next school year, for reasons unrelated to the parents' complaints. (Complaint ¶ 85). However, White was asked to re-apply, which he did. With no investigation and despite knowledge of the parents' complaints, the District rehired White for the 2004-05 school year, again to teach first graders. (Complaint ¶ 88-90).

From August, 2004 through at least October 12, 2004, White used school computers to access adult-oriented websites and downloaded pornographic material, including a video of younger women performing oral sex on an older man standing above them. (Complaint ¶ 102). White also used his school e-mail address to subscribe to "*s.b. f--- adventures and drunk s.b. girls*", e-mailed adult content files to other District employees, and engaged in pornographic internet chats. (Complaint ¶¶ 102, 106). The District knew of White's internet activities on or around October 12, 2004.

On October 19, 2004, Defendants Pye (Assistant Superintendent, Human Resources) and Heineman (the new Principal) met with White and his union representative regarding White's internet activities. White received a written letter of reprimand and was put on paid suspension until October 29, 2004, but nothing was put in White's file disclosing the nature

and extent of his internet conduct.  (Complaint ¶¶ 114).  White was also required to undergo continued counseling, which he did not do.

Meanwhile, in late September, early October 2004, White chose Plaintiffs, who were female first graders in his class, as volunteers for a special project relating to the study of Helen Keller.  (Complaint ¶ 113). During the course of 2004-05 school year, at least weekly, White groomed Plaintiffs for sexual interactions with him, which included taking Plaintiffs from recess and lunch, and locking Plaintiffs alone with him in his classroom, with the blinds drawn.  (Complaint ¶ 147).  While so isolated, White blindfolded Plaintiffs, silenced them, and

> engaged in physical contact with [Plaintiffs] for the purposes of his own sexual gratification, including but not limited to the massaging of his back and legs underneath his clothing . . ., the insertion of food, his fingers, other objects and his penis into [their] mouths (occasionally doing so when Doe-20 was on her knees and Doe-21 was sitting or squatting on a low stool . . .

(Complaint ¶ 140(d)).

In April 2005, Plaintiffs brought home a letter in their backpacks notifying parents that White would no longer be teaching, but did not give a reason.  Plaintiffs later learned that the reason was that White had been caught "stalking" one of his prior students.  (Complaint ¶ 165(a)).  White resigned in April 2005, but Heineman gave him a letter of recommendation and a severance package.  (Complaint ¶ 156).  The District and the

individual defendants allegedly swept White's misconduct under the rug, concealing it to protect their own careers and reputations.

White was able to obtain another teaching job, this time in Urbana, Illinois. On February 1, 2007, White was arrested and charged with aggravated criminal sexual activities with minors. (Complaint ¶ 164). He pled guilty and is now incarcerated in the Illinois Department of Corrections.

## Analysis

### I. Federal Claims[2]

### A. Counts 1 & 3: Plaintiffs state a Title IX claim, but Count 3 should be stricken because it is redundant of Count 1.

Count 1 is a Title IX claim for discrimination, and Count 3 is a Title IX claim for a hostile educational environment. The School District contends that no Title IX claims are stated because Plaintiffs have not alleged actual knowledge of White's misconduct or deliberate indifference.

Title IX provides that "No person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance, . . ." 20 U.S.C. § 1681(a); <u>Jackson v. Birmingham Bd.</u>

_____

[2]Defendant Heidbreder's argument that the parents lack standing to bring these Section 1983 claims lacks merit. The parents do not pursue claims for themselves. Instead, they pursue claims on behalf of their children.

of Educ., 544 U.S. 167, 173 (2005)(". . . Title IX, . . ., broadly prohibits a funding recipient from subjecting any person to 'discrimination' 'on the basis of sex.'").   "[A] teacher's sexual harassment of a student may render a school district liable for sex discrimination under Title IX."  Hansen v. Bd. of Trustees of Hamilton Southeastern School Corp., 551 F.3d 599, 605 (2008).  "[A] school district is subject to a private damages action only where it is deliberately indifferent to *known* acts of discrimination or harassment."  Id. (citations omitted).   The harassment must be "so pervasive or severe that it altered the conditions of plaintiff's education".  Mary M. v. North Lawrence Community School Corp., 131 F.3d 1220 (7th Cir. 1997).  School officials with the authority to take action must have had actual knowledge of the misconduct and must have been deliberately indifferent to it.  Gebser v. Lago Vista Independent School Dist., 524 U.S. 274 (1988).

    This Court already concluded in Doe v. White et al., 08-1287, that the plaintiffs in that case sufficiently alleged actual knowledge and deliberate indifference under Title IX.  The School District, however, contends that knowledge of White's sexual abuse in the 2003-04 school year cannot serve as knowledge for the 2004-05 year.  The District concludes that it

could not have had actual notice for the 2004-05 year, since there are no allegations that parents complained during that year.

The School District cites Delgado v. Stegall, 367 F.3d 668 (7th Cir. 2004), but in that case the school officials had no notice of prior incidents of a university professor's sexual harassment of female students. 367 F.3d at 670-71 ("It turns out that Stegall had made advances to three other woman students, but they had never filed complaints and his conduct hadn't come to the attention of the university administration.").[3] Here, school officials *did* know of the parent complaints in the prior school year. The parents of the three students complained personally to Defendant Heidbreder (the assistant principal), who allegedly would have been required to relay the complaints to Defendants Braksick, Pye and Chapman. (Complaint para. 71). During the 2004-05 school year, Defendant Braksick (the principal)

---

[3]There had been a complaint against the professor ten years earlier, but the plaintiff in Delgado gave it "no weight", and the Seventh Circuit noted that, in any event, "the ten-year-old episode, . . . would . . . be only weak evidence that Stegall's current students were at so high a risk of being harassed by him that university officials' knowledge of the earlier episode would make them reckless for having failed to take steps to prevent a recurrence." In contrast, Plaintiffs here do rely on the three prior complaints, and those complaint were only months old, not ten years old. Additionally, the Seventh Circuit noted in Delgado remarked that actual knowledge would encompass "actual knowledge of misconduct that would create risks 'so great that they are almost certain to materialize if nothing is done.'" Hansen v. Board of Trustees of Hamilton Southeastern School Corp., 551 F.3d 599 (7th Cir. 2008), *quoting* Delgado, 367 F.3d at 672. "Thus, if a teacher had been known to be a "serial harasser," a school district might be found to have actual knowledge of that teacher's misconduct and that students may be at great risk." Id.

had been replaced by Heineman, but Heidbreder, Pye and Chapman remained. Thus, a *plausible* inference arises that school officials knew that White had sexually harassed students in the year 2003-04 and that he posed the same risk to students in the next school year. A new school year does not wipe clean knowledge of sexual misconduct from the prior school year.

The School District also cites a Fourth Circuit case, Baynard v. Malone, 268 F.3d 228, 238 (4th Cir. 2001), for the proposition that "the plaintiff must show 'actual knowledge' that the teacher 'was **currently** abusing one of his students.'" (d/e 19, p.2, citing 268 F.3d 238 n.9)(emphasis added by the School District). In Baynard, the Fourth Circuit upheld a jury verdict against an elementary school principal for deliberate indifference to the risk that a teacher was sexually abusing a student. The Court also, however, upheld judgment as a matter of law in favor of the school district on the Title IX claim. The court reasoned that the principal's knowledge of the risk of abuse was not enough to prove actual knowledge of abuse as required by Title IX. 268 F.3d at 238 ("Although Malone certainly should have been aware of the potential for such abuse, and for this reason was properly held liable under § 1983, there is no evidence in the record to support a conclusion that Malone was in fact aware that a

student was being abused.").  The Court's reference to "current abuse" of a

student was given as an example of how actual knowledge might be

proven, not as a holding that it was the only way to demonstrate actual

knowledge.  268 F.3d n. 9.  The School District cites no case that supports

a holding that "actual knowledge" of a teacher's abuse disappears at the

end of the school year.

The Court wonders whether the Seventh Circuit would agree would

agree with <u>Baynard</u>'s understanding of "actual knowledge" under Title IX.

*See* <u>Hansen v. Board of Trustees of Hamilton Southeastern School Corp.</u>,

551 F.3d 599, 606 (7th Cir. 2008)(to establish Title IX liability, plaintiffs

"must establish a genuine issue of fact as to whether an appropriate official

. . . had (1) actual knowledge of misconduct by [the teacher] that created a

serious risk to its students . . . ,").[4]  It does not matter at this point, though,

because this case is at the notice pleading stage.  <u>Baynard</u> was decided

after both sides presented all their evidence at a jury trial.  In this case,

discovery has not yet begun.  The court need only decide if a plausible

---

[4]*See* <u>Doe A v. Green</u>, 298 F.Supp.2d 1025, 1033-34 and n. 2 (D. Nev. 2004)(noting that <u>Baynard</u> was minority view and citing district court cases to the contrary); *see also* <u>Rasnick v. Dickenson County School Bd.</u>, 333 F.Supp.2d 560, 566 (W.D. Va. 2004)("Were I to decide this issue anew, I would adopt the view embraced by the majority of courts that the proper interpretation of the relevant Supreme Court authority is that actual notice includes knowledge indicating a substantial risk or likelihood of harm. But I am bound to follow Baynard, and I cannot distinguish it in any principled way from the present case.").

inference of actual knowledge arises from the factual allegations; the court believes it does, as discussed above. *See also* Fed. R. Civ. P. 9(b)("knowledge, and other conditions of mind may be alleged generally").

The School District also argues that no inference of deliberate indifference arises because its response was reasonable. "Once school officials have actual notice of sexual harassment, *Davis* imposes a duty to act. But as long as the school's response is not "clearly unreasonable," it cannot have acted with the requisite deliberate indifference to incur Title IX liability." Gabrielle M. v. Park Forest-Chicago Heights, 315 F.3d 817, 824 (7th Cir. 2003), *quoting* Davis v. Monroe County Bd of Ed.*,* 526 U.S. 629, 648-49 (1999). The District points out that there were no more parental complaints after March 2004, and that White was suspended for one week after accessing adult, not child, pornography. These arguments belong at summary judgment or trial. At this stage, a plausible inference arises that the District knew White was engaging in sexual misconduct with his students and took no action. It necessarily follows that a plausible inference of deliberate indifference arises.

Having determined that a Title IX claim is stated, the Court next addresses whether Count 3 (Title IX hostile educational environment) is duplicative of Count 1 (Title IX discrimination). Plaintiffs assert that

Count 3 is not redundant of Count 1 because it "is premised not upon the sexual abuse itself, but, rather, the hostile educational environment that resulted from the sexual abuse." (d/e 33, p. 20). The Court does not understand the distinction. Counts 1 and 3 seem to be identical theories of relief under Title IX, based on White's misconduct and the School District's indifference to it. Accordingly, the Court will recommend that Count 3 be stricken as duplicative of Count 1.

**B.      Count 2: Plaintiffs' substantive due process claim based on White's "non-sexual" misconduct does not state a claim.**

Plaintiffs pursue their substantive due process claim against all the defendants, including the School District. The claim is based on "incidences of detention and the loss of privacy and bodily freedom possessed by any student, male or female, that are characterized as non-sexual in nature." (Complaint ¶ 200). They assert that they possessed "rights to due process and to avoid the deprivation of their personal liberty" (Complaint, ¶ 201), and a right to "freedom of movement" and "bodily privacy" (Complaint ¶ 206). The misconduct listed includes primarily the misconduct that underlies the Title IX claim, but only to the extent that misconduct can be seen as non-sexual. Plaintiffs allege that they have "a vested right to receive said public education without suffering such

restraints on their freedom of movement, loss of personal pride and personal privacy and detention without any cause or consent whatsoever." (Complaint ¶ 219). White allegedly deprived them of these rights through his misconduct, and the other individual Defendants and the School District through their (its) deliberate indifference to it.

The School Administrators[5] and White[6] argue that they are entitled to qualified immunity because no constitutional violation is alleged. Government officials performing discretionary functions are not liable unless they "violate clearly established statutory or constitutional rights then known to a reasonable officer." Saffell v. Crews, 183 F.3d 655, 658 (7th Cir. 1999)(citation omitted).

> The Supreme Court has identified two key inquiries for qualified immunity assertions: (1) whether the facts, taken in the light most favorable to the plaintiffs, show that the defendants violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of the alleged violation. *Pearson v. Callahan*, --- U.S. ----, 129 S.Ct. 808, 815-16, 172 L.Ed.2d 565 (2009); *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). *Pearson* held that the court may decide these questions in whatever order is best suited to the case at hand.

Gonzalez v. City of Elgin, 578 F.3d 526, 540 (7th Cir. 2009). The analysis is

---

[5]Defendants Braksick, Chapman, Heidbreder, Pye and Heineman, as the case may be.

[6]White adopts the motion to dismiss filed by Defendants Braksick, Chapman, Pye and Heineman.

a "fact-specific question which depends upon the clearly established law at the time." Hinnen v. Kelly, 992 F.2d 140, 142-43 (7th Cir. 1993).

"Substantive due process involves the exercise of governmental power without reasonable justification. . . . It is most often described as an abuse of government power which 'shocks the conscience.'" Tun v. Whitticker, 398 F.3d 899 (7th Cir. 2005); Brown v. Plainfield Community Consolidated Dist. 202, 522 F.Supp.2d 1068, 1076 (N.D. Ill. 2007)("To violate substantive due process, a defendant's conduct must "shock the conscience" and be "unjustifiable by any governmental interest.").

As to Defendant White, the allegations of his sexual abuse and sexual grooming clearly shock the conscience and state a substantive due process claim. Wudtke v. Davel, 128 F.3d 1057, 1062-64 (7th Cir. 1997)(superintendent's alleged sexual assault of teacher stated substantive due process claim); Sandra v. Sperlik, 2009 WL 2241807 * 6 (N.D. Ill. 2009)("It goes without saying that the sexual molestation of a student violates that student's substantive due process rights."). The claim is based on the violation of one's substantive due process right to bodily integrity. Id. And, while the School Administrators generally have no affirmative duty under the Constitution to prevent a teacher's sexual abuse of students, J.O. et al. v. Alton Community Unit, 909 F.2d 267 (7th Cir.

1990), there is support in case law that a substantive due process claim can be stated against them if they "turned a blind eye to constitutional violations thereby allowing a climate to flourish where innocent students are victimized." Sperlik, — F.Supp.2d —, 2009 WL 2241807 *6-8 (N.D. Ill. 2009), *citing* J.O. v. Alton Community Unit Sch. Dist 11, 909 F.2d 267, 271-72 (7th Cir. 1990), Stoneking v. Bradford Area School Dist., 882 F.2d 720, 730 (3rd Cir. 1989), *and other district court cases in the Seventh Circuit that have recognized the "Stoneking" theory of liability*; see also *discussion below regarding Count 4*.

Here, though, Plaintiffs stress that their substantive due process claim is *not* based on White's sexual misconduct, but based only on his misconduct to the extent it is considered *non-sexual*. They appear to pursue their substantive due process claim as an *alternative* to their Title IX claim, not in addition to their Title IX claim.[7]

Plaintiffs' framing of this count significantly alters the analysis. In the substantive due process claim as framed by Plaintiffs, White's actions must

---

[7]Perhaps Plaintiffs chose this route because the Seventh Circuit held in Doe v. Smith, 470 F.3d 331, 337-340 (7th Cir. 2006), that Title IX preempts parallel 42 U.S.C. Section 1983 claims against a school district and school officials. Doe v. Smith, however, was decided before the Supreme Court's Fitzgerald v. Barnstable School Committee, 129 S.Ct. 788 (2009). The Supreme Court held in Fitzgerald that Title IX does not preclude Section 1983 claims for gender discrimination based on the equal protection clause. 129 S.Ct. at 797, *abrogating* Waid v. Merrill Area Public Schools, 91 F.3d 857 (7th Cir. 1996).

be viewed as non-sexual in nature.  That is, White did not take his actions in order to sexually groom or sexually harass Plaintiffs.  White's specific conduct listed in the substantive due process claim is:

- isolating Plaintiffs [in his school room with the door closed and the blind's drawn] "for projects of a non-sexual nature that included blindfolds and restraints on or prohibitions on communication"

- "prodd[ing] female students to engage in ridiculous acts such as acting as his servants and providing saliva . . ."

- "forc[ing] Doe-20 to sit on his upper foot around his ankles in a compromising, physically uncomfortable position (if this position is not viewed as obviously sexual), forc[ing] Doe-20 and Doe-21 to provide saliva . . . coerc[ing] Doe-20 and Doe-21 to act as virtual slaves in cleaning his classroom and to otherwise abandon their freedom of movement to him as he blindfolded them and ran taste, tough and other tests on them in what he conveyed to Doe-20 and Doe-21 was part of the Helen Keller curriculum . . ."

- "isolating . . . [Plaintiffs] as described above, intimidating them, touching them inappropriately (through hugs and other acts that the McLean County School District and its officials denied were sexual in nature)."

- asking Plaintiffs to "scratch[] his upper thighs on the inside of his plant [sic] leg and massag[e] his back on the inside of his shirt

- conditioning Plaintiffs' "right to a public education" on "accept[ing] his physical advances and contacts of a non-sexual nature and unless they acquiesced in his control over their persons to the point of embarrassing them in a classroom . . . . while they spit in a cup against their will or cleaned on multiple occasions.

(Complaint, ¶¶ 202, 203, 205, 211, 217, 225)(bracketed material added).

Viewing many of these actions as non-sexual is quite a strain, given Plaintiffs' other allegations. But the Court will try to view them as non-sexual–i.e., motivated by no purpose to sexually harass, groom or abuse Plaintiffs. Viewing the allegations in this strained light, the Court does not see conduct that "shocks the conscience." Sequestering Plaintiffs alone in a closed classroom with the blinds drawn, blindfolding them, instructing them to remain silent, and inserting objects into their mouths as part of a Hellen Keller project (other than White's penis) may be improper and strange, but are not so outside the bounds of decency to shock the conscience. (Complaint ¶¶ 256-257). Similarly, the unwanted physical contact, forcing the plaintiffs to spit into a cup, and treating Plaintiffs like servants (apparently, with regard to cleaning the classroom) may be wrong, but does not shock the conscience.

Plaintiffs argue that the alleged nature of these acts, "sexual vs. non-sexual, is irrelevant." (d/e 33). Yet, that distinction is crucial. The Court does not see how these actions "shock the conscience" without the underlying sexual motive. Certainly many of the actions are highly inappropriate and bizarre, but the Court does not believe they rise to the

level shocking the conscience if characterized as non-sexual. The actions are shocking *because of* the sexual connotations they carry.

Sperlik, the case cited by Plaintiffs, was about a teacher's sexual gratification of his bondage fantasies through sexually grooming and abusing his students. The plaintiffs in Sperlik did not characterize the teacher's misconduct as non-sexual. *See* Sperlik, 2009 WL 2241807 *1 (teacher allegedly rubbed students' private parts, pressed his penis into their backs, duct taped them to chairs, rubbed their thighs, touched their breasts). Here, Plaintiffs insist that "the allegations in Count II pertain solely to the *non-sexual* acts committed by White which deprived the plaintiffs of their personal liberty." (d/e 33).

The Court accordingly concludes that Plaintiffs allegations in Count II, *as framed*, do not state a claim for the violations of Plaintiffs' substantive due process rights.[8]  Accordingly, the Court recommends dismissal of Count 2 for failure to state a claim.

---

[8]Alternatively, even if the alleged non-sexual conduct does make out a substantive due process claim, Defendants would be entitled to qualified immunity. Plaintiffs point to no cases suggesting that the conduct alleged, *if considered non-sexual*, would violate the constitution, nor is the court aware of any.

**C.**     **Count 4:  Plaintiffs state a Fourth Amendment claim against Defendant White for unreasonable seizure.  A Fourth Amendment claim is arguably also stated against the School Administrators for turning a blind eye to White's constitutional violations.  A Fourth Amendment claim is not stated against the School District because there is no plausible inference of an unconstitutional policy, practice or custom.**

Plaintiffs' Count 4 is for "Unlawful Seizure/Abuse in Custody."

(Complaint p. 49).  They allege that they "were deprived of their

constitutional liberty of movement and right to be free from unlawful

searches and seizures under the Fifth and Fourteenth Amendment."

(Complaint ¶ 255).  Specifically, they allege that:

> White was one of many teachers with explicit and implied authority to control, direct and restrain the movement of children under his control but he exceeded this authority when he unlawfully seized and detained Doe-20 and Doe-21, deprived of [sic] them liberty of movement and blindfolded them under a forced commitment to silence.
>
> As White had the children blindfolded, he used illegal and unreasonable force when, without consent, he inserted his fingers, objects and other items in . . . [Plaintiffs'] mouths and otherwise came into contact with them in commanding them to obey only him while isolated in his classroom.

(Complaint ¶¶ 256-57).

Though they make no specific reference to the Fourth Amendment,

Plaintiffs appear to be pursuing a Fourth Amendment claim in this count,

based on their references to "searches and seizures" and "illegal and unreasonable force."

> The reasonableness of a Fourth Amendment seizure of a public school student by a teacher must be evaluated in the context of the school environment, where restricting the liberty of students is a sine qua non of the educational process. Deprivations of liberty in schools serve the end of compulsory education and do not inherently pose constitutional problems.

Wallace by Wallace v. Batavia School Dist. 101, 68 F.3d 1010, 1013 (7th Cir. 1995). "[I]n the context of a public school, a teacher or administrator who seizes a student does so in violation of the Fourth Amendment only when the restriction of liberty is unreasonable under the circumstances then existing and apparent." Id. at 1014; *see also* Daniel S. v. Board of Educ. of York Community High School, 152 F.Supp.2d 949, 953 (N.D.Ill. 2001)(unreasonable seizure claim stated where student forced to stand naked in front of other students in locker room, as punishment for ripping shorts).

Unlike the substantive due process claim, Plaintiffs do not appear to limit their Fourth Amendment claim to White's "non-sexual conduct." Thus, White allegedly isolated Plaintiffs in his classroom for the purpose of sexually grooming/abusing them. Plaintiffs, being first grade students, were certainly not free to leave the classroom nor to disobey his commands. Defendants do not assert that this is not seizure under the

Fourth Amendment.[9]  The restriction of Plaintiffs' liberty was obviously

objectively unreasonable, since it was for the purpose of sexually

grooming/abusing them.  Accordingly, the Court concludes that a Fourth

Amendment claim is stated against White.[10]

The harder question is whether a Fourth Amendment claim is stated

against the School Administrators individually.  Defendants assert that the

Seventh Circuit rejected a similar Fourth Amendment claim in J.O. v. Alton

Community Unit School District 11, 909 F.2d 267, 273 (7th Cir. 1990).  In

Alton, a teacher allegedly sexually molested students.  The parents

pursued a Fourteenth Amendment claim against the school administrators

and the school board for deprivation of a liberty interest arising from the

alleged special relationship between the defendants and the minor

children, which the plaintiffs argued created an "affirmative duty to provide

for their safety and to prevent the child abuse . . . ."  909 F.2d at 272.  The

Court rejected that theory, holding that "the government, acting through

local school administrations, has not rendered its schoolchildren so

helpless that an affirmative constitutional duty to protect arises."  Id.  The

---

[9]White adopts the other defendants' arguments on Count 4, but the other
defendants do not argue that a Fourth Amendment claim is not stated against White.

[10]The Court does not address whether these allegations fit better under the
Fourth Amendment, the equal protection clause, or the substantive due process clause.
The question is not before the Court.  It is enough at this point to say an arguable
Fourth Amendment claim is stated.

court was careful to note, though, that the plaintiffs did *not* allege that the school defendants had "promoted school policies that 'encourag[ed] a climate to flourish where innocent [children] were victimized.'" Id., *quoting* Stoneking v. Bradford Areas School Dist., 882 F.2d 720, 730 (3d Cir. 1989).

The plaintiffs in Alton pressed a Fourth Amendment claim in addition to their Fourteenth Amendment due process claim. The Seventh Circuit declined to "express any opinion on the merits of the plaintiffs' alternative characterization of their rights except to say that it adds little to their case." Id. at 273. However, the Seventh Circuit reached this conclusion because the plaintiffs had not alleged that the defendants personally violated their rights, not because a Fourth Amendment (or Fourteenth Amendment) claim could never be stated. Id. (plaintiffs need to show "some action by the defendants that would justify the imposition of liability"). The court rejected only the legal theory that "the school defendants, simply by virtue of their relationship to the plaintiffs, are liable for their failure to prevent the child abuse." Id. at 274. The Seventh Circuit remanded the case, directing the district court to allow the plaintiffs to file an amended complaint based on a different legal theory.

Defendants also cite <u>Nabozny v. Podlesny</u>, 92 F.3d 446 (7th Cir. 1996), in which school administrators ignored a homosexual student's pleas to stop other students from harassing and assaulting him.  Upholding summary judgment for the defendants on the substantive due process claim, <u>Nabozny</u> reiterated <u>Alton</u>'s holding that the defendants had no constitutional duty to act.  92 F.3d at 460.  The Court, however, took pains to point out that the plaintiffs had *not* challenged <u>Alton</u>'s holding nor tried to distinguish it.  <u>Id.</u> at 459 n. 13.  The Seventh Circuit remarked that <u>Alton</u> *was* arguably distinguishable because the school officials in <u>Nabozny</u> had allegedly been aware of the abuse for years, unlike the officials in <u>Alton</u>, but the Court stressed that the plaintiffs had not pursued that argument.  <u>Id.</u> The Court in <u>Nabozny</u> also noted that "[t]he extent of a school's control over a student also might vary with the student's age; schools control kindergarten students more than high school students."  <u>Id.</u>  <u>Nabozny</u> explicitly left these possibilities open for future litigation.  <u>Id.</u>

<u>Alton</u> and <u>Nabozny</u>, therefore, do not unequivocally preclude a Fourteenth or Fourth Amendment claim against school administrators based on a teacher's sexual abuse of students.  Both cases stand essentially for the proposition that school officials must be personally responsible for that abuse to be held liable under § 1983, just like all §

1983 defendants.  Nor do <u>Alton</u> and <u>Nabozny</u> reject the Third Circuit's "*Stoneking*" theory of liability–that school officials can be liable for "'encourag[ing] a climate where innocent [children] were victimized.'" 909 F.2d at 272, *quoting* <u>Stoneking v. Bradford Area School Dist.</u>, 882 F.2d 720, 730 (3rd Cir. 1989); <u>Wallace by Wallace v. Batavia School Dist. 101</u>, 68 F.3d 1010, 1016 n. 4 (7th Cir. 1995)(expressing no opinion on *Stoneking* theory); <u>Sperlik,</u> — F.Supp.2d —, 2009 WL 2241807 * 6 (N.D. Ill. 2009)(joining other district courts in concluding that <u>Alton</u> "tacitly approved" the *Stoneking* theory, and that "a substantive due process claim can stand where the plaintiff puts forth enough evidence to demonstrate that an individual defendant turned a blind eye to constitutional violations thereby allowing a climate to flourish where innocent students are victimized."). The debate over the *Stoneking* theory is somewhat of a red herring at present in any event, since the *Stoneking* theory seems to be discussed under a substantive due process analysis.  As discussed above, Plaintiffs have not stated a substantive due process claim as framed.

Under § 1983, the School Administrators can be liable if they were personally responsible for the alleged constitutional injuries of the students, just like any other § 1983 defendant.  The School Administrators argue that no plausible inference of personal responsibility arises against them.  The

Administrators cannot be liable under § 1983 on a respondeat superior basis.  Chavez v. Illinois State Police, 251 F.3d 612, 651 (7th Cir. 2001)(citation omitted).  "Supervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable . . . . the supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see.  They must in other words act either knowingly or with deliberate, reckless indifference."  Jones v. City of Chicago, 856 F.2d 985, 992-93 (7th Cir. 1988)(citations omitted).

Taking the allegations as true and construing plausible inferences in Plaintiffs' favor, the Administrators were notified of White's suspected sexual behavior with three different female students during the 2003-04 school year.  Additionally, White locked Plaintiffs in his classroom with the door closed and the blinds drawn at least weekly over a six month period. Given the frequency and duration of this practice, a plausible inference arises that at least some of the Administrators knew about this practice. And, the School Administrators allegedly knew, as of October 2004, that White used his classroom computer to access pornographic websites.

The Court believes that these allegations give rise a plausible inference of personal responsibility arises against the School

Administrators on the Fourth Amendment claim, enough at least to survive a motion to dismiss. In the Court's opinion, an inference arises that the Defendants knew of White's constitutional violations and turned a blind eye to them. A developed factual record may show otherwise.[11]

The Court must next address whether the School Administrators are entitled to qualified immunity on this Fourth Amendment claim.[12] The right must have been "'clearly established in a more particularized, and hence more relevant, sense" than general propositions of law. Brosseau v. Haugen, 543 U.S. 194, 198 (2004). Plaintiffs bear this burden, which can be met by "showing that there is 'a clearly analogous case establishing a right to be free from the specific conduct at issue' or that 'the conduct is so egregious that no reasonable person could have believed that it would not violate clearly established rights.'" Gonzalez v. City of Elgin, 578 F.3d at 540, quoting Smith v. City of Chicago, 242 F.3d 737, 742 (7th Cir.2001).

---

[11]It is not clear if this claim fits better as a Fourth Amendment, a substantive due process claim, an equal protection claim, or some combination thereof. Defendants do not argue, however, that White's conduct could not be viewed as a "seizure" for Fourth Amendment purposes.

[12]Defendants Braksick, Chapman, Pye and Heineman explicitly make their qualified immunity argument only as to Count 2 (the substantive due process claim), but the Court believes it reasonably clear that they intend it for Count 4 as well. Additionally, Defendant Heidbreder does expressly argue for qualified immunity on Count 4 in his separate motion.

Defendants' qualified immunity arguments are based on a narrow view of Plaintiffs' claim. Defendants argue that no constitutional violation is alleged because there is no constitutional right to a safe school environment or affirmative constitutional duty to protect students. As discussed above, however, Plaintiffs allegations are broader than that. Plaintiffs allege that the School Administrators were personally aware of and turned a blind eye to a known, obvious and substantial risk of sexual abuse that White posed to his first grade female students. Alton and Nabozny were not based on such personal knowledge, as expressly acknowledged by the Seventh Circuit in those opinions. Defendants have not addressed qualified immunity in light of this view of the allegations. For that reason alone, qualified immunity on this claim should be denied at this point. Alternatively, the Court believes, as discussed above, that these allegations do state a Fourth Amendment violation. The Court further believes that the right violated was clearly established. *See* Sperlik, 2009 WL 224 1807 * 12 ("The law imposing liability on supervisors who condone constitutional violations by turning a blind eye was clearly established . . . .).

The next question is whether a claim is stated against the School District. The Court does not believe so. To state a § 1983 claim against

the School District, Plaintiffs must allege facts that plausibly suggest that their constitutional violations were attributable to a School District policy, custom or practice. Fitzgerald, 129 S.Ct. at 797. Here, an express District policy clearly did not cause Plaintiffs' injuries. To the contrary, Plaintiffs allege that the District's written policies prohibit harassment and require District employees to report suspected child abuse. (Complaint ¶¶ 50-51). Allegations that the School Administrators violated those express policies does not make out a claim against the School District. Lewis v. City of Chicago, 496 F.3d 645, 656 (7th Cir.2007) ("Misbehaving employees are responsible for their own conduct, 'units of local government are responsible only for their policies rather than misconduct by their workers.'")(quoted cite omitted).

Plaintiffs seem to argue that, despite the District's express policies, the School District, through the actions of the School Administrators individually, established a de facto custom and practice of ignoring and concealing teachers' sexual abuse of students. (d/e 33, p. 18)(Plaintiffs "have adequately alleged actions by the individual defendants which permitted a discriminatory climate to flourish such that it became the policy of the district."). The District can be liable under § 1983 for "(1) . . . a permanent and well-settled municipal custom or practice that, although not

authorized by official law or policy, was the moving force behind the plaintiff's constitutional injury; or (2) an individual with final policy-making authority for the municipality (on the subject in question) caused the constitutional deprivation."  Valentino v. Village of South Chicago Heights, 575 F.3d 664, 674 (7th Cir. 2009).

The parties argue about whether the Seventh Circuit has adopted the *Stoneking* theory of liability.  As discussed above, the Seventh Circuit has expressly not addressed the merits of that theory.  In the Court's view, however, the *Stoneking* debate has little relevance to determining whether an unconstitutional District policy is alleged.  In *Stoneking*, the Third Circuit held that a principal and assistant principal, in their individual capacities, were not entitled to qualified immunity where they, individually, maintained a practice of "reckless indifference to instances of known or suspected sexual abuse of students by teachers, . . . ."  882 F.2d at 724-25.  The *Stoneking* Court did discuss *Monell*, but in the context of a municipal policymaker's *individual* liability for maintaining a policy of deliberate indifference to teachers' sexual abuse of students.  There was no discussion of the school district's liability.

Here, the Court has already concluded that a claim is stated against the School Administrators in their individual capacities and that they are

not entitled to qualified immunity.  They can be individually liable for implementing their own unconstitutional policies.  The question is whether their actions constituted a policy or practice *attributable to the District*.  The Court does not believe that any plausible inference arises that the School Administrators' actions and inactions reflected "a permanent and well-settled . . . custom or practice" of the School District.

Plaintiffs assert that the School Administrators had "final policymaking authority," but they do not address the School District's argument that, under Illinois law, only the School Board has final policy-making authority.  Duda v. Board of Educ. of Franklin Park Public School Dist. No. 84, 133 F.3d 1054, 1061 (7th Cir. 1998).  That the School Administrators "had the authority to institute corrective measures" on the School District's behalf (Complaint ¶ 209) does not make them final policymakers.  Plaintiffs seek leave to amend to add the words "final policymakers," but the addition of these bare conclusory allegations would not help, given Duda and the fact that the School Administrators were *contravening* the School District's policies, not establishing them.

Accordingly, the Court concludes that no inference arises that Plaintiffs' injuries were attributable to a School District policy or practice.

The Court will recommend that the School District be dismissed from this claim.

**D. Count 5: Dismissing Plaintiffs' 42 U.S.C. § 1985(3) claims because of the intracorporate conspiracy doctrine would be premature.**

Count 5 alleges that the School Administrators conspired with White to conceal White's misconduct by, among other actions, not reporting the complaints against him, failing to document the nature and extent of his misconduct in his personnel file, and keeping the nature and extent of White's misconduct a secret. Through this agreement, White was allegedly able to continue his misconduct and the School Administrators were able to protect their reputations and careers and the reputation of the school. (*See* Complaint ¶¶ 264, 266-67).

The elements of a § 1985(3) claim are:

"(1) a conspiracy; (2) a purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to his person or property or a deprivation of any right or privilege of a citizen of the United States."

Keri v. Board of Trustees of Purdue University, 458 F.3d 620 (7th Cir. 2006)(quoted cites omitted). "[T]he conspiracy must be motivated by racial, or other class-based discriminatory animus." Smith v. Gomez, 550 F.3d 613, 617 (7th Cir. 2008). Plaintiffs do not specifically allege in this

count that Defendants were motivated by a class-based animus, but it is evident from their other allegations that they are asserting their gender as the discriminatory animus.  Volk v. Coler, 845 F.2d 1422, 1434 (7th Cir. 1988)(§ 1985 covers conspiracies to discriminate based on sex).

The individual Defendants argue that the intracorporate conspiracy doctrine bars this claim against them.  Under that doctrine, members of the same entity acting within the scope of their employment cannot be considered to be acting in "conspiracy" with each other.   Payton v. Rush-Presbyterian-St. Luke's Med. Ctr., 184 F.3d 623, 632-33 (7th Cir.1999).  The Seventh Circuit has discussed exceptions to this doctrine for employees "motivated *solely* by personal bias" or where an "extensive discriminatory conspiracy" is involved rather than "'essentially a single act of discrimination'".  Hartman v. Bd of Trustees of Community College Dist. No. 508, 4 F.3d 465, 470-71 (7th Cir. 1993)(emphasis added)(quoted cite omitted); Keri v. Bd. of Trustees of Purdue Univ., 458 F.3d 620, 642 (7th Cir. 2006)("In a corporate conspiracy, co-conspirators must be outside of the corporation."; but also discussing the exception for solely personal bias); Payton v. Rush-Presbyterian-St. Luke's Medical Center,184 F.3d 623, 632-33 (7th Cir. 1999)(§ 1985 conspiracy cannot exist among members of same entity except in "'egregious circumstances'")(citation

omitted).  Defendants cite <u>Doe v. Bd. of Educ. of Hononegah Community High School Dist. #207</u>, 833 F.Supp. 1366, 1381 (N.D. Ill. 1993), in which the district court dismissed a similar § 1985 claim as barred by the intracorporate conspiracy doctrine.  The court in <u>Hononegah</u> reasoned that the doctrine applied because the school administrators' concealment of the abuse could have only occurred because of their positions.

The Court wonders how <u>Hononegah</u> squares with the Seventh Circuit's discussion of the exceptions to the doctrine in <u>Hartman</u>.  If an employee is "solely motivated by personal bias", <u>Hartman</u> at least contemplates liability regardless of whether that employee used his position to effectuate that personal bias.  Similarly, if employees were abusing their positions to further an "extensive discriminatory conspiracy," the Court does not see how the doctrine would protect them.  On the other hand, Plaintiffs certainly have an uphill battle.  The Seventh Circuit is clear that only in "egregious circumstances" would the exception apply; otherwise the exception would swallow the rule.  *See* <u>Hartman</u>, 4 F.3d at 470.  Defendants may have acted in part out of illegitimate personal motives, but that is not enough.  *See* <u>Keri</u>, 458 F.3d at 642 (plaintiffs failed to show that defendant's "interested in maintaining a quality education program played no interest at all in their decisions.").

This is a close call, in the Court's opinion. However, given the posture of the case and the considering the murky parameters of the exceptions to the doctrine, the Court believes that dismissal would be premature. <u>Hononegah</u>, the district court case cited by Defendants, was decided at the motion to dismiss stage, but other cases have waited until summary judgment. *See* <u>Keri</u>, 458 F.3d 620, 642 (7th Cir. 2006)(upholding summary judgment to board members–no evidence that defendants motivated solely by racial animus); <u>Ross v. Bd. of Regents of the University of Wisconsin System</u>, — F.Supp.2d —, 2009 WL 2877157 *17 (E.D. Wis. 2009)(on summary judgment, finding intracorporate conspiracy doctrine precluded Section 1985 claim against university administrators); <u>Stenson v. Town of Cicero</u>, 2005 WL 643334 *7-9 (N.D. Ill. 2005)(declining to dismiss at 12(b)(6) stage on grounds of intracorporate conspiracy doctrine, and noting "questions remain as to . . .[doctrine's] proper scope.")(not reported in F.Supp.2d); <u>Barner v. City of Harvey</u>, 1996 WL 199745 (N.D. Ill. 1996)(denying motion to dismiss)(not reported in F.Supp.2d); *but see* <u>Payton v. Rush-Presbyterian-St. Luke's Medical Center,</u>184 F.3d 623, 632-33 (7th Cir. 1999)(upholding 12(b)(6) dismissal of § 1985 claim, but the plaintiff had not responded to intracorporate conspiracy argument); <u>Wright v. Illinois Dept. of Children & Family</u>

Services, 40 F.3d 1492 (7th Cir. 1994)(upholding 12(b)(6) dismissal of §

1985(2) claim, where no "egregious circumstances" alleged).  Accordingly,

the Court will recommend that the Section 1985(3) not be dismissed as

barred by the intracorporate conspiracy doctrine.[13]

**E.      Count 6:  Plaintiff's 42 U.S.C. § 1986 claim is derivative of their § 1985(3) claim, and therefore should also remain in the case at this point.**

Plaintiff's Count 6 is for "Failure to Prevent Loss of Civil Rights"

under 42 U.S.C. § 1986.  Section 1986 provides in pertinent part:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented . . .

Defendants assert that the § 1986 claim must fail because there is

---

[13]There may be another problem with the conspiracy claim that is not addressed by the parties.  Since all the individual defendants are government actors, a § 1985(3) claim is arguably "superfluous" to a Section 1983 claim.  Fairley v. Andrews, 578 F.3d 518, 526 (7th Cir. 2009).  In Fairley the Seventh Circuit remarked that a Section 1985(3) claim was "superfluous" to the plaintiff's Section 1983 claims, since all the defendants were state actors.  The Court noted that "[t]he function of § 1985(3) is to permit recovery from a private actor who has conspired with state actors." Id.; Redwood v. Dobson, 476 F.3d 462, 466 (7th Cir. 2007)(§ 1985(3) "covers conspiracies between public and private actors").  The Fairley Court remarked that "[a]ll defendants are state actors, so a § 1985(3) claim does not add anything except needless complexity."  578 F.3d at 526.

no § 1985 claim.  A § 1986 claim does require a violation of § 1985.  <u>Keri</u>

<u>v. Bd. of Trs. of Purdue Univ.</u>, 458 F.3d 620, 642-43 (7th Cir.2006).  As

discussed above, though, the Court believes that dismissal of the claim is

premature.  Defendants offer no other argument for dismissal of this count.

Accordingly, the motions to dismiss should be denied as to this count.

## II.  State Claims

Federal notice pleading standards apply to state claims proceeding

in federal court.  <u>Windy City Metal Fabricators & Supply, Inc. v. CIT</u>

<u>Technical Financing</u>, 536 F.3d 663, 670(7th Cir. 2008); <u>Beanstalk Group,</u>

<u>Inc. v. AM General Corp.</u>, 283 F.3d 856, 863 (7th Cir. 2002).

### A.     Count 7: Plaintiffs fail to state a claim against the School District for battery.

In Count 7, Plaintiffs pursue a battery claim against both White and

the School District.  They allege that White's battery was "part of a pattern

of ongoing misconduct that resulted from the McLean County School

District's policy promulgated by Pye, Braksick, and Heidbreder that a plan

that White would engage in physical contact with students who viewed his

contact as harassing and that the District could not view that conduct as

inappropriate."  (Complaint ¶ 287).  Plaintiffs allege that White committed

these batteries "within the scope of employment as determined by Pye,

Braksick and Heidbreder."  (Complaint ¶ 288).  They seem to be asserting

that Pye, Braksick and Heidbreder authorized White to continue his improper physical contact in order to cover up the problem and avoid embarrassment and liability for the School District. (d/e 33, p. 23).

The School District argues that it cannot be liable on a respondeat superior basis for White's batteries because those acts "'were not in furtherance of the employer's business, but rather in furtherance of the employee's purposes.'" (d/e 19, p. 11, *quoting* Williams v. Hall, 288 Ill.App.3d 917 (1st Dist. 1997). This Court reached the same conclusion in Doe-10 v. White, 08-1287: "a teacher's sexual abuse of students is not within his or her scope of employment. Accordingly, no respondeat superior lies." (3/3/09 R&R in 08-1287, d/e 47, p. 40)(citations omitted).

Plaintiffs contend that White was serving his employer's purposes because Pye, Braksick and Heidbreder formed a plan that concealed White's abuse and allowed it to continue. (d/e 33, p. 23). Their alleged indifference to and concealment of White's abuse, however, has nothing to do with whether White acted within the scope of his employment as a first grade teacher when he sexually abused his students. No action or inaction by school administrators could make a teacher's sexual abuse of his students within his scope of employment. Accordingly, the Court will

recommend that the School District be dismissed from this claim. White remains in as a defendant on this claim.

## B. Count 9: Plaintiffs fail to state a hate crime claim against the School District.

Plaintiffs contend that the School District is a "person" as defined in 725 ILCS 5/2-15, the Illinois hate crime statute. They allege that the School District committed a hate crime by allowing White to continue his sexual abuse.

Defendants argue that the School District is not a "person" within the meaning of the hate crime statute. The Court need not decide that question, though, because Plaintiffs fail to state a claim against the School District for a hate crime even if the District is considered a "person" under the statute.

720 ILCS 5/12-7.1 provides in relevant part:

A person commits hate crime when, by reason of the actual or perceived . . . ., gender, . . .of another individual . . . he commits assault, battery, aggravated assault, . . . [or other enumerated crimes] . . . .

(brackets added). Here, the School District did not itself commit batteries against the students. Even if the School District could be a "person" liable for White's hate crimes, that liability would arise only on a *respondeat superior* basis. As discussed above and in the Court's recommendation in

case 08-1287, no respondeat liability lies because White did not act within the scope of his employment when he committed batteries against his students.  *See, e.g.,* Doe v. Woodridge Elementary School Dist. No. 68 Bd. of Educ., 2005 WL 910732 (N.D. 2005)(not reported in F.Supp.2d)(dismissing claims against school district and administrators, including hate crime claim, based on municipal liability for teacher's sexual abuse of student); *see also* Court's 3/3/09 Report and Recommendation in case 08-1287, d/e 47, pp. 40-41.  The cases cited by the parties that have found entity liability under the hate crime statute were based on *respondeat superior* liability.  Holder v. Ivanjack, 39 F.Supp.2d 965 (N.D. Ill. 1999)(hate crime claim stated against city on basis of respondeat superior where plaintiff had sufficiently pled that the officers were acting within the scope of their employment because the officers were responding to a shooting incident); McCaleb v. Pizza Hut of America, Inc., 28 F.Supp.2d 1043, 1049 (N.D. Ill. 1998)(concluding that corporation was a "person" under hate crime statute and finding that nothing in statute "that precludes applying ordinary *respondeat superior* liability")[14].  Because White was not acting in the scope of his employment, no respondeat

---

[14]McCaleb did not address whether the employees were acting within the scope of their employments, but they arguably were because their conduct involved the refusal to serve patrons at a restaurant.

superior liability lies. The Court will therefore recommend dismissal of this count.

In this count Plaintiffs also seek an injunction barring School District employees from "ever interviewing Doe-20 or Doe-21 directly or indirectly." (Complaint, p. 66). This has nothing to do with the hate crime claim and is also not an appropriate request for injunctive relief in any event. If School District employees are currently contacting Plaintiffs without the consent and knowledge of their parents and attorneys, Plaintiffs should file an appropriate motion setting forth specific facts that establish the need for court intervention.

### C. Count 11: Plaintiffs fail to state a false imprisonment claim against the School District.

Plaintiffs' false imprisonment claim appears to based on respondeat superior. They assert that the School District authorized or ratified White's misconduct and therefore that White acted within the scope of his employment. As discussed above, White's sexual abuse of his students cannot be conceived to be within the scope of his employment. *See* Krause v. Turnberry Country Club, 571 F.Supp.2d 851, 864 (N.D. Ill. 2008)("Illinois courts have consistently held that acts of sexual assault and misconduct are outside the scope of employment as a matter of law."). If Plaintiffs mean to base this claim on White's "non-sexual" misconduct,

there is no claim against White as discussed above, and therefore no respondeat superior claim.  Accordingly, the Court will recommend dismissal of this claim.  The Court does not address the School District's contention that a false imprisonment claim could never be stated by a school student.

### D.    Count 13: Plaintiffs state a claim against the School Administrators for intentional infliction of emotional distress.

The Illinois Supreme Court defines the tort of intentional infliction of emotional distress as:

> conduct . . . truly extreme and outrageous. Second, the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress. Third, the conduct must in fact cause severe emotional distress. . . .[citation omitted].  "The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. The intensity and duration of the distress are factors to be considered in determining its severity." Restatement (Second) of Torts § 46, comment j, at 77-78 (1965).

McGrath v. Fahey, 126 Ill.2d 78, 86 (1988).

The School Administrators maintain that their actions and inactions were not "directed at Plaintiffs" and therefore they cannot be liable for intentional infliction of emotional distress ("IIED").  They cite Green v. Chicago Tribune Co., 286 Ill.App.3d 1 (1st Dist. 1996), in which a mother's IIED claims based on a newspaper article and photos of her deceased son

were dismissed because the article was not directed at her and she was not present when the photos were taken. The Court does not see the analogy. Here, Plaintiffs, as first grade students of White's class, were the direct victims of the School Administrators' alleged deliberate indifference to White's sexual abuse.

The School Administrators also assert that their failure to report White's suspected abuse does not arise to the level of extreme and outrageous. Plaintiffs allege more than just a failure to report suspected abuse, however. School Administrators allegedly had actual notice of White's misconduct by three sets of parents over a two month period in 2003-04, but did nothing in response, allowing the misconduct to continue, and then rehired White for the 2004-05 year. The Administrators allowed White to continue teaching in the 2004-05 year despite their knowledge of his misconduct in the prior school year and their knowledge of his extensive internet forays into pornography on his work computer. They allegedly knew that White was sequestering Plaintiffs in a locked classroom at least weekly for over six months. And, they allegedly

concealed all this knowledge in order to protect themselves, knowing that doing so would allow White to continue his abuse.[15]

The Court acknowledges that are no allegations that Plaintiffs in this case notified School Administrators of White's abuse as the plaintiffs in 08-1287 did. That is an important distinction. However, at this stage the Court believes Plaintiffs have sufficiently alleged an IIED claim against the School Administrators, viewing the allegations as a whole and in light of Plaintiffs' tender age when the abuse occurred, White's near total control of them as their teacher, and the School Administrators' alleged knowledge of all of White's misconduct over the course of his employment at the elementary school. Nor are the School Administrators protected by discretionary immunity from this claim at this point, for the reasons discussed in the negligent supervision claims below.

The School Administrators next contend that this claim is barred by the absolute immunity afforded public officials. As Plaintiffs point out, the cases cited by the School Administrators are not factually analogous to this case. *See* Geick v. Kay, 236 Ill.App.3d 868 (2d Dist. 1992)(absolute privilege barred libel action against village presidents for comments about

---

[15]The Court is not saying that is what actually happened, but the Court must accept the allegations as true at this stage and draw plausible inferences from those allegations in favor of Plaintiffs. Knowledge and intent can be generally alleged under notice pleading standards, Fed. R. Civ. P. 9(a)(2).

reasons for plaintiff's resignation); Morton v. Hartigan, 145 Ill.App.3d 417 (1st Dist. 1986)(absolute immunity barred retaliatory discharge action against supervisors at Attorney General's); Auriemma v. Montgomery, 860 F.2d 273 (7th Cir. 1988)(no absolute immunity for city attorneys for "extrajudicial investigative activities); Blair v. Walker, 64 Ill.2d 1 (1976)(absolute privilege barred libel claim against governor for statements in press release); Horwitz v. Board of Educ. of Avoca School Dist. No. 37, 260 F.3d 602 (7th Cir. 2001)(school officials statutorily and absolutely immune from defamation claim based on discussions with parents about the plaintiff's absence); McLaughlin v. Tilendis, 115 Ill.App.2d 148 (1969)(school superintendent's statements to board about teacher's lack of ability was absolutely privileged from suit).

The School Administrators cite no case law that supports a proposition that they are absolutely immune from lawsuits based on their decisions of how to handle a teacher's suspected sexual abuse of students. "Public officials seeking absolute immunity from civil liability bear the burden of showing that overriding considerations of public policy require that they be exempt from personal liability for their alleged unlawful conduct." Auriemma, 860 F.2d at 275. They have not met that burden in the Court's opinion.

**E.     Count 14: Plaintiffs' respondeat superior claim against the School District based on the School Administrators' intentional infliction of emotional distress should remain in at this point.**

The School District's argument to dismiss this count is based solely on the School Administrators' argument that no IIED claim is stated against them.  As discussed above, the Court believes that an IIED claim is stated against the Administrators.  The School District does not address whether they can be liable for those Administrators on a *respondeat superior* basis.  Accordingly, this claim should remain in the case at this point.

**F.     Count 15: Negligent Infliction of Emotional Distress against School District should remain at this point.**

Plaintiffs pursue this claim against the School District, based on the School Administrators' alleged actions and inactions.

The School District does not argue that it is immune from this claim. Instead, it moves to dismiss for failure to state a claim, arguing that the alleged negligent acts of the School Administrators caused no "contemporaneous physical injury or impact to Plaintiffs."  (d/e 19, p. 16). This is known as the "impact rule," which applies to "direct victims" of the negligent infliction of emotional distress.  Lewis v. CITGO Petroleum Corp., 561 F.3d 698, 702-03 (7th Cir. 2009).  This is in contrast to the

"zone of physical danger" test for claims brought by bystanders.  Id. The

parties agree that Plaintiffs are "direct victims," so the Court will stick to the

"impact" analysis.

Cases discussing the impact rule are challenging to reconcile,

including Illinois Supreme Court cases.  It is not clear to the Court that the

Illinois Supreme Court still embraces the impact rule, even for direct

victims.  See Pasquale v. Speed Products Engineering, 166 Ill.2d 337

(1995)("In Corgan, . . ., this court made clear that Rickey 's

zone-of-physical-danger rule applied only to bystanders. Corgan, however,

extended Rickey 's elimination of the impact rule to instances where

plaintiffs were the direct victims of the negligent conduct and suffered

emotional distress injury.")[16]; Schwartz v. National Van Lines, 375

F.Supp.2d 690, 700-01 (N.D. Ill. 2005)(discussing contradictions in cases).

The Seventh Circuit, however, has concluded that the impact rule is

still alive.  It recently explained that, "a direct victim of alleged negligent

infliction of emotional distress must satisfy the 'impact' rule. . . .Under the

impact rule, a direct victim may not recover for emotional distress suffered

as a result of the defendant's alleged negligence unless the emotional

---

[16]Some courts have rejected this statement as dicta and an incorrect
characterization of Corgan, and the Seventh Circuit recently affirmed the viability of the
impact rule in Lewis.

distress 'was accompanied by a contemporaneous physical injury to or impact on the plaintiff.'" <u>Lewis v. CITGO Petroleum Corp.</u>, 561 F.3d 698, 703 (7th Cir. 2009), *citing* <u>Rickey v. Chi. Transit Auth.</u>, 98 Ill.2d 546, 550 (1983). "Direct victims no longer need to suffer physical manifestations resulting from the emotional distress as a prerequisite to recovery; emotional injuries alone will suffice." <u>Id.</u> The Seventh Circuit has also concluded that "contemporaneous" means "proximately related" to the impact or injury. <u>Kapoulas v. Williams Ins. Agency, Inc.</u>, 11 F.3d 1380, 1384 (7th Cir. 1993). "Illinois courts treat claims by direct victims of negligent infliction of emotional distress under the same approach used for standard negligence claims." <u>Id.</u>[17]

Plaintiffs seem to contend that White's abuse constituted the "physical impact" that was proximately caused by the School Administrators' negligence. The cases cited by Plaintiffs, however, involved an actual physical impact that occurred at the same time as the alleged infliction of distress. <u>Burns v. Cineplex Odeon</u>, 1996 WL 501742 (plaintiff thrown to ground and physically removed from movie); <u>Jarka v.</u>

---

[17]After both <u>Corgan</u> and <u>Pasquale</u>, the Seventh Circuit stated that "Illinois follows the 'impact rule,' which allows a plaintiff to recover for negligent infliction of emotional distress only if the distress is directly and causally related to a physical injury." <u>Cleveland v. Rotman,</u> 297 F.3d 569 (7th Cir. 2002). However, the Seventh Circuit noted recently in <u>Lewis v. CITGO Petroleum Corp.</u>, 561 F.3d 698, 703 (7th Cir. 2009) that no physical injury is required.

Yellow Cab Co., 265 Ill.App.3d 366 (1st Dist. 1994)(decedent fell backward while witnessing cab driver's confrontation with wife and trying to help his wife out of cab). On the other hand, the School District does not address in any detail what is considered a "contemporaneous" physical impact within the meaning of this tort. The court did not find a sufficiently analogous case in its own research.

After careful consideration, the Court believes that this decision is better made on a more developed factual record and more thorough briefing about the scope of this tort, particularly, on the physical impact requirement. At this point, the Court cannot confidently rule out a negligent infliction of emotional distress claim based on the grounds argued by the School District.

### G. Counts 16 & 17: Plaintiffs do state claims for negligent hiring, but the School District is immune from these claims under 745 ILCS Section 10/2-201.

Count 16 is against the School District for negligent hiring. In this Count, Plaintiffs allege that the School District conducted a criminal background check of White after White accepted the District's offer of employment in August, 2002. The next month the criminal background check was conducted and indicated that White was on "conditional discharge as a result of a conviction for resisting arrest in an alcohol

related incident in which law enforcement officers observed White physically abuse his girlfriend and eventual wife." (Complaint ¶ 397). The report also revealed that White had been charged with domestic battery and possession of alcohol by a minor. (Complaint, para. 398). The School District asserts that these charges were nolle prossed, with Plaintiff pleading guilty only to resisting a police officer.[18]

The District hired White despite the report, even though White had falsely misled the District about the charges by stating "merely that a law enforcement officer pushed him and White was 'caught off guard.'" (Complaint, ¶ 395). Plaintiffs allege that the District willfully and wantonly breached its duty of care by hiring White in light of the criminal report and White's misrepresentations about his criminal background. "As an employee..., White repeatedly violated policies that indicated a lack of truth telling ability and he eventually utilized his deceit . . ." to sexually abuse his female students.

Count 17 is against the School District for negligent re-employment for the 2004-05 school year (though the actions are also characterized as willful and wanton). In this Count, Plaintiffs allege that the District did not

---

[18]The School District attaches what purports to be a plea agreement, but the Court does not take judicial notice of it, since it is not properly authenticated and does not specify what counts are dismissed, other than "counts 1 and 2." (d/e 19, Ex. 1).

consider the three reports of sexual misconduct by the 2003-04 students, White's criminal report and misrepresentations about it, and, "on information and belief, [the identification of] White . . . as a teacher who during off-school hours utilized another teacher's computer to access pornographic Internet web sites."  (Complaint ¶ 410).  The District allegedly "did not conduct an appropriate investigation" into White's reemployment.  (Complaint ¶ 415).

"Illinois law recognizes a cause of action against an employer for negligently hiring, or retaining in its employment, an employee it knew, or should have known, was unfit for the job so as to create a danger of harm to third persons."  <u>Van Horne v. Muller</u>, 185 Ill.2d 299 (1998).

> To successfully plead a cause of action for negligent hiring or retention, it is not enough for the plaintiff to simply allege that the employee was generally unfit for employment. "There are many kinds of unfitness for employment that do not give rise to tort liability for negligent hiring [or retention]." . . .Rather, liability arises in this context when a particular unfitness of an employee gives rise to a particular danger of harm to third parties. . . The particular unfitness of the employee must have rendered the plaintiff's injury foreseeable to a person of ordinary prudence in the employer's position.

<u>Van Horne</u>, 185 Ill.2d at 313 (citations omitted).

The School District asserts that no negligent hiring claim arises from the criminal charges, because those charges gave no warning that White might sexually abuse minors.  The Court agrees that it is hard to see how

the criminal charges and White's alleged misleading statements about them would make White's pedophile predilection foreseeable. However, the Court believes this determination would be premature. The specifics of the charges, the incidents that gave rise to them, and the School District's knowledge thereof are not in the record. Plaintiffs also make the point that they need discovery to determine what other information the District had when it decided to hire White.

Accordingly, the Court concludes that Plaintiffs have stated a claim for negligent hiring in count 16. The School District does not move to dismiss count 17–the negligent re-employment count-- for failure to state a claim. In any event, the Court also concludes that Plaintiffs have stated a claim for negligent "re-employment" in Count 17, based on the reports of suspected sexual misconduct by the three students and on White's pornographic internet activities at school.

However, the Court also concludes that the School District is immune from both these claims under 745 ILCS 10/2-201. That section provides:[19]

> Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from

_____

[19]The Court sets forth verbatim much of its Section 2-201 discussion from its Recommendation in case 08-1287.

his act or omission in determining policy when acting in the exercise of such discretion even though abused.

Section 2-201 immunity applies to public entities, since public entities are not liable if their employee is not liable.  Arteman v. Clinton Community Unit School Dist. No. 15, 198 Ill.2d 475, 513-14 (2002).

"This section immunizes public employees from liability where the injury claimed is the result of a 'discretionary policy determination.'"  Albers v. Breen, 346 Ill.App.3d 799, 806 (4th Dist. 2004).  The defendants bear the burden of proof for this affirmative defense.  "The defense must be apparent on the face of the complaint or else supported by affidavits or other evidentiary materials."  Id., *citing* Van Meter v. Darien Park District, 207 Ill.2d 359, 370 (2003).   Section 2-201 immunity protects against both negligent and willful and wanton conduct.  In re Chicago Flood Litigation, 176 Ill.2d 179, 195-96 (1997).

For § 2-201 immunity to apply, the local public employee must have been making a policy choice *and* exercising discretion.  Van Meter , 207 Ill.2d at 379.  A policy choice is one which "require[s] the governmental entity or employee to balance competing interests and to make a judgment call as to what solutions will best serve each of those interests."  Harrison v. Hardin County Unit School Dist. No. 1, 197 Ill.2d 466, 472 (2001); Harinek v. 161 North Clark Street Ltd Partnership, 181 Ill.2d 335, 342

(1998). A discretionary act is one which is "unique to a particular public office." Id. In contrast, a "ministerial" act is not afforded § 2-201 immunity. A ministerial act is one "which a person performs on a given state of facts in a prescribed manner, in obedience to the mandate of legal authority, and without reference to the official's discretion." Id.

The Court acknowledged in its Recommendation in case 08-1287 that drawing generalizations from case law applying § 2-201 is difficult. The decision "resists precise formulation." Snyder v. Curran Twp, 167 Ill.2d 466, 474 (1995). This Court in case 08-1287 recommended that a decision on discretionary immunity be deferred until the factual record could be fully developed. The claims at issue in 08-1287, however, were claims against the School Administrators for intentional infliction of emotional distress, willful and wanton deliberate indifference to sexual harassment, and willful and wanton supervision. This Court reasoned that the record was not yet developed on exactly what actions or inactions taken by the Administrators were at issue. (3/3/09 R&R in 08-1287, d/4 47, pp. 34-35). There were no claims for negligent hiring or retention in that case.

In contrast, the challenged actions in these counts: the decisions to hire and re-hire White. The Court does not see how the actual decisions

to hire or re-hire could be considered ministerial.  Case law concludes that hiring and firing are discretionary decisions, requiring a balancing of many different competing considerations.  *See, e.g.,* Johnson v. Mers, 279 Ill.App.3d 372 (2d Dist.,1996)(upholding summary judgment to defendants on negligent hiring claim:  hiring "is inherently discretionary and is not performed on a given state of facts in a prescribed manner."); Hanania v. Loren-Maltese, 319 F.Supp.2d 814, 836 (N.D. Ill. 2004)(on summary judgment, decision to terminate plaintiffs was discretionary); Ellis v. City of Chicago, 272 F.Supp.2d 729, 735-36 (N.D. Ill. 2003)(on 12(b)(6) motion to dismiss, dismissing discharge claim as barred by discretionary immunity); Zinnermon v. City of Chicago Police Dept., 209 F.Supp.2d 908, 911 (N.D. Ill. 2002)(on 12(b)(6) motion, dismissing City as immune from state retaliatory discharge claim);  Rogers ex rel. Rogers v. Cook, 2008 WL 5387642 *4 (N.D. Ill. 2008)(on 12(b)(6) motion, dismissing negligent retention claim as barred by discretionary immunity)(not Reported in F.Supp.2d).

Plaintiffs cite Mueller v. Community Consolidated School Dist. 54, 287 Ill.App.3d 337 (1997), which did allow a negligent hiring claim (among other claims) to proceed against a school district, on the theory that a statute prohibited the district from knowingly employing someone "'for

whom a criminal background investigation has not been initiated.'" 287 Ill.App.3d at 346, *quoting* 105 ILCS 5/34-18.5(d).  The Mueller court "conclude[d] that the school district's failure to comply with the statutorily imposed condition precedent vitiates any immunity it might otherwise have enjoyed under Section 2-201 of the Tort Immunity Act for hiring Robinson." Id.

In Mueller, though, the school district did not conduct any criminal background investigation on a wrestling coach, who later sexually assaulted a student.  An investigation would have allegedly revealed "a criminal background exhibiting moral turpitude which made him unfit for a position dealing with minors."  Id. at 342; Green v. Carlinville Community Unit School Dist., 381 Ill.App.3d 207, 215 (4th Dist. 2008)(background checks allegedly not performed at all).  In this case, Plaintiffs concede in their allegations that a criminal background check *was* performed.  Thus, even under Mueller the School District here was "vested with the discretionary authority to hire" White.

Plaintiffs seem to argue that White was hired before the background check was conducted (d/e 33, p. 32), and that therefore discretionary immunity does not apply under Mueller's reasoning.  Yet the statute at issue only requires that the background check be *initiated*. 105 ILCS 5/34-

18.5(d)("The board of education shall not knowingly employ a person for whom a criminal history records check and a Statewide Sex Offender Database check has not been initiated.").  Plaintiffs allege that the District required White to sign an authorization for the background check at the time the offer of employment was extended.  (Complaint ¶¶ 394-95).  Thus, the District did not knowingly employ White without initiating the background check.

In any event, that semantic battle is irrelevant.  "[T]he determinative factor is whether the plaintiff's injury results from a discretionary or ministerial act or omission by the defendant."  <u>Trotter</u>, 315 Ill.App.3d at 18.  The background check was completed in 2002, two years before Plaintiffs were injured by White.  Plaintiffs injuries arise from the School District's decision to keep White on *despite* what that report revealed, not from the School District's failure to conduct the investigation at all, as in <u>Mueller</u>.

Plaintiffs also cite <u>Doe v. Dimovski</u>, 336 Ill.App.3d 292 (2d Dist. 2003), for the argument that the School Administrators' statutory duty to report suspected child abuse is not discretionary.  As this Court stated in its Recommendation in case 08-1287, this Court disagrees with <u>Dimovski</u> to the extent it implies that a tort action exists for the violation of those statutory duties, because there is no private right of action, express or

implied, arising from the statute.  <u>Varela v. St. Elizabeth's Hospital of Chicago</u>, 372 Ill.App.3d 714, 692 (1st Dist. 2007); <u>Doe v. North Central Behavioral Health Systems, Inc.</u>, 352 Ill.App.3d 284, 288 (3d Dist. 2004)("There is no evidence that the statute [ANCRA] was designed to provide monetary remedies for victims of abuse or to impose civil liability on those who fail to report."); <u>Cuyler v. U.S.</u>, 362 F.3d 949, 954-55 (7th Cir. 2004).  If no actionable tort arises from violating the statute, immunity is irrelevant.

Accordingly, the Court will recommend dismissal of these negligent hiring claims on the grounds of discretionary immunity.

**H.    Counts 18 & 19: In Count 18, Plaintiffs sufficiently plead respondeat superior liability against the School District for the School Administrators' negligent supervision.  In Count 19, Plaintiffs state no supervision claim based solely on Defendants' violations of the School District's own policies.  However, Plaintiffs should be given leave to replead Count 19.**

In count 18, Plaintiffs pursue a negligent supervision claim against the School District, apparently based on the failure of the School Administrators to adequately supervise White in light of their knowledge of White's misconduct.  Plaintiffs appear to be pursuing this claim against the School District based on respondeat superior.  In count 19, Plaintiffs pursue another negligent supervision claim, but against the School

Administrators in addition to the School District. In count 19, Plaintiffs allege that the School Administrators violated School District Policies which require the documenting, investigating and reporting of suspected child abuse.

The School District argues that the School Administrators cannot be liable for negligent supervision under 745 ILCS Section 10/2-204, which states that "a public employee, as such and acting with the scope of his employment, is not liable for an injury caused by the act or omission of another person . . . ." This section is inapplicable, though, because Plaintiffs are not seeking to hold the School Administrators liable for White's abuse; they seek to hold the School Administrators liable for their own misconduct–their failure to supervise White.

Unlike the negligent hiring claims, the Court does not believe it clear that § 2-201 immunity applies to the failure to supervise claims. As the Court stated in its recommendation in case 08-1287, the actions and inactions underlying this claim are based on more than White's hiring. The supervision claims, as the Court sees it, is based on how the School Administrators responded to the red flags. A more developed recorded is needed regarding "both the *type of position* held by the employee and *the type of actions* performed or omitted by the employee." Harinek v. 161

North Clark Street Ltd. Partnership et al., 181 Ill.2d 335, 341

(1993)(emphasis in original); *see also* this Court's 3/3/09 Report and

Recommendation in 08-1287, d/e 47, pp. 32-36 and cases cited therein.

determination

     Defendant Heidbreder asserts that 745 ILCS 10/3-108 of the Tort

Immunity Act, governing willful and wanton supervision of an activity on

public property, does not allow claims for *negligent* supervision.   (d/e 20, p.

19).  Section 3-108 states in pertinent part:

> (a)  Except as otherwise provided in this Act, neither a local
> public entity nor a public employee who undertakes to
> supervise an activity on or the use of any public property is
> liable for an injury unless the local public entity or public
> employee is guilty of willful and wanton conduct in its
> supervision proximately causing such injury.

     As this Court concluded in its recommendation in case 08-1287, this

section arguably covers supervision of an employee, even though the

statute refers to an activity or use.  *See, e.g.,* Hill v. Galesburg Community

Unit School Dist. 205, 346 Ill.App.3d 515 (3rd Dist. 2004)(teacher's

supervision of chemistry experiment in classroom); Peck v. West Aurora

School Dist. 129, 2006 WL 2579678 (N.D. Ill. 2006)(not reported in

F.Supp.2d)(allegations of willful and wanton supervision of teacher

survived motion to dismiss based on § 3-108); Doe v. Sperlik, 2005 WL

32998 * 3 (N.D. Ill. 2005)(allowing willful and wanton supervision claim

against district to proceed based on supervision of teacher); *see also* this Court's 3/3/09 Report and Recommendation in 08-1287, d/e 47, pp. 36-39. Heidbreder's argument otherwise is therefore rejected.

However, the plaintiffs in case 08-1287 did not pursue claims of *negligent* supervision, so that question was not before the Court. Plaintiffs have not responded to the argument that Section 3-108, by its plain terms, bars claims based on *negligent* supervision of an employee. *See* Hill v. Galesburg Community Unit School Dist. 205, 346 Ill.App.3d 515, 522 (3d Dist. 2004)(3-108 gave school district immunity from claims based on teacher's negligent supervision of chemistry experiment, but not for willful and wanton failure to supervise); Deborah K. v. Sperlik, 2005 WL 3299804 *3 (N.D. Ill. 2005)(Not Reported in F.Supp.2d)("To the extent that Plaintiffs' attempt to bring claims sounding in negligence against the District, Section 3-108 bars those claims."). Accordingly, the Court believes that the negligent supervision claims should be dismissed to the extent they are based on negligent, rather than willful and wanton misconduct. However, the Court does believe that an inference of willful and wanton misconduct arguably arises from the overall allegations. Accordingly, the Court will recommend that Plaintiffs be given leave to replead.[20]

---

[20]The School Administrators also point out that the ad damnum clause in Count 19 names only the School District.

The Court also agrees with Defendants that no negligent supervision claim is stated in count 19 based solely on the alleged violations of School District policies.  Plaintiffs do not address the cases cited by Defendants for the proposition that duties created by internal policies do not create legal duties.  *See*  Rhodes v. Illinois Cent. Gulf R.R. 172 Ill.2d 213, 238 (1996)(internal policies do not create legal duty where law does not impose duty).  Violation of the School District's mandatory reporting policy is not actionable in and of itself, just as a violation of the statutory reporting duties is not actionable.

Plaintiffs do not seriously dispute this, but they contend that count 19 is based on more than just internal policies because it incorporates by reference all the prior paragraphs of the Complaint.  The Court believes that Count 19 should be dismissed with leave to replead, in order to clarify what actions it is based on other than the violation of internal policies.  As currently pled, Count 19 does appear to be based primarily on the internal policy violation, which does not state a claim.

**I.  Count 20: Plaintiffs fail to state a claim for premises liability.**

Plaintiffs allege in Count 20 that the School District failed to take any action in the face of actual notice of a dangerous condition at the School,

the dangerous condition being White's use of his classroom to sexually abuse his students.

In its Recommendation in case 08-1287, this Court recommended that the defendants' motion to dismiss the premises liability claim be denied because the only grounds for dismissal argued were § 2-201 discretionary immunity and the "public duty rule." (3/3/09 Report and Recommendation in 08-1287, d/e 47, pp. 43-50). The Court also cited Doe v. Sperlik, 2005 WL 3299818 *4 (N.D. Ill. 2005)(not reported in F.Supp.2d), which concluded that a premises liability claim was stated based on allegations that school officials knew a teacher was using a private room to abuse his students.

The School District argues that § 3-102 of the Tort Immunity Act precludes this count. Section 3-102 "codified the common law duty of public entities to maintain their property in a reasonably safe condition. That section articulates the duty to which the subsequently delineated immunities in the Tort Immunity Act apply." Lawson v. City of Chicago, 278 Ill.App.3d 628, 640 (1st Dist. 1996). 745 ILCS 10/3-102 states in relevant part:

> Except as otherwise provided in this Article, a local public entity
> has the duty to exercise ordinary care to maintain its property in
> a reasonably safe condition for the use in the exercise of
> ordinary care of people whom the entity intended and permitted

to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used, and shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition that is not reasonably safe in reasonably adequate time prior to an injury to have taken measures to remedy or protect against such condition.

The School District asserts that case law interprets this section to allow premises liability only for an unsafe condition of the property itself, not an unsafe condition posed by an employee's misuse of the property. It argues, essentially, that no premises liability claim can be stated based on a White's misuse of his classroom to abuse his students. The School District cites Burdinie v. Village of Glendale Heights, 139 Ill.2d 501 (1990), in which a swim class participant was allegedly injured by an incompetent instructor's command to jump in the pool. The Illinois Supreme Court in Burdinie analyzed the case under several sections of the Tort Immunity Act, including § 3-102. The Court held that "no cause of action is stated under section 3-201" because there were no allegations that the swimming pool itself was not maintained in a safe condition. 139 Ill.2d at 512.

Burdinie was later overruled to the extent it suggested that a public entity could be liable under 745 ILCS 10/3-106 (governing public property used for recreation) for the willful and wanton conduct of a public employee that did not involve the condition of the property itself. McCuen v. Peoria

Park Dist., 163 Ill.2d 125, 130 (1994).  In McCuen, partygoers hopped aboard a mule-drawn hayride at a park.  The park district employee negligently alarmed the mules, and the mules ran off, throwing several partygoers from the ride.  The Supreme Court held that 745 ILCS 10/3-106 applied only to conditions of the property itself, not to misuse of the property by employees.  The Court reasoned that, "[i]f otherwise safe property is misused so that it is no longer safe, but the property itself remains unchanged, any danger presented by the property is due to the misuse of the property and not to the condition of the property."  163 Ill.2d at 129.

McCuen involved Section 3-106, not 3-102.  Section 3-106 has somewhat similar wording to Section 3-102, but not identical.  McCuen can be distinguished on that basis, but McCuen also can be seen as supporting the conclusion, already arrived at in Burdinie, that public entities and employees enjoy statutory immunity from premises liability claims where the injury was caused by an employee's wrongful conduct, rather than an unsafe condition of the property itself.

The School District also cites Nelson v. Northeast Illinois Regional Commuter Railroad Corp., 364 Ill.App.3d 181 (1st Dist. 2006), which held that § 3-102 applies only to conditions of the property itself, not to activities

conducted on the property.  In Nelson, a railroad company argued that § 3-102 protected it from a trespasser's negligence claim because the trespasser was not an intended use of the property.  The Appellate Court in Nelson held that § 3-102 applied when a person was injured from a condition of the property, not when a person was injured from an activity conducted on the property (i.e., the train operator's negligence).  Thus, § 3-102 did not negate the railroad's duty to the trespasser in regards to the activities on its property.

In Lawson v. City of Chicago, 278 Ill.App.3d 628 (3d Dist. 1996), the Court noted:

> Generally, the loss inflicted upon the premises must be a direct result of the condition of the premises and must have a causal relation or other connection with the property itself. . . .There can be no premises liability for criminal acts of third persons upon the premises where such acts are not prompted or facilitated by conditions of the premises . . . .

Id., 278 Ill.App.3d at 640 (no premises liability claim where student fatally shot on school grounds).  The Appellate Court in Lawson stated that "[t]here can be no premises liability for criminal acts of third persons upon the premises where such acts are not prompted or facilitated by conditions of the premises."  Id. (citations omitted).  Lawson reasoned that, since there were no allegations that "the Board created or facilitated the condition that caused the loss or that the Board had actual or constructive knowledge

of criminal conduct, the plaintiff cannot state a cause of action for premises liability." 278 Ill.App.3d at 248.

The District Court in <u>Doe v. Sperlik</u>, 2005 WL 3299818 *4 (N.D. Ill. 2005)(not reported in F.Supp.2d) cited these exceptions discussed in Lawson in concluding that a premises liability claim had been stated:

> the gravamen of the premises liability claims is that the District knew that Sperlik was using a private room to facilitate his abuse of his students and that it had unique knowledge that allowing Sperlik to have access to a private room increased the danger to its students, yet did nothing (for instance, deny Sperlik access to that room) to ensure that the premises were made safe.

<u>Sperlik</u>, 2005 WL 3299818 *4.

<u>Sperlik</u> did not discuss the cases cited by the School District here, nor did this Court in its recommendation in case 08-1287. This issue and the cases cited by the School District were not addressed by the parties in 08-1287, so the Court had no occasion to consider it.[21]

After considering the new cases cited by the School District, the Court concludes that the School District is now correct. A premises liability claim arises from an injury attributable to an unsafe condition of the property itself. *See cases cited above and, for example,* <u>Lewis E. v.</u>

---

[21]After the Court's Report and Recommendation was adopted in case 08-1287, the defendants in that case filed a second motion to dismiss the premises liability claim raising these new grounds, which is currently pending. The Court has some procedural concerns on the propriety of Defendants' Second Motion to Dismiss. Those concerns will be addressed in 08-1287.

Spagnolo, 186 Ill.2d 198 (1999)(rejecting premises liability claim by students based on dilapidated schools because students did not allege injury from unsafe condition of property); Rexroad v. City of Springfield, 207 Ill.2d 33 (2003)(premises liability claim regarding school's unsafe parking lot survived summary judgment); Courson v. Danville School Dist., 333 Ill.App.3d 86 (4th Dist. 2002)(no premises liability claim for woodshop teacher's removal of saw shield; removal of shield was not maintenance of property). Plaintiffs here were injured by White's use of his classroom to abuse them, but there was nothing unsafe about the classroom itself. White's tortious conduct, not the condition of the classroom, caused the injury. The Court will therefore recommend dismissal of Count 20 for failure to state a claim for premises liability.

## III. Motion to Strike

The School District moves to strike the punitive damages sought against it. The School District is a "local public entity" immune from punitive damages. 745 ILCS 10/1-206 (local public entity includes school district and school board); 745 ILCS 10/2-102 (local public entity not liable for punitive damages). That immunity includes immunity from punitive damages sought in a § 1983 action. City of Newport v. Fact Concerts, Inc.,

453 U.S. 247 (1981)(punitive damages are not recoverable against a municipality in a § 1983 claim absent statutory authority).

As to the punitive damages claim in the Title IX Count, <u>Landon v. Oswego Unit School Dist. No. 308</u>, 143 F.Supp.2d 1011 (N.D. Ill. 2001), held, after a thorough analysis of <u>Newport</u> and other precedent, that punitive damages are not available against a municipality under Title IX. Plaintiffs correctly point out that this conclusion has been disagreed with by some district courts in other circuits. *See* <u>Schultzen v. Woodbury Central Community School Dist.</u>, 187 F.Supp.2d 1099 (N.D.Iowa Feb 22, 2002)(finding Title IX punitive damages available against municipality for public policy reasons). The Seventh Circuit does not appear to have addressed this question, and the parties' briefs simply set forth their conclusions with little elaboration.

The Court has carefully reviewed the Northern District's decision in <u>Landon</u> and agrees with its analysis. "The general rule today is that no punitive damages are allowed unless expressly authorized by statute." <u>City of Newport v. Fact Concerts, Inc.</u>, 453 U.S. 247, 261 n. 21 (1981). Title IX does not expressly authorize punitive damages, nor do public policy concerns call for punitive damages: a municipality is already liable for

compensatory damages to redress the illegal discrimination.  Landon, 143 F.Supp. at 1014.

Additionally, after Landon and Schultzen, the Supreme Court held in Barnes v. Gorman, 536 U.S. 181 (2002), that punitive damages are not available in private suits under the ADA and Rehabilitation Act.  The Supreme Court reasoned that the remedies under those statutes were "coextensive with the remedies available in a private cause of action brought under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*"  536 U.S. at 185.  The Supreme Court then explained that Title IX and Title VI have been interpreted consistently, and that the Court had held in Franklin v. Gwinett County Public Schools, 503 U.S. 60 (1992), that Title IX carries with it "'the traditional presumption in favor of any appropriate relief.'"  Id.  The Court then concluded that "appropriate relief" did *not* include punitive damages, but instead only "remedies traditionally available in suits for breach of contract."  Id.  "[P]unitive damages, unlike compensatory damages and injunction, are generally not available for breach of contract."  Id. at 187.  Barnes seems to foreclose the possibility of punitive damages under Title IX.  Accordingly, the Court will recommend dismissal of the punitive damages sought against the School District.

The School District's motion is moot to the extent it seeks to strike the injunctive relief sought in the hate crime count, as the Court is recommending dismissal of that count. Similarly, Plaintiffs' arguments about the punitive damages in its hate crime count are moot.

WHEREFORE, the Court RECOMMENDS that Defendants' motions to dismiss (d/e's 15, 17, 20, 28) be granted in part and denied in part. The Court recommends that:

1) count 3 (Title IX hostile environment claim) be dismissed as duplicative of Count 1 (Title IX discrimination claim).

2) count 2 (substantive due process) be dismissed for failure to state a claim.

3) the School District be dismissed from Count 4 (unreasonable seizure), for failure to state a claim.

4) the School District be dismissed from Count 7 (battery), for failure to state a claim.

5) count 9 (hate crime against School District) be dismissed for failure to state a claim.

6) count 11 (false imprisonment against School District) be dismissed for failure to state a claim.

7) counts 16 and 17 (negligent hiring and re-hiring against School District) be dismissed because of 745 ILCS 10/2-201 immunity.

8) counts 18 and 19 (negligent supervision) be dismissed on the grounds that negligent supervision claims are barred by 745 ILCS 10/3-108, and because the violation of the School District's policies does not state a negligent supervision claim.

The Court recommends that Plaintiffs be given leave to replead count 19.

9)      count 20 (premises liability) be dismissed for failure to state a claim.

The Court recommends that Defendants' motions to dismiss be denied in all other respects.

The Court FURTHER RECOMMENDS that the School District's motion to strike (d/e 14) be granted in part and denied in part. The Court recommends dismissal of the punitive damages sought against the School District. The Court recommends that the rest of the motion be denied as moot.

Any objections to this Report and Recommendation must be filed in writing with the Clerk of the Court within ten working days after service of a copy of this Report and Recommendation. See 28 U.S.C. § 636(b)(1). Failure to timely object will constitute a waiver of objections on appeal. Video Views, Inc. v. Studio 21, Ltd., 797 F.2d 538, 539 (7th Cir. 1986). See also Local Rule 72.2.

ENTER:    October 20, 2009

*s/ Byron G. Cudmore*

_____
BYRON G. CUDMORE
UNITED STATES MAGISTRATE JUDGE